Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:   blarsen@shea.law
            kwyant@shea.law

*Attorneys for HASelect-Medical Receivables
Litigation Finance Fund International SP*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>INFINITY CAPITAL MANAGEMENT, INC.<br>Debtor. | Case No. 21-14486-abl<br>Chapter 7 |
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br>Plaintiff,<br>v.<br>TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br>Defendant. | Adversary Case No. 21-01167-abl |
| TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br>Counter-Plaintiff,<br>v.<br>HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP; ROBERT E. ATKINSON, CHAPTER 7 TRUSTEE<br>Counter-Defendants. | |

## FIRST AMENDED ADVERSARY COMPLAINT

Plaintiff HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP ("Plaintiff" or "HASelect"), by and through its counsel, Shea Larsen PC, hereby submits its First Amended Adversary Complaint and claims and alleges against Defendant TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP ("Defendant" or "Tecumseh") as follows:

## PARTIES

1. Plaintiff HASelect is, and was at all relevant times, a segregated portfolio company of HedgeACT International SPC Ltd., a Cayman Islands corporation, with its principal place of business in Illinois.

2. On information and belief, Defendant Tecumseh is, and was at all relevant times, a Delaware limited partnership.

## JURISDICTION AND VENUE

3. This Adversary Complaint, and the claims herein, are brought pursuant to Bankruptcy Rule 7001 seeking an order, judgment, and decree from this Court determining the validity, priority, and extent of any lien claim asserted by Defendant against certain property of the Debtor's estate.

4. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 105 and 506. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL ALLEGATIONS

5. Beginning in February 2019, HASelect made several loans to Debtor Infinity Capital Management, Inc. ("Debtor" or "Infinity") that were document through various written loan agreements and promissory notes through which Infinity pledged all of its personal property to HASelect as collateral for such loans.

6. HASelect perfected its security interest in all of Infinity's personal property through the filing of a UCC-1 with the Nevada Secretary of State on February 19, 2019.

7. On or about December 18, 2019, HASelect, which was then doing business under the name HASelect-FTM Medical Receivables Litigation Finance Fund SP, and Infinity entered into a

Second Amended & Restated Loan and Security Agreement and Promissory Note (together with all prior and related loan documents, the "MLA").

8. The MLA superseded and restated all prior loans made by HASelect to Infinity as well as extended further credit to Infinity.

9. HASelect holds a perfected security interest in all of Infinity's personal property (as defined in § 4.1 of the MLA, the "Collateral"). Specifically, Section 4.1 of the MLA states:

> To secure the payment and performance when due of all of the Borrower's obligations hereunder and under the Note, Borrower hereby grants to Lender a security interest in the Receivables and the Alternative Receivables, and all of its other personal property, including without limitation, all of Borrower's interest in the following, whether now owned or hereafter acquired, and wherever located, but excluding the Permitted Liens: All Goods, Inventory, Equipment, Fixtures, Accounts, General Intangibles, Instruments, Chattel Paper, Documents, Commercial Tort Claims, Investment Property, Letter of Credit Rights, Deposit Accounts, and all money, and all other property now or at any time in the future in Lender's possession (including claims and credit balances), and all proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties), all products and all books and records related to any of the foregoing (all of the foregoing, together with all other property in which Lender may now or in the future be granted a lien or security interest, is referred to herein, collectively, as the "Collateral").

10. Infinity used the proceeds of the loans it obtained from HASelect to purchase accounts receivable from medical providers.

11. Such accounts receivable generally arose from medical treatment provided to individuals who were injured in accidents and had asserted personal injury claims. These accounts receivable are generally secured by liens against these personal injury claims and are typically paid at the time the personal injury claims are settled.

12. HASelect holds a perfected security interest in all accounts receivable purchased by Infinity as Collateral for the indebtedness owed by Infinity under the MLA.

13. Beginning in or around June 2020 and continuing for several months thereafter, Infinity sold and assigned of substantial number of accounts receivable included within the Collateral in which HASelect held a perfected security interest (the "HAS Accounts") to Tecumseh without HASelect's knowledge or consent and in violation of Infinity's contractual obligations under the MLA.

14. The HAS Accounts had been purchased by Infinity from various medical providers

and other sources prior to June 18, 2020 using proceeds advanced to Infinity by HASelect pursuant to the MLA.

15. HASelect is informed and believes that Tecumseh had actual knowledge of HASelect's perfected security interest in the HAS Accounts prior to purchasing the HAS Accounts from Infinity.

