GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
GABRIELLE A. HAMM
Nevada Bar No. 11588
E-mail: ghamm@gtg.legal
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000 / Fax: (725) 777-3112

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116
Email: michael.napoli@akerman.com

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC. *dba* INFINITY HEALTH CONNECTIONS,<br><br>Debtor. | Case No. 21-14486-abl<br><br>Chapter 7 |
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br><br>Plaintiff,<br><br>v.<br><br>TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Defendant. | Adversary Case No. 21-01167-abl<br><br>**TECUMSEH-INFINITY MEDICAL RECEIVABLE FUND, LP'S MOTION TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Counter-Claimant,<br><br>v.<br><br>HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP; ROBERT E. ATKINSON, CHAPTER 7 TRUSTEE<br><br>Counter-Defendants. | Hearing Date: May 12, 2022<br>Hearing Time: 9:30 a.m. |

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

61742093;2

| | |
|---|---|
| ROBERT E. ATKINSON, CHAPTER 7 TRUSTEE, | |
| | Counter-Claimant, |
| v. | |
| TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP, | |
| | Counter-Defendant. |

Defendant Tecumseh–Infinity Medical Receivables Fund LP ("**Tecumseh**") hereby submits this motion (the "**Motion**") to dismiss each cause of action set forth in HASelect-Medical Receivables Litigation Finance Fund International SP's ("**HASelect**") *Amended First Amended Adversary Complaint* [ECF No. 24] (the "**Amended Complaint**") and the Counterclaim [ECF No. 32] of Robert E. Atkinson, Chapter[1] 7 trustee ("**Trustee**") for lack of subject matter jurisdiction.

The Motion is made and based on the memorandum of points and authorities provided herein, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and the argument of counsel entertained by the Court at the time of the hearing of the Motion.

## I. RELEVANT FACTS

**A.    The Accounts Receivable.**

1.    Prior to commencing the above-captioned bankruptcy case on September 14, 2021 (the "**Petition Date**"), Infinity Capital Management, Inc. dba Infinity Health Connections ("**Infinity**" or "**Debtor**") was in the business of purchasing accounts receivables from medical providers, which receivables generally arose from medical treatment provided to individuals injured in accidents who then asserted personal injury claims. These accounts receivable are generally secured by liens against these personal injury claims and are typically paid at the time the personal injury claims are settled. See Amended Compl., ¶ 11.

---

[1] All references to "Chapter" and "Section" shall be to title 11 of the U.S. Code (the "**Bankruptcy Code**"); all references to a "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure; and all references to "LR" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

2. Prior to the Petition Date, HASelect made various loans to the Debtor, who used the funds to purchase receivables. On or about December 18, 2019, the Debtor and HASelect, which was then doing business under the name HASelect-FTM Medical Receivables Litigation Finance Fund SP, entered into a Second Amended & Restated Loan and Security Agreement and Promissory Note (together with all related loan documents, the "**MLA**"). See id., ¶¶ 7, 10.

3. HASelect contends that it has a perfected security interest in all of the Debtor's personal property described in § 4.1 of the MLA (the "**Collateral**"). Section 4.1 of the MLA states:

> . . . Borrower hereby grants to Lender a security interest in the Receivables and the Alternative Receivables, and all of its other personal property, including without limitation, all of Borrower's interest in the following, whether now owned or hereafter acquired, and wherever located, but excluding the Permitted Liens: All Goods, Inventory, Equipment, Fixtures, Accounts, General Intangibles, Instruments, Chattel Paper, Documents, Commercial Tort Claims, Investment Property, Letter of Credit Rights, Deposit Accounts, and all money, and all other property now or at any time in the future in Lender's possession (including claims and credit balances), and all proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties), all products and all books and records related to any of the foregoing (all of the foregoing, together with all other property in which Lender may now or in the future be granted a lien or security interest, is referred to herein, collectively, as the "Collateral").

See id., ¶ 9.

4. On or about June 18, 2020, the Debtor entered into a Sub-Advisory Agreement with Tecumseh (the "**Sub-Advisor Agreement**"). Under the Sub-Advisor Agreement, the Debtor agreed, among other things, to assist Tecumseh in acquiring an interest in medical receivables in connection with personal injury cases and to provide collection services related to such receivables. See Amended Compl., ¶ 24.