16. HASelect is informed and believes that Tecumseh subsequently colluded with Infinity to conceal the sale and assignment of the HAS Accounts from HASelect to allow Infinity time to collect proceeds from the HAS Accounts and to transfer such proceeds to Tecumseh. Specifically, Tecumseh requested on various occasions that Infinity conceal information from HASelect concerning the HAS Accounts and other Collateral, and Infinity complied with such requests.

17. Tecumseh does not dispute that HASelect held a perfected security interest in the HAS Accounts at the time it purchased the HAS Accounts from Infinity.

18. Tecumseh has wrongfully collected and retained proceeds from the HAS Accounts in an unknown amount believed to exceed $200,000.

19. HASelect holds a perfected security interest in the HAS Accounts and all proceeds of the HAS Accounts as Collateral for the indebtedness owed by Infinity under the MLA.

20. Any interest Tecumseh claims in the HAS Accounts is subordinate and subject to HASelect's prior, perfected security interest in the HAS Accounts.

21. HASelect did not consent to or receive notice of Infinity's sale and assignment of the HAS Accounts to Tecumseh.

22. The sale and assignment of the HAS Accounts to Tecumseh was done in violation of HASelect's prior, perfected security interest in the HAS Accounts and HASelect's rights under the MLA.

23. Contrary to its actual dealings with Tecumseh and in violation of its obligations to HASelect under the MLA, Infinity misrepresented to HASelect that certain of the HAS Accounts were purchased by Tecumseh directly from the sellers of such HAS Accounts and that Infinity was

merely acting as a servicer for Tecumseh as to such HAS Accounts. Based on this misrepresentation, HASelect may have unknowingly consented to the release of certain proceeds of the HAS Accounts to Tecumseh. Had it known of the true nature and extent of Infinity's dealings with Tecumseh as described herein, HASelect would not have consented to the release of any such proceeds to Tecumseh.

24. On or about June 18, 2020, Infinity entered into a Sub-Advisory Agreement with Defendant Tecumseh under which Infinity agreed, among other things, to "assist [Tecumseh] in acquiring an interest in medical receivables in connection with personal injury cases in the U.S." and to provide collection services related to such receivables.

25. Tecumseh had actual knowledge of the MLA and of HASelect's security interest in the Collateral as well as Infinity's contractual obligations to HASelect under the MLA prior to the execution of the Sub-Advisory Agreement.

26. Following the execution of the Sub-Advisory Agreement, Infinity continued to purchase accounts receivable in its own name and for its own benefit from the largely same medical providers and other sources from which it purchased accounts receivable prior to the execution of the Sub-Advisory Agreement.

27. Such accounts receivable were purchased by Infinity pursuant to various contracts entered into between Infinity and the sellers of such accounts receivable.

28. Upon Infinity's purchase of such accounts receivable, Infinity received from the sellers a written assignment agreement for each account receivable conveying to Infinity the right to collect payment on the account receivable and granting Infinity a lien against any recovery on any personal injury claim asserted in connection with the account receivable.

29. All accounts receivable purchased by Infinity after the execution of the Sub-Advisory Agreement, regardless of the source of funds used to purchase such accounts receivable, constitute Collateral under the MLA in which HASelect holds a perfected security interest.

30. Following the execution of the Sub-Advisory Agreement, Tecumseh periodically issued purchase orders to Infinity in which it identified accounts receivable it wished to purchase

from Infinity. Pursuant to such purchase orders, Infinity and Tecumseh entered into various assignment and bill of sale agreements by which Infinity sold and assigned to Tecumseh certain accounts receivable purchased by Infinity on or after June 18, 2020 (the "Disputed Accounts").

31. HASelect holds a perfected security interest in the Disputed Accounts and all proceeds of the Disputed Accounts as Collateral under the MLA.

32. Any interest Tecumseh claims in the Disputed Accounts is subordinate and subject to HASelect's prior, perfected security interest in the Disputed Accounts.

33. HASelect did not consent to or receive notice of Infinity's sale and assignment of the Disputed Accounts to Tecumseh.

34. The sale and assignment of the Disputed Accounts to Tecumseh was done in violation of HASelect's prior, perfected security interest in the Disputed Accounts and HASelect's rights under the MLA.

35. No contract existed between Tecumseh and any seller (aside from Infinity) or obligor of any Disputed Account at the time of purchase by Infinity.

36. Tecumseh did not negotiate directly with any seller (aside from Infinity) or obligor of any Disputed Account regarding the purchase of any Disputed Account.