5. HASelect alleges that beginning in June of 2020, the Debtor sold and assigned a substantial number of receivables constituting HASelect's Collateral (the "**HAS Accounts**") to Tecumseh without HASelect's knowledge or consent and purportedly in violation of the Debtor's contractual obligations under the MLA. See id., ¶ 13. Further, HASelect alleges that following the execution of the Sub-Advisory Agreement, Tecumseh periodically issued purchase orders to the Debtor identifying receivables it wished to purchase from the Debtor, after which the Debtor sold

and assigned to Tecumseh receivables purchased by the Debtor (the "**Disputed Accounts**"). See id., ¶ 30.

6. By contrast, Tecumseh alleges that the Disputed Receivables were not purchased by the Debtor for its own account, but by or behalf of Tecumseh. Pursuant to the Sub-Advisor Agreement, the Debtor serviced the Disputed Accounts for Tecumseh by keeping track of the underlying personal injury claims, managing communications with plaintiff's lawyers, coordinating payment, negotiating any reductions in the amount to be paid, and accounting for all payments and transferring the proceeds to Tecumseh. See *Tecumseh–Infinity Medical Receivables Fund LP's Answer, Affirmative Defenses and Counterclaim* [ECF No. 12] ("**Tecumseh Answer**"), ¶ 13.

7. HASelect contends that, regardless of who paid for them, all of the HAS Accounts and Disputed Accounts constitute Collateral under the MLA in which HASelect holds a perfected security interest, while Tecumseh contends that the Debtor never owned the Disputed Receivables. See Amended Compl., ¶ 29; Tecumseh Answer, ¶¶ 14, 20,

**B.    The Abandonment of Collateral and Sale of Accounts.**

8. On September 22, 2021, HASelect and the Trustee moved for an order authorizing the Trustee to abandon the Collateral and HASelect moved for relief from the automatic stay to immediately take possession of the Collateral. Case No. 21-14486-abl, ECF Nos. 12, 17.

9. On October 15, 2021, the Court entered its authorizing the Trustee's abandonment of the Collateral. Case No. 21-14486-abl, ECF No. 97 ("**Order Authorizing Abandonment**"). Excluded from the Order Authorizing Abandonment were the Disputed Accounts and money held in the Debtor's deposit accounts on the Petition Date (proceeds of the Disputed Accounts). Id., ¶¶ 4, 5.[2]

10. On October 21, 2021, the Court entered an order granting stay relief, permitting HASelect to immediately take possession of the Collateral and otherwise enforce its security

---

[2] The Order Authorizing Abandonment took effect immediately upon entry and was not stayed pursuant to Bankruptcy Rules 6004(h) or otherwise. ECF No. 97, ¶ 12.

1. interest and rights in the Collateral. Case No. 21-14486-abl, ECF No. 106. Again, the Disputed Accounts and deposit accounts were excluded. Id., ¶¶ 4, 5.

11. On February 8, 2022, the Court entered its *Order Approving Sale*, which approved the Trustee's sale to HASelect of (i) whatever interest the estate had in the Disputed Accounts, including proceeds; (ii) all claims and causes of action that could be brought by the Trustee or the estate against any third party relating to the Disputed Receivables, including causes of action under Chapter 5 of the Bankruptcy Code; and (iii) books and records related to the foregoing (the "**Assets**") free and clear of all liens, claims, and encumbrances of any third party other than HASelect and Tecumseh. ECF No. 184.

12. The Order Approving Sale directed the Trustee to remit the proceeds of the Disputed Accounts[3] to the servicer appointed by HASelect and Tecumseh, TPL Claims Management, LLC ("**Servicer**"). Id., p. 2, n.2; p. 4, ¶ 4. Furthermore, the Trustee was directed to remit "[a]ny checks or funds relating to the [Disputed] Receivables that may be received by the Trustee in the future, from any source" to the Servicer as "[s]uch funds are no longer property of the estate, to any extent that they ever were." Id., p. 4, ¶ 4.