37. Tecumseh did not communicate directly with any seller (aside from Infinity) or obligor of any Disputed Account regarding the purchase of any Disputed Account.

38. No business relationship existed between Tecumseh and any seller (aside from Infinity) or obligor of any Disputed Account at the time of purchase by Infinity

39. Tecumseh did not issue any purchase order directly to any seller (aside from Infinity) or obligator of any Disputed Account.

40. No seller (aside from Infinity) or obligor of any Disputed Account executed any assignment or other document purporting to transfer to Tecumseh any right in any Disputed Account.

41. Notwithstanding Infinity's sale and assignment of the Disputed Accounts to Tecumseh, neither Infinity nor Tecumseh provided any notice of such sale and assignment to any third-party seller or obligor responsible for payment of any Disputed Account.

42. Rather, Infinity continued to collect the proceeds of the Disputed Accounts in its own name or under its trade name, Infinity Health Connections, which is a fictious firm name under which Infinity had done business since at least 2016.

43. Following the execution of the Sub-Advisory Agreement, Infinity and Tecumseh colluded to open a deposit account at Bank of America (the "BOA Account") under Infinity's trade name, Infinity Health Connections. Infinity deposited proceeds collected on the Disputed Accounts, which were typically received in the form of a check made payable to Infinity Health Connections, to the BOA Account from which such proceeds were transferred to Tecumseh or used by Infinity, either directly or indirectly, to purchase additional accounts receivable that were later sold and assigned to Tecumseh.

44. HASelect is informed and believes that the Disputed Accounts include approximately 19,000 accounts receivable that Infinity purchased at a cost of more than $10 million.

45. HASelect is informed and believes that Infinity has, to date, collected more than $1,200,000 in proceeds of the Disputed Accounts.

46. HASelect is informed and believes that the current value of the uncollected Disputed Accounts exceeds $22 million.

47. Tecumseh and Infinity colluded to conceal the nature and extent of their business dealings under the Sub-Advisory Agreement from HASelect. Specifically, Tecumseh requested on various occasions that Infinity conceal information pertaining to the Disputed Accounts and other Collateral from HASelect, and Infinity complied with such requests.

48. Contrary to its actual dealings with Tecumseh and in violation of the obligations to HASelect under the MLA, Infinity misrepresented to HASelect that the Disputed Accounts had been purchased by Tecumseh directly from the sellers of the Disputed Accounts and that Infinity was merely acting as a servicer for Tecumseh as to the Disputed Accounts. Based on this misrepresentation, HASelect may have consented to the release of certain proceeds of the Disputed Accounts to Tecumseh. Had HASelect known of the true nature and extent of Infinity's dealings with Tecumseh as described herein, it would not have consented to any release of such proceeds.

49. The HAS Accounts and Disputed Accounts constitute "accounts" as that term is defined under the Uniform Commercial Code as adopted in Nevada (and elsewhere) (the "UCC") and as specifically set forth at NRS 104.9102(1)(b).

50. The term "security interest" as defined under the UCC and as specifically set forth at NRS 104.91201(ii) includes "any interest of … a buyer of accounts."

51. The term "debtor" as defined under the UCC and as specifically set forth at NRS 104.9102(1)(bb) includes a "seller of accounts."

52. The term "collateral" as defined under the UCC and as specifically set forth at NRS 104.9102(1)(l) includes "[a]ccounts … that have been sold".

53. To perfect any interest it claims in the HAS Accounts or Disputed Accounts, Tecumseh was required, pursuant to NRS 104.9910(1), to file a UCC-1 financing statement.

54. Tecumseh did not file any UCC-1 financing statement to perfect any interest it claims in the HAS Accounts or the Disputed Accounts.

55. On September 14, 2021 (the "Petition Date"), Infinity filed a voluntary Chapter 7 bankruptcy petition with this Court, commencing Bankruptcy Case No. 21-14486-abl.

56. Because Tecumseh did not perfect any interest it claims in the HAS Accounts or the Disputed Accounts through the filing of a UCC-1 financing statement, the HAS Accounts and Disputed Accounts remain property of Infinity's bankruptcy estate pursuant to NRS 104.9318(2), which provides that "[f]or purposes of determining the rights of creditors of, and purchasers for value of an account or chattel paper from, a debtor that has sold an account or chattel paper, while the buyer's security interest is unperfected, the debtor has rights and title to the account or chattel paper identical to those the debtor sold."