13. The Assets were sold to HASelect "subject to whatever rights, title, interests, and encumbrances HASelect and Tecumseh may have in the [Disputed] Receivables" which remain unaffected by the sale. ECF No. 184, p. 3, ¶ 3. However, upon the Court's approval of the sale, the Assets ceased to be property of the bankruptcy estate and neither the Trustee nor the estate has any obligation whatsoever regarding the Assets. Id. at p. 10 of 12 (Asset Purchase Agreement, § 1.04).

14. On February 22, 2022, the Trustee filed his notice of that the sale was consummated and the full purchase price was paid to the bankruptcy estate. ECF No. 190.

**C.    The State Law Claims Asserted by HASelect.**

15. On October 19, 2021, HASelect commenced the above-captioned adversary proceeding against Tecumseh (the "**Adversary**").

---

[3] These funds were comprised of $115,842.90 in funds from the TIF Checks, then held in estate bank account ending x3146, and $23,900.00 in funds from the TIF + HAS Checks, then held in estate bank account ending x3154. ECF No. 184, p. 2., n.2.

16. HASelect filed its Amended Complaint on December 13, 2021. The Amended Complaint asserts four causes of action relating to HASelect's and Tecumseh's respective interests in the HAS Accounts and Disputed Accounts and their proceeds, as follows:

a. Count I seeks a declaration that, under Nevada's codification of Article 9 of the Uniform Commercial Code, NRS § 104.9101 *et seq.*, "(i) [HASelect] holds a perfected security interest in the HAS Accounts and the Disputed Accounts pursuant to the MLA, (ii) any interest Tecumseh claims in any of the HAS Accounts or the Disputed Accounts is subordinate and subject to HASelect's prior, perfected security interest in the same, (iii) any interest Tecumseh claims in any of the HAS Accounts or the Disputed Accounts was unperfected as of the Petition Date, and (iv) HASelect is entitled to immediate possession of the HAS Accounts and the Disputed Accounts and all proceeds thereof." Amended Complaint, ¶ 60.

b. Count II seeks a "preliminary injunction prohibiting Tecumseh from collecting, transferring, or otherwise disposing of the HAS Accounts and or the Disputed Accounts[,]" contending, upon information and belief, that "Tecumseh is in possession of or is exercising control over the HAS Accounts and the Disputed Accounts." Id., ¶¶ 63, 69.

c. Count III alleges conversion, asserting that Tecumseh colluded with the Debtor to purchase HAS Accounts and Disputed Accounts "in violation of HASelect's perfected, first-priority security interest therein and in violation of HASelect's rights under the MLA" and that Tecumseh collected and retained proceeds from the HAS Accounts and the Disputed Accounts. Id., ¶¶ 73, 76, 79, 81.[4]

d. Count IV alleges unjust enrichment, which echoes the conversion claim and adds that it would be inequitable to allow Tecumseh to retain the benefit of the purported proceeds of the HAS Accounts and Disputed Accounts. Id., ¶¶ 91, 96.

---

[4] HASelect alleges that Tecumseh collected proceeds of the HAS Accounts "in an unknown amount believed to exceed $200,000" and collected proceeds of the Disputed Accounts "in an unknown amount believed to exceed $1,200,000." Id. at ¶¶ 76, 81.

D.     **The Trustee's Claim.**

17.    The Trustee asserts a single counterclaim for avoidance of Tecumseh's interest under Section 544(a)(1), alleging that Tecumseh's interest was not perfected under NRS 104.9310(1) and is subordinate to the rights of a judicial lien creditor under NRS 104.9317. See Counterclaim, ¶¶ 22-30. Further, the Trustee seeks to preserve the transfer for the benefit of the estate under Section 551. See id., ¶ 31.

18.    HASelect purchased any causes of action belonging to the estate related to the Disputed Accounts, including Chapter 5 causes of action, and now seeks to substitute in the place of the estate in this Adversary. ECF No. 45.