57. As of the Petition Date, Infinity owed total indebtedness in excess of $14 million to HASelect pursuant to the MLA. Moreover, the total indebtedness owed pursuant to the MLA continues to increase as additional interest, default interest, late fees, and other amounts owed pursuant to the MLA accrue.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

58. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

59. A dispute exists between HASelect and Tecumseh that is ripe for adjudication as to the priority of their respective claimed interests in the HAS Accounts and the Disputed Accounts.

60. HASelect is entitled to a declaration that (i) it holds a perfected security interest in the HAS Accounts and the Disputed Accounts pursuant to the MLA, (ii) any interest Tecumseh claims in any of the HAS Accounts or the Disputed Accounts is subordinate and subject to HASelect's prior, perfected security interest in the same, (iii) any interest Tecumseh claims in any of the HAS Accounts or the Disputed Accounts was unperfected as of the Petition Date, and (iv) HASelect is entitled to immediate possession of the HAS Accounts and the Disputed Accounts and all proceeds thereof.

61. HASelect has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorney fees, and interest.

## SECOND CAUSE OF ACTION

### (Injunctive Relief)

62. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

63. HASelect is informed and believes Defendant Tecumseh is in possession of or is exercising control over the HAS Accounts and the Disputed Accounts.

64. The HAS Accounts and the Disputed Accounts constitute Collateral under the MLA in which HASelect holds a first-priority security interest that is superior to any interest Tecumseh may hold in the HAS Accounts or the Disputed Accounts.

65. HASelect has a substantial likelihood of success on the merits of its claims against Defendant Tecumseh.

66. HASelect will suffer irreparable harm in the event Tecumseh is permitted to collect,

transfer, or otherwise dispose of the HAS Accounts or the Disputed Accounts prior to the adjudication of HASelect's claims herein.

67. The threatened harm to HASelect if Defendant Tecumseh is permitted to collect, transfer, or otherwise dispose of the HAS Accounts and or the Disputed Accounts outweighs any potential harm to Tecumseh that may result from the entry of a preliminary injunction prohibiting Tecumseh from collecting, transferring, or otherwise disposing of the HAS Accounts or the Disputed Accounts.

68. Public policy supports granting injunctive relief to protect the rights of a secured creditor with a prior, perfected security interest, such as HASelect, over the rights of an unsecured creditor, such as Tecumseh.

69. HASelect is entitled to entry of a preliminary injunction prohibiting Tecumseh from collecting, transferring, or otherwise disposing of the HAS Accounts and or the Disputed Accounts.

70. HASelect has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorney fees, and interest.

## THIRD CAUSE OF ACTION

### (Conversion)

71. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

72. HASelect holds a perfected, first-priority security interest in the HAS Accounts and all proceeds thereof.

73. Beginning in or around June 2020, Tecumseh knowingly purchased the HAS Accounts from Infinity in violation of HASelect's perfected, first-priority security interest therein and in violation of HASelect's rights under the MLA.

74. Tecumseh does not dispute that HASelect held a perfected security interest in the HAS Accounts at the time Tecumseh purchased the HAS Accounts from Infinity.

75. Tecumseh colluded with Infinity to conceal from HASelect the nature and extent of Tecumseh's dealings with Infinity, including Tecumseh's purchase of the HAS Accounts from

Infinity.

76. Tecumseh knowingly collected and retained proceeds of the HAS Accounts in an unknown amount believed to exceed $200,000.

77. Tecumseh's collection and retention of proceeds of the HAS Accounts was wrongful and inconsistent with HASelect's rights and interests in such proceeds.

78. HASelect holds a perfected, first-priority security interest in the Disputed Accounts and all proceeds thereof.

79. Beginning sometime after June 18, 2020, Tecumseh purchased the Disputed Accounts from Infinity in violation of HASelect's perfected, first-priority security interest therein and in violation of HASelects rights under the MLA.

80. Tecumseh colluded with Infinity to conceal from HASelect the nature and extent of Tecumseh's dealings with Infinity, including Tecumseh's purchase of the Disputed Accounts from Infinity.

81. Tecumseh knowingly collected and retained proceeds of the Disputed Accounts in an unknown amount believed to exceed $1,200,000.

82. Tecumseh's collection and retention of proceeds of the Disputed Accounts was wrongful and inconsistent with HASelect's rights and interests in such proceeds

83. Tecumseh's wrongful actions have caused HASelect to suffer damages in an amount in excess of $75,000.

84. HASelect has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorney fees, and interest.

### FOURTH CAUSE OF ACTION

**(Unjust Enrichment)**

85. HASelect incorporates the allegations set forth in the other sections of this Adversary Complaint as if set forth at length herein.