## II. LEGAL ARGUMENT

A.     **Plaintiffs Must Establish Subject Matter Jurisdiction.**

Federal Rule of Bankruptcy Procedure 7012 incorporates Federal Rule of Civil Procedure 12(b)(1), which allows a party to move to dismiss a case for lack of subject matter jurisdiction. Because federal courts, and particularly the bankruptcy courts, are courts of limited jurisdiction, it is the burden of the plaintiff to establish subject matter jurisdiction. Michigan S. R.R. v. Branch & St. Joseph Ct. Rail Users Ass'n, 287 F.3d 568, 573 (6th Cir. 2002) ("… the plaintiff must show that the complaint alleges a claim under federal law, and that the claim is "substantial."); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379–80 (1994).

B.     **The Court Lacks Subject Matter Jurisdiction Over HASelect's State Law Claims.**

This Court has subject matter jurisdiction over cases or controversies "arising in," "arising under," or "related to" the Bankruptcy Code. 28 U.S.C. §§ 157(a) and 1334(b). HASelect's claims fail to satisfy any of these standards.

A matter "arises under" the Bankruptcy Code "if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." Battle Ground Plaza v. Ray (In re Ray), 624 F.3d 1124, 1131 (9th Cir. 2010) (citations omitted); Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Courtyard), 729 F.3d 1279, 1284-1285 (9th Cir. 2013) ("Proceedings 'arising under' title 11 involve causes of action created or determined by a statutory provision of that title….").

Garman Turner Gordon
Attorneys at Law
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

7

A proceeding "arises in" a case under the Bankruptcy Code "if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." In re Ray, 624 F.3d 1124, 1131 (citations omitted). Proceedings "arising in" a case under the Bankruptcy Code "are not those created or determined by the bankruptcy code, but which would have no existence outside of a bankruptcy case." In re Wilshire Courtyard, 729 F.3d at 1285 (citing Maitland v. Mitchell (In re Harris Pine Mills), 44 F.3d 1431, 1435–37 (9th Cir. 1995)). To establish that a proceeding "arises in" a bankruptcy case, there must be an "inextricable link" between the claim and the conduct of the bankruptcy case, particularly where the claim is based in state law. Maitland, 44 F.3d at 1435-37, 1438 (holding that bankruptcy court had jurisdiction to hear claims by would-be purchaser against trustee relating to sale of assets which sounded in fraud and other state court causes of action because they arose out of the administration of the estate).

HASelect asserts claims for declaratory relief based on state law, conversion, unjust enrichment, and related equitable relief.  None are claims "arising under" the Bankruptcy Code because they are not created or determined by the Bankruptcy Code, nor does their existence depend on a substantive provision of bankruptcy law. Instead, HASelect's alleged claims rise and fall under Article 9 and state common law, and they can be raised in another forum. Similarly, HASelect's claims do not "arise in" a case under the Bankruptcy Code because they exist independent of the Debtor's bankruptcy case. HASelect's allegations did not arise out of any events occurring during the administration of the Debtor's bankruptcy case, but from transactions that occurred prior to the Petition Date. These claims would have had to be litigated between HASelect and Tecumseh even if no bankruptcy case had been filed.

HASelect's alleged claims also fail to meet the "related to" standard for jurisdiction. In In re Fietz, 852 F.2d 455, 457 (9th Cir. 1988), the court articulated the Ninth Circuit test for "related to" jurisdiction as "whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to a bankruptcy case "if the outcome

could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Id., at 457 (citations omitted).

Here, HASelect's alleged claims solely concern two non-debtors' respective rights, title, interests, and encumbrances in the Disputed Accounts and the proceeds of the HAS Accounts and the Disputed Accounts, none of which are property of the estate because the HAS Accounts were abandoned and the Disputed Accounts were sold to HASelect. See ECF Nos. 97, 106, 184.

**C.　HASelect Lacks Standing to Assert Chapter 5 Claims.**

A trustee has only "those powers conferred upon him by the Code, and he alone can exercise those rights to the exclusion of all others." Delgado Oil Co. v. Torres, 785 F.2d 857, 860 (10th Cir. 1986). This status protects the public policy goals of achieving "an equality of distribution" among creditors and maximizing the benefit to the bankruptcy estate. Id. Those powers include the collective avoidance powers under Section 544 *et. seq.* See 11 U.S.C. § 544(a) ("[t]he trustee shall have . . . the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by" certain creditors or a bona fide purchaser of real property); 11 U.S.C. § 323 (providing that the trustee in a case under the Code is the representative of the estate and has the capacity to sue and be sued).