86. HASelect holds a perfected, first-priority security interest in the HAS Accounts and all proceeds thereof.

87. Beginning in or around June 2020, Tecumseh knowingly purchased the HAS Accounts from Infinity in violation of HASelect's perfected, first-priority security interest therein and in violation of HASelects rights under the MLA.

88. Tecumseh does not dispute that HASelect held a perfected security interest in the HAS Accounts at the time Tecumseh purchased the HAS Accounts from Infinity.

89. Tecumseh colluded with Infinity to conceal from HASelect the nature and extent of Tecumseh's dealings with Infinity, including Tecumseh's purchase of the HAS Accounts from Infinity.

90. Tecumseh knowingly collected proceeds of the HAS Accounts in an unknown amount believed to exceed $200,000 and retained and appreciated the benefit thereof.

91. Tecumseh's collection and retention of proceeds of the HAS Accounts was wrongful and inconsistent with HASelect's rights and interests in such proceeds, and it would be inequitable to allow Tecumseh to retain the benefit of such proceeds.

92. HASelect holds a perfected, first-priority security interest in the Disputed Accounts and all proceeds thereof.

93. Beginning sometime after June 18, 2020, Tecumseh purchased the Disputed Accounts from Infinity in violation of HASelect's perfected, first-priority security interest therein and in violation of HASelects rights under the MLA.

94. Tecumseh colluded with Infinity to conceal from HASelect the nature and extent of Tecumseh's dealings with Infinity, including Tecumseh's purchase of the Disputed Accounts from Infinity.

95. Tecumseh knowingly collected proceeds of the Disputed Accounts in an unknown amount believed to exceed $1,200,000 and retained and appreciated the benefit thereof.

96. Tecumseh's collection and retention of proceeds of the Disputed Accounts was wrongful and inconsistent with HASelect's rights and interests in such proceeds, and it would be inequitable to allow Tecumseh to retain the benefit of such proceeds.

97. Tecumseh's wrongful actions have caused HASelect to suffer damages in excess of

$75,000.

98.  HASelect has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorney fees, and interest.

### REQUEST FOR RELIEF

WHEREFORE, HASelect respectfully requests that the Court grant the following relief:

1.  Entry of a declaratory judgment determining that (i) HASelect holds a perfected security interest in the HAS Accounts and the Disputed Accounts pursuant to the MLA, (ii) any interest Tecumseh claims in the HAS Accounts or the Disputed Accounts is subordinate and subject to HASelect's prior, perfected security interest, (iii) any interest Tecumseh claims in the HAS Accounts or the Disputed Accounts was unperfected as of the Petition Date, and (iv) HASelect is entitled to immediate possession of the HAS Accounts and the Disputed Accounts and all proceeds thereof;

2.  Entry of a preliminary injunction prohibiting Tecumseh from collecting, transferring, or otherwise disposing of the Disputed Accounts;

3.  Entry of judgment awarding HASelect its damages suffered as a result of the foregoing allegations;

4.  Entry of judgment awarding HASelect its reasonable attorney fees and costs incurred in bringing this action; and

5.  Entry of orders providing such other and further relief as the Court deems just and proper.

Dated this 10th day of December 2021.

**SHEA LARSEN**

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**CERTIFICATE OF SERVICE**

1. On December 10, 2021, I served the following document(s): **FIRST AMENDED ADVERSARY COMPLAINT**

2. I served the above document(s) by the following means to the persons as listed below:

☒ a. ECF System:

CLARISSE L. CRISOSTOMO on behalf of Counter-Defendant ROBERT E. ATKINSON
clarisse@nv-lawfirm.com, bknotices@nv-lawfirm.com

GERALD M GORDON on behalf of Counter-Claimant TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
ggordon@gtg.legal, bknotices@gtg.legal

MICHAEL D. NAPOLI on behalf of Defendant TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
michael.napoli@akerman.com,
cindy.ferguson@akerman.com;catherine.kretzschmar@akerman.com;laura.taveras@akerman.com;masterdocketlit@akerman.com

ARIEL E. STERN on behalf of Defendant TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
ariel.stern@akerman.com, akermanlas@akerman.com

☐ b. United States mail, postage fully prepaid:

☐ c. Personal Service:

I personally delivered the document(s) to the persons at these addresses:

☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐ For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d. By direct email (as opposed to through the ECF System):
Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e. By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

of the record of the fax transmission is attached.

☐    f.    By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 10, 2021.

By: /s/ *Bart K. Larsen, Esq,*