With rare exception, a creditor lacks standing to wield these "strong arm powers" under Section 544 if that creditor is acting solely for its own benefit. Briggs v. Kent (In re Prof'l Inv. Properties of Am.), 955 F.2d 623, 626 (9th Cir. 1992). In Briggs, the court held that a trustee could transfer its avoidance powers: (1) pursuant to a Chapter 11 reorganization plan, or (2) outside a Chapter 11 reorganization plan, when a creditor is pursuing interests common to all creditors. Id. ("If a creditor is pursuing interests common to all creditors or is appointed for the purpose of enforcement of the plan, he may exercise the trustee's avoidance powers."); see also Texas Gen. Petroleum Corp. v. Evans (In re Texas Gen. Petroleum Corp.), 58 B.R. 357, 358 (Bankr. S.D. Tex. 1986) (creditor prosecuting the claims of the estate must act to the benefit of the estate as a whole).

Briggs was reaffirmed in Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), where the court concluded that a creditor may exercise a trustee's avoidance powers if allowing

the creditor to exercise those powers will benefit the remaining creditors or the creditor is appointed for the purpose of enforcement of the plan. 177 F.3d 774, 782–83 (9th Cir. 1999) (affirming order authorizing the assignment of avoidance claims where the remaining creditors would receive 50% of proceeds if creditor-assignee prevailed on the claims).

Subsequently, the Bankruptcy Appellate Panel construed Briggs and P.R.T.C. to stand for the proposition that "trustee avoiding powers may be transferred for a sum certain" and that P.R.T.C. and Briggs "do not mandate . . . that the avoidance powers can only be sold to a creditor who agrees to pursue those avoidance powers for the benefit of all creditors." Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 288 (9th Cir. BAP 2005) (citing P.R.T.C., 177 F.3d at 781–82; Briggs, 955 F.2d at 625–26).

However, neither Lahijani nor P.R.T.C. dispenses with the requirement that a creditor pursuing avoidance actions do so for the benefit of the estate. Rather, they stand for the proposition that a transfer of avoidance powers to a party that will effectively abandon those claims is properly evaluated as both a sale of an estate asset under Section 363 and a compromise under Rule 9019. See In re Delannoy, 833 F. App'x 116, 119 (9th Cir. 2020) (unpublished); Silverman v. Birdsell, 796 F. App'x 935, 937 (9th Cir. 2020) (unpublished). By contrast, where a creditor acquires avoidance claims to pursue them, the creditor may do so only when it benefits the remaining creditors. See Silverman, 706 F. Appx at 937.

Here, there is no question that HASelect is seeking to pursue the estate's avoidance claim for its exclusive benefit—the APA does not provide for any further payment to the Trustee or the estate were HASelect to prevail on its Section 544 claim, nor does it provide for the estate or other creditors to share in any recovery.

Accordingly, HASelect lacks standing to pursue claims arising under Section 544 and the Court lacks subject matter jurisdiction over the suit. Righthaven LLC v. Hoehn, 716 F.3d 1166, 1172 (9th Cir. 2013) (in the absence of standing, a federal court "lacks subject matter jurisdiction over the suit.") (citations omitted).

### III. CONCLUSION

This Adversary has nothing to do with the Debtor's bankruptcy or the estate, but is an action between two non-debtors arising from transactions that occurred prior to the Petition Date that will be determined under state law. The one claim that technically "arises under" the Bankruptcy Code by virtue of Section 544(a) and 551 ceased to exist when the Trustee transferred the claim to HASelect, who has no standing to pursue it. Accordingly, the Court lacks subject matter jurisdiction and both HASelect's Amended Complaint and the Trustee's Counterclaim should be dismissed.

Dated: March 22, 2022.

Respectfully submitted,

GARMAN TURNER GORDON LLP

By: /s/ Gabrielle A. Hamm
Gerald M. Gordon, Esq.
William M. Noall, Esq.
Gabrielle A. Hamm, Esq.
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119

and

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

4863-8173-5190, v. 2