Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:   blarsen@shea.law
           kwyant@shea.law

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>INFINITY CAPITAL MANAGEMENT, INC.<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7 |
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br><br>Plaintiff,<br>v.<br>TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Defendant. | Adversary Case No. 21-01167-abl |
| TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Counter-Claimant,<br>v.<br>HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP; ROBERT E. ATKINSON, CHAPTER 7 TRUSTEE<br><br>Counter-Defendants. | Hearing Date: May 26, 2022<br>Hearing Time: 9:30 a.m. |

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

|   |   |
|---|---|
| ROBERT E. ATKINSON, CHAPTER 7 TRUSTEE, | |
| | Counter-Claimant |
| v. | |
| TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP, | |
| | Counter-Defendant |

**HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S OPPOSITION TO TECUMSEH-INFINITY MEDICAL RECEIVABLE FUND, LP'S MOTION TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION**

HASelect-Medical Receivables Litigation Finance Fund International SP ("HASelect"), by and through its undersigned counsel, hereby files its Opposition (the "Opposition") to Tecumseh-Infinity Medical Receivable Fund, LP's ("Tecumseh") *Motion to Dismiss All Claims for Lack of Subject Matter Jurisdiction* (the "Motion") [AECF No. 59].[1] This Opposition is made and based on the points and authorities provided herein, the pleadings and papers on file in the Bankruptcy Case as well as the Adversary Proceeding, judicial notice of which is hereby respectfully requested,[2] any exhibits attached hereto, and any oral argument that the Court will hear at the time of the Motion.

DATED this 12th day of May 2022.

**SHEA LARSEN**

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Kyle M. Wyant, Esq.
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

---

[1] Throughout this Opposition, all references to AECF No. ___ are citations to electronic filings in Adversary Case No. 21-01167-abl while references to ECF No. ___ are citations to electronic filings in Bankruptcy Case No. 21-14486-abl.

[2] This Court should take judicial notice of all materials appearing on the docket in the above-captioned Chapter 7 Bankruptcy Case and related adversary proceeding. *See* FRE 201(b); *see also U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.)*, 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case, and public records.") (cited by *In re Fikrou*, No. 19-13180-mkn, 2019 Bankr. LEXIS 2613, n. 2 (D. Nev. Bankr. Aug. 8, 2019)).

- 2 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Tecumseh's Motion is not well taken.  In its recent oral ruling granting Chapter 7 Trustee Robert Atkinson's (the "Trustee") *Motion to Substitute Party and Recaption Case*[3] (the "Motion to Substitute"), this Court unequivocally rejected the arguments on which Tecumseh's Motion is based, expressly finding both (i) this Court holds subject matter jurisdiction over this adversary proceeding and (ii) HASelect has standing to prosecute the avoidance claims it purchased from the bankruptcy estate.  Given these findings, Tecumseh's Motion should be denied without further consideration.

Contrary to such findings, Tecumseh incorrectly argues the Court lacks subject matter jurisdiction over the claims asserted in the Adversary Complaint.  There should be no question that HASelect's claims against Tecumseh are properly before this Court.  The Court clearly has "arising under" subject matter jurisdiction over at least the avoidance claims HASelect purchased from the Trustee.  Moreover, the Court holds "related to" subject matter jurisdiction over HASelect's remaining claims as such claims will "conceivably alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) in such a way as to impact on the administration of the bankruptcy estate."  *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1998).

Similarly, Tecumseh is plainly wrong in arguing that HASelect lacks standing to pursue the avoidance claims it purchased from the Trustee.  Having paid $100,000 to purchase these avoidance claims pursuant to this Court's order approving the sale of the same[4], HASelect has satisfied all standing requirements and owes no obligation to pursue such claims for the benefit of all creditors.  Like this Court, other Ninth Circuit courts have repeatedly rejected Tecumseh's standing argument.  *See, e.g., Brookview Apts., L.L.C. v. Hower (In re Weigh)*, 576 B.R. 189, 206-07 (C.D. Cal. 2017) ("for the purposes of a creditor-assignee's standing to pursue a bankruptcy avoidance action, it is sufficient that the estate benefit in some way from the assignment, not that any recovery on that action inure to the direct benefit of other creditors.").  Here, HASelect's purchase of the avoidance

---

[3] AECF No. 45.

[4] ECF No. 184.

claims for $100,000 undoubtedly provided a substantial benefit to the bankruptcy estate. There is no requirement that the bankruptcy estate benefit a second time from HASelect's prosecution of the avoidance claims in order for HASelect to enjoy standing to prosecute the avoidance claims it purchased.

Finally, further proof of the frivolous nature of Tecumseh's Motion lies in the fact that Tecumseh has asserted substantially similar counterclaims against HASelect and the Trustee relating to the disputed accounts at issue in this adversary proceeding. Indeed, throughout its Counterclaim[5] Tecumseh asserts that "this Court is vested with the power to declare the rights and liabilities of the parties and to grant such other further relief as may be necessary."[6] Through its own numerous filings in both this adversary proceeding and the chapter 7 case, including its proof of claim, Tecumseh has brought the claims at issue squarely within the subject matter jurisdiction of this Court. Tecumseh's obtuse arguments to the contrary ignore its own role in this adversary proceeding and must be rejected. For these reasons and those expressed more fully below, Tecumseh's Motion must be denied.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.     HASelect's Relationship with Infinity and the Loan Transaction

1.  Beginning in February 2019, HASelect made a series of loans to Debtor Infinity Capital Management, Inc. ("Infinity") that were documented through various written loan agreements and promissory notes through which Infinity pledged substantially all of its personal property, including accounts receivable, to HASelect as collateral for such loans.[7]

2.  HASelect perfected its security interest in all of Infinity's personal property through the filing of a UCC-1 with the Nevada Secretary of State on February 19, 2019.[8]

3.  On or about December 18, 2019, HASelect, which was then doing business under the name HASelect-FTM Medical Receivables Litigation Finance Fund SP, and Infinity entered into a

---

[5] AECF No. 12.

[6] AECF No. 12 at ¶¶ 26, 41, and 52.

[7] AECF No. 54.

[8] *Id.*; *see also* AECF No. 57-2.

1 Second Amended & Restated Loan and Security Agreement and Promissory Note (together with all

2 prior and related loan documents, the "MLA"), which amended and superseded all prior written loan

3 agreements and promissory notes entered into between HASelect and Infinity.[9]

4     4. Accordingly, HASelect holds a perfected security interest in all of Infinity's personal

5 property (as defined in § 4.1 of the MLA, the "Collateral"). Specifically, Section 4.1 of the MLA

6 describes the Collateral as follows:

> To secure the payment and performance when due of all of the Borrower's obligations hereunder and under the Note, Borrower hereby grants to Lender a security interest in the Receivables and the Alternative Receivables, and all of its other personal property, including without limitation, all of Borrower's interest in the following, whether now owned or hereafter acquired, and wherever located, but excluding the Permitted Liens: All Goods, Inventory, Equipment, Fixtures, Accounts, General Intangibles, Instruments, Chattel Paper, Documents, Commercial Tort Claims, Investment Property, Letter of Credit Rights, Deposit Accounts, and all money, and all other property now or at any time in the future in Lender's possession (including claims and credit balances), and all proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties), all products and all books and records related to any of the foregoing (all of the foregoing, together with all other property in which Lender may now or in the future be granted a lien or security interest, is referred to herein, collectively, as the "Collateral").[10]

    5. Pursuant to the MLA, Infinity agreed to use the loan proceeds it received from HASelect to purchase accounts receivable from medical providers.[11]

    6. Such accounts receivable generally arose from medical treatment or prescription medication provided to individuals who were injured in accidents and had asserted personal injury claims against third parties. These accounts receivable are secured by liens against these personal injury claims and are typically paid at the time the personal injury claims are settled.[12]

    7. Infinity purchased these accounts receivable pursuant to contracts it entered into directly with various medical providers.[13] In addition to the contracts Infinity entered into with the sellers of these accounts receivable, Infinity also received direct assignments of the individual

---

[9] AECF No. 57-1.

[10] *Id.*

[11] *Id.*

[12] AECF No. 54.

[13] *See* Infinity's Amended Schedule G filed in the chapter 7 case at ECF No. 91.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

personal injury claimants' rights to recovery.[14]

8. To ensure that HASelect received a perfected, first-priority security interest in all accounts receivable purchased by Infinity (as well as all other Collateral), HASelect required that Infinity use part of loan proceeds advanced by HASelect to repay and retire a prior secured debt owed to Law Finance Group, LLC, which had similarly advanced funds to Infinity for the purchase of accounts receivable.

9. From February 2019 through April 2020, HASelect advanced loan proceeds totaling approximately $13.7 million to Infinity, which was obligated under the MLA to use such proceeds to purchase accounts receivable.[15]

**B.    Infinity's Sale of HASelect's Collateral to Tecumseh**

10. On or about June 18, 2020, Infinity and Tecumseh entered into a Sub-Advisory Agreement[16] (the "<u>Sub-Advisory Agreement</u>") under which Infinity agreed, among other things, to "assist [Tecumseh] in acquiring an interest in medical receivables in connection with personal injury cases" in exchange for which Tecumseh agreed to pay Infinity a 20% fee at the time of acquisition as well as 15% of the net profit earned on each such account receivable at the time of collection.

11. Upon signing the Sub-Advisory Agreement, Infinity began preparing to transfer accounts receivable in which HASelect held a perfected, first-priority security interest to Tecumseh by, among other things, removing the electronic stamps that identified such accounts receivable as HASelect's Collateral.[17]

12. Infinity then began selling accounts receivable in which HASelect held a perfected, first-priority security interest to Tecumseh without HASelect's knowledge or consent and in violation of Infinity's contractual obligations under the MLA.

13. Tecumseh has admitted that accounts receivable of at least $6,792,518.86 were

---

[14] AECF No. 57-4.
[15] AECF No. 54.
[16] AECF No. 57-5.
[17] AECF No. 57-3.

purchased from Infinity.[18]

14. Tecumseh did not file any UCC-1 financing statement to perfect any interest it claims in any of the accounts it purchased through or from Infinity.

C. **Infinity Files for Bankruptcy, and HASelect and the Trustee Assert Claims against Tecumseh.**

15. On September 14, 2021, Infinity filed its Chapter 7 Voluntary Petition commencing the above-captioned Bankruptcy Case No. 21-14486-abl.

16. On September 22, 2021, HASelect and the Trustee moved for an order authorizing the Trustee to abandon the Collateral and HASelect moved for relief from the automatic stay to immediately take possession of the Collateral.[19]

17. On October 15, 2021, the Court entered an Order authorizing the Trustee's abandonment of the Collateral to HASelect, expressly excluding abandonment of any of the Disputed Accounts (as defined in the motion papers) and proceeds thereof to HASelect (the "Abandonment Order").[20]

18. On October 19, 2021, HASelect commenced the above-captioned Adversary Case No. 21-01167-abl against Tecumseh.

19. On October 21, 2021, the Court entered an order granting stay relief and permitting HASelect to immediately take possession of the Collateral and enforce its rights therein, again expressly excluding the Disputed Accounts and proceeds thereof (the "Stay Relief Order").[21]

20. On January 7, 2022, Tecumseh filed its Proof of Claim in the Bankruptcy Case.[22]

21. On February 8, 2022, the Court entered an Order approving the Trustee's sale to HASelect of whatever interest the estate had in the Disputed Accounts, including proceeds, claims and causes of action relating to the same (including § 544 claims) and the books and records relating

---

[18] ECF No. 54.

[19] ECF Nos. 12 and 17.

[20] ECF No. 97.

[21] ECF No. 106.

[22] Claim No. 11-1.

to the foregoing (the "Sale Order").[23]

22. On February 22, 2022, the Trustee filed notice that the sale of these assets was consummated to HASelect, and that the $100,000 payment provided by HASelect in return for these rights was paid to the bankruptcy estate.[24]

23. On February 28, 2022, the Trustee filed his Motion to Substitute, which was opposed by Tecumseh on largely the same grounds as presently raised by Tecumseh in its Motion to Dismiss.[25]

24. On April 28, 2022, the Court entered its oral ruling granting the Trustee's Motion to Substitute, finding (i) this Court holds both "arising under" and "related to" subject matter jurisdiction over the claims at issue in this adversary proceeding and (ii) HASelect's payment of $100,000 to purchase the avoidance claims conferred a substantial benefit on the bankruptcy estate and, as such, HASelect has standing to prosecute those avoidance claims for its own benefit.

### III.  LEGAL ARGUMENT

#### A.  Legal Standard

Subject matter jurisdiction is measured at the time a complaint is filed. *See In re Weigh*, 576 B.R. at 199 (collecting cases). The plaintiff invoking the jurisdiction of the court bears the burden of establishing the court's subject matter jurisdiction. *Id.* Bankruptcy courts have subject matter "jurisdiction over all civil proceedings (1) 'arising under title 11,' i.e., any proceedings to enforce rights created by the Bankruptcy Code, (2) 'arising in' a bankruptcy case, i.e., other proceedings that would not exist outside a bankruptcy case, such as case administration, *or* (3) 'related to' a bankruptcy case, i.e., any proceedings the outcome of which could conceivably have any effect on the bankruptcy estate." *Id.* (citing to, among others, *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009) and *In re Fietz*, 852 F.2d at 547) (emphasis supplied); *see also* 28 U.S.C. § 1334(b).

The use of the word "or" means that a party establishing subject matter jurisdiction need only show that jurisdiction exists under one of these bases. *See, e.g.*, *In re Weigh*, 576 B.R. at 201 ("It

---

[23] ECF No. 184.
[24] ECF No. 190.
[25] *See* AECF No. 61.

- 8 -

was not necessary for the Court to have more than one basis to assert jurisdiction over the claims."); *Evans v. Tippie, (In re C&M Russel, LLC)*, 2017 Bankr. LEXIS 265 (C.D. Cal. Bankr. Jan. 31, 2017) ("The court does not reach Defendants' arguments based on 'arising in' or arising under' jurisdiction because its determination of 'related to' jurisdiction is sufficient to establish subject matter jurisdiction and thus, it is unnecessary to address those arguments."). Here, the Court has subject matter jurisdiction over the claims asserted by HASelect against Tecumseh under both "arising under" and "related to" jurisdiction, and thus, the Motion should be denied.

### B. HASelect has Standing to Pursue the Avoidance Claims It Purchased.

In its Motion, Tecumseh improperly asserts that HASelect lacks standing to pursue the avoidance claims it purchased from Debtor's bankruptcy estate. Tecumseh wrongly argues, based on outdated and since clarified case law, that a creditor who purchases a Trustee's rights to bring 544 claims only has standing to assert such claims if it does so for the benefit of all creditors, relying on *Briggs v. Kent (In re Prof'l Invs. Properties of Am.)*, 955 F.2d 623 (9th Cir. 1992) and *Duckor Spralding & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774 (9th Cir. 1999).[26] However, the Ninth Circuit B.A.P. and other courts in the Ninth Circuit have more recently held that neither *Briggs* nor *P.R.T.C.* stand for such a proposition, clarifying that a creditor that purchases avoidance claims for valuable consideration can prosecute such claims for its own benefit.

"[T]he Ninth Circuit Court of Appeals has held that a trustee or debtor in possession—outside of a plan of reorganization but with judicial approval—may sell or transfer its avoidance powers to a creditor and effectively confer standing on the creditor to pursue those claims." *See In re Weigh*, 576 B.R. at 206-07 (citing to *Briggs*, *P.R.T.C.*, and *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 288 (9th Cir. B.A.P. 2005)).

The Ninth Circuit B.A.P. has specifically rejected the very same argument that Tecumseh makes here. *See In re Lahijani*, 325 B.R. at 288. In rejecting this argument, the *In re Lahijani* court bluntly confronted *Briggs* and *P.R.T.C.* and stated:

> The difficulty with this argument is that, under the law of the circuit, trustee avoiding powers may be transferred for a sum certain. *P.R.T.C.*, 177 F.3d at 781-

---

[26] *See* Motion, 4:5-19.

- 9 -

> 82; *Briggs*, 955 F.2d at 625-26. The benefit to the estate in such circumstances is the sale price, which might or might not include a portion of future recoveries for the estate. **Thus, P.R.T.C. and Briggs do not mandate, as appellants contend that the avoidance powers can only be sold to a creditor who agrees to pursue those avoidance powers for the benefit of all creditors**.

*Id.* (emphasis supplied). Less than four months ago, the Ninth Circuit B.A.P. again rejected the argument on which Tecumseh's Motion relies by reaffirming that a creditor that has purchased avoidance claims enjoys standing to prosecute such claims for its own benefit. *See Binh Huu Do v. Eiler (In re Portland Injury Inst., LLC)*, BAP No. OR-21-1138-GTB, 2022 Bankr. LEXIS 253, *11-12 (9th Cir. BAP Jan. 27, 2022) (unpublished). :

> Finally, Dr. Do contends that under the holding of *P.R.T.C.*, the avoidance actions could be sold only to a third party who would pursue interests common to all creditors and would exercise the avoidance powers for the benefit of all creditors. We specifically rejected this argument in *Lahijani*:
>
> > We reject appellants' argument that the avoiding power causes of action should not have been sold to one who would not exercise the powers for the benefit of all creditors.

*Id.* The Ninth Circuit B.A.P. is not alone in holding as such. *See, e.g.*, *In re Weigh*, 576 B.R. at 206-07 ("Thus, for the purposes of a creditor-assignee's standing to pursue a bankruptcy avoidance action, it is sufficient that the estate benefit in some way from the assignment, not that any recovery on that action inure to the direct benefit of other creditors.").

Tecumseh's Motion reluctantly acknowledges the above cases and the Ninth Circuit's clear retreat from any implication that a creditor must, after purchasing avoidance claims, pursue such claims for the benefit of all creditors. Yet, Tecumseh stubbornly argues these cases do not "dispense[] with the requirement that a creditor pursuing avoidance actions do so for the benefit of the estate." Tecumseh intentionally ignores the fact that HASelect's purchase of the avoidance claims for $100,000 provided a substantial benefit to the bankruptcy estate, which clearly resolves any question as to HASelect's standing to prosecute the avoidance claims. *See In re Lahijani*, 325 B.R. at 288 ("the benefit to the estate in such circumstances is the sale price, which might or might not include a portion of future recoveries for the estate.").

The bankruptcy estate further benefits from HASelect pursuing the avoidance claims by avoiding the risk and expense of prosecuting such claims itself. Moreover, if HASelect is successful

in prosecuting the avoidance claims, Tecumseh would become an unsecured creditor rather than a secured creditor, which would further benefit the bankruptcy estate. *See, e.g.*, *In re Gaskins*, 98 B.R. 328, 330-31 (E.D. Tenn. Bankr. 1989) ("Benefit to the bankruptcy estate is easy to see when the suit may extinguish a claim" and further acknowledging benefit to the estate because when a claim would be changed from secured to unsecured). Accordingly, the Court should reject Tecumseh's baseless arguments and confirm that HASelect enjoys standing to pursue the avoidance claims it purchased for its own benefit.

### D. This Court Has Subject Matter Jurisdiction Over HASelect's Claims Against Tecumseh.

By way of its First Amended Complaint against Tecumseh, HASelect has asserted the following claims: (1) declaratory relief against Tecumseh seeking a declaration that HASelect has priority over the accounts receivable in dispute; (2) injunctive relief seeking to preclude Tecumseh from collecting or otherwise disposing of the disputed receivables; (3) conversion by Tecumseh of the accounts in dispute; and (4) that Tecumseh was unjustly enriched by its collection and retention of proceeds relating to the disputed accounts. The Trustee similarly asserted a counterclaim against Tecumseh seeking to avoid any alleged interest of Tecumseh in the disputed accounts, pursuant to Section 544(a)(1). Pursuant to the Sale Order approving the purchase by HASelect of all avoidance claims relating to the disputed accounts at issue, the Trustee successfully moved to substitute HASelect in its place to prosecute his counterclaim against Tecumseh. All of these claims are properly before this Court under either "arising under" or "related to" jurisdiction.

#### 1. *Tecumseh Has Consented to the Court's Subject Matter Jurisdiction over the Claims at Issue in this Adversary Proceeding.*

In addition to the following arguments, all of which confirm the Court's subject matter jurisdiction over this adversary proceeding, the Court enjoys subject matter jurisdiction over the claims at issue in this adversary proceeding based on Tecumseh's own actions in bringing these claims before the Court through the filing of its proof of claim in Infinity's chapter 7 case.[27] Courts

---

[27] Tecumseh has also stated numerous times in its Counterclaim that "this Court is vested with the power to declare the rights and liabilities of the parties and to grant such other future relief as may be necessary," which undercuts Tecumseh's arguments in the Motion that this Court lacks jurisdiction over such claims.

- 11 -

routinely hold that the filing of a proof of claim conveys subject matter jurisdiction over the claim and related documents. *See, e.g.*, *In re Timberline Four Seasons Utils., Inc.*, No. 21-bk-00125, 2021 Bankr. LEXIS 2939, *12 n.9 (N.D. W.Va. Oct. 25, 2021) ("The filing of a proof of claim confers upon this court personal jurisdiction over the claimant in addition to conveying subject matter jurisdiction over the claim.") (citing *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990)); *In re Ass'n of Volleyball Prof'ls*, 256 B.R. 313 (C.D. Cal. 2000) ("Thus a proof of claim confers on the bankruptcy court…subject matter jurisdiction over the claim.") (citing *Tucker Plastics, Inc. v. Pay'N'Pak Stores, Inc. (In re PNP Holdings Corp.)*, 99 F.3d 910 (9th Cir. 1996)); *Durkin v. Benedor Corp. (In re G.I. Indus.)*, 204 F.3d 1276, 1279-80 (9th Cir. 2000) (finding that by filing a proof of claim, the claim and underlying agreement supporting the claim were subject to the bankruptcy court's jurisdiction).

On January 7, 2022, Tecumseh filed its proof of claim in the bankruptcy case and attached the Sub-Advisor Agreement under which it claims to own the disputed accounts at issue in this adversary proceeding.[28]  Seemingly aware that filing a proof of claim confers subject matter jurisdiction to the bankruptcy court, Tecumseh included a futile "Reservation of Rights" in its proof of claim, expressly stating that Tecumseh does not submit to the jurisdiction of the bankruptcy court and seeks to preserve jurisdictional defenses.  However, anti-waiver provisions relating to jurisdiction in proofs of claim are ineffective. *See In re China Fishery Grp. Ltd (Cayman)*, No. 16-11895, 2017 Bankr. LEXIS 2017, *16-20 (S.D.N.Y. Bankr. July 19, 2017).  In *In re China Fishery*, a creditor filing a proof of claim included similar language in its claim stating the "filing of this Proof of Claim is not…a consent by the Claimant to the jurisdiction of the Bankruptcy Court with respect to the subject matter of the Claim…." *Id.* At *16-17.  Reviewing such language, the court held this attempted "anti-waiver" provision was ineffective and that the filing of the proof of claim undoubtedly conferred jurisdiction as to the claim and the underlying documents. *Id.* At *17 (collecting cases).  Accordingly, by filing its proof of claim, Tecumseh plainly subjected its claims to this Court's jurisdiction notwithstanding any "anti-waiver" language included in its proof of

---

[28] *See* Claim No. 11-1 in the Bankruptcy Case.

claim.

Based on Tecumseh filing its proof of claim as well as the Sub-Advisor Agreement, the Court has subject matter jurisdiction relating to both of these documents. The dispute between Tecumseh and HASelect centers on HASelect's rights in the disputed accounts under its perfected security interest in the same as compared to Tecumseh's claim to ownership of the disputed accounts it claims to have purchased under the Sub-Advisory Agreement. Thus, the priority dispute at issue in this adversary proceeding directly relates to the Sub-Advisory Agreement, the corresponding relationship between Tecumseh and Debtor, and HASelect's perfected security interest in the disputed accounts at issue. Even if the Court's "arising under," "related to," and supplemental jurisdiction over the claims at issue in this adversary proceeding are ignored, Tecumseh's filing of its proof of claim still subjects these claims to the Court's jurisdiction. Consequently, the Motion must be denied.

2. *The Section 544 Claim Falls within the Court's "Arising under" Jurisdiction.*

The Court has granted the Trustee's Motion to Substitute, resulting in HASelect stepping into the Trustee's shoes to prosecute the Trustee's Section 544 claim against Tecumseh. The Section 544 claim is properly before this Court as it falls within this Court's "arising under" jurisdiction.

A proceeding "arises under" title 11 if it involves a "cause of action created or determined by a statutory provision of title 11." *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995). The Section 544 claim is a creature of statute, arising out of 11 U.S.C. § 544. Put differently, "arising under" jurisdiction exists where a substantive right is created by title 11. *See Wilshire Courtyard v. Cal Franchise Tax Bd. (In re Courtyard)*, 729 F.3d 1279, 1284-85 (9th Cir. 2013). Courts have expressly found that Section 544 claims fall within a bankruptcy court's "arising under" subject matter jurisdiction. *See, e.g.*, *Customized Distrib., LLC v. Coastal Bank & Trust (In re Lee's Famous Recipes, Inc.)*, No. 11-5482, 2011 Bankr. LEXIS 5250, (N.D. Ga. Dec. 12, 2011) (expressly stating that avoidance action claims—i.e. Section 544(b)—are types of substantive rights created by title 11 and thus confer arising under jurisdiction); *Carlton v. Baww, Inc.*, 751 F.2d 781 (5th Cir. 1985) (discussing the legislative history of bankruptcy court subject matter jurisdiction statute Section

- 13 -

1334(b) and stating that the use of the avoidance power under Section 544 "would be a proceeding arising under title 11."). This Court clearly has subject matter jurisdiction over the Section 544 claim.

### 3. *HASelect's Remaining Claims Fall within the Court's "Related to" Jurisdiction.*

HASelect's remaining claims for declaratory relief, equitable injunctive relief, conversion, and unjust enrichment all are based on the fact that HASelect holds a perfected security interest in all of the disputed accounts at issue. Tecumseh asserts that there is no "related to" jurisdiction because the disputed accounts at issue were abandoned and sold to HASelect; thus, they are no longer property of the estate.[29] However, Tecumseh's Motion fails to acknowledge that subject matter jurisdiction is measured at the time a complaint is filed. *See In re Fietz*, 852 at 457, n.2.

Here, HASelect filed its Adversary Complaint against Tecumseh on October 19, 2021. While any interest held by the bankruptcy estate in the disputed accounts was sold to HASelect, the Sale Order was not entered until February 8, 2022. Consequently, the bankruptcy estate's sale of the disputed accounts cannot divest the Court of subject matter jurisdiction over the same because the Court had subject matter jurisdiction at the time the Adversary Complaint was filed. Moreover, Tecumseh's reliance on the Abandonment Order and Stay Relief Order in arguing that these orders removed the disputed receivables from this Court's jurisdiction is entirely misplaced as both orders expressly excluded and carved out the disputed accounts. It is these disputed accounts that are at issue in the Adversary Proceeding, and this Court has "related to" jurisdiction over the same.

"Related to" jurisdiction is extremely broad. Under Ninth Circuit law, "related to" jurisdiction exists if "the outcome of the proceeding could ***conceivably have any effect*** on the estate being administered in bankruptcy." *Fietz*, 852 F.2d at 457 (emphasis supplied) (citing to *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) (reversed on other grounds)). The action "need not necessarily be against the debtor or the debtor's property," instead, it is "related to" the bankruptcy if its outcome could impact the administration of the bankrupt estate by affecting "the debtor's rights,

---

[29] *See* Motion, 9:4-7.

- 14 -

liabilities, options, or freedoms of action." *Id.* This is quite broad and is intended to allow bankruptcy courts to deal with all matters connected to the bankruptcy estate "efficiently and expeditiously." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995) (approving the *Pacor* test).

Courts have routinely found that ownership disputes and collection efforts relating to accounts receivable of a debtor fall under "related to" jurisdiction. *See, e.g.*, *Maislin Industries, U.S., Inc. v. A.J. Hollander Co.*, 69 B.R. 771 (E.D. Mich. Bankr. 1986) (finding related to jurisdiction to exist when there were issues regarding a security interest and ownership claims to accounts receivable); *In re Pennysaver USA Publ'g, LLC*, 587 B.R. 43 (Del. Bankr. 2018) (citing to *Pacor* and finding that a dispute over accounts receivable satisfied "related to" jurisdiction); *Wood v. Ghuste (In re Wood)*, 216 B.R. 1010 (M.D. Fla. 1998) ("[N]umerous courts have specifically held that proceedings to collect accounts receivable in which the underlying transaction occurred prepetition are within only the court's 'related to' jurisdiction…."); *In re F&L Plumbing & Heating Co.*, 114 B.R. 370 (E.D.N.Y. 1989) (collecting cases concluding that actions to collect on accounts receivable are core proceedings and "related to a case under title 11").

Here, the accounts receivable at issue and in dispute between HASelect and Tecumseh undoubtedly affect Debtor's rights or liabilities. Determining who has priority and the senior interest over the accounts receivable will determine who can take over the disputed accounts, and collect on the same, thereby affecting the claims and amounts thereof asserted against the Debtor. Put differently, if the disputed accounts are found to belong to HASelect as Collateral, then Tecumseh will likely assert further claims or increase the amount of its claim against Debtor, which is the basis of Tecumseh's proof of claim. The adversary proceeding will also determine the extent to which Debtor held ownership over the disputed accounts, which the Trustee has already claimed are property of the bankruptcy estate.[30] All of the foregoing shows that the broad reach of "related to" jurisdiction is satisfied by the claims at issue in the Adversary Proceeding against Tecumseh. *See, e.g.*, *In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir. 1988) ("[E]ven a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdiction test

---

[30] *See* Trustee's Supplement to Motion to Approve Abandonment of Collateral [ECF No. 64].

- 15 -

articulated in *Pacor*" and finding "related to" jurisdiction to exist over declaratory and injunctive relief claims because these claims could "conceivably have an impact on [debtor's] estate."). As the Court previously held in granting the Trustee's Motion to Substitute, subject matter jurisdiction clearly exists over the claims pending between HASelect and Tecumseh in this adversary proceeding. As such, Tecumseh's Motion must be denied.

        4.      *The Court Has Supplemental Jurisdiction over HASelect's Claims.*

The Court can also exercise supplemental jurisdiction over HASelect's declaratory relief, injunctive relief, conversion, and unjust enrichment claims. "Pursuant to 28 U.S.C. § 1367, district courts have supplemental jurisdiction over all other claims that are so related to the claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1195 (9th Cir. 2005). Supplemental jurisdiction under Section 1367 has been applied to bankruptcy claims, "even when the subject matter jurisdiction is based on 'related to' bankruptcy jurisdiction." *Id.* (citing *Sec. Farms v. Int'l Bhd. Of Teamsters*, 124 F.3d 999 (9th Cir. 1997)). For supplemental jurisdiction to exist, all the Court must find is that remaining claims involve a common nucleus of operative facts and could be resolved within one judicial proceeding. *Id.; see also Ward v. White River Contr., LLC (In re White River Contr., LLC)*, No. 20-90251, 2021 Bankr. LEXIS 2507, *11-13 (Mont. Bankr. Sept. 10, 2021) (citing to *Pegasus Gold* with approval and finding supplemental subject matter jurisdiction to exist).

Here, because HASelect has been substituted into the Trustee's stead for the Section 544 claim, this Court can exercise supplemental jurisdiction over the remaining claims in addition to its "related to" jurisdiction. Indeed, the Section 544 claim seeks to determine the priority of Tecumseh's interest, if any, in the same disputed accounts that are at issue in connection with HASelect's declaratory relief, unjust enrichment, and conversion claims. These claims arise out of the same common nucleus of operative facts as HASelect's remaining claims, as well as Tecumseh's counterclaims, and will undoubtedly involve analysis relating to the Sub-Advisory Agreement entered into between Tecumseh and Debtor and HASelect's perfected security interest as it relates

to Tecumseh's claim to ownership of the disputed accounts. Such circumstances constitute a "common nucleus of operative facts" sufficient for the Court to exercise its supplemental jurisdiction. *See, e.g.*, *Chubb v. LG Warranty Co., LLC (In re Access Ins. Servs.)*, No. 3:13-cv-00699, 2014 U.S. Dist. LEXIS 160527, *7-9 (D. Nev. Nov. 12, 2014) (finding that the factual overlap between common law claims and original jurisdiction claims was sufficient for supplemental jurisdiction).

### E. Based on the Frivolous Nature of its Motion, Tecumseh's Conduct in Pursuing the Motion Is Sanctionable.

In light of recent Ninth Circuit cases expressly rejecting the arguments on which Tecumseh's Motion is based and this Court's own rejection of those arguments in granting the Trustee's Motion to Substitute, Tecumseh's Motion is not based on any reasonable or valid legal theory. As such, the Motion is frivolous, and Tecumseh's continued pursuit of the Motion is sanctionable. While HASelect has not filed any motion seeking sanctions or to recover attorney fees incurred in opposing the Motion, it reserves the right to do so.

## IV. CONCLUSION

For the foregoing reasons, and as this Court has already determined in ruling on the Trustee's Motion to Substitute, this Court has subject matter jurisdiction over the claims at issue in this adversary proceeding, and HASelect enjoys standing to prosecute the avoidance claims it purchased from the bankruptcy estate. Accordingly, HASelect respectfully requests that the Court enter an order denying Tecumseh's Motion in its entirety.

DATED this 12th day of May 2022.

**SHEA LARSEN**

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

# CERTIFICATE OF SERVICE

1. On May 12, 2022, I served the following document(s): **HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S OPPOSITION TO TECUMSEH-INFINITY MEDICAL RECEIVABLE FUND, LP'S MOTION TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION**

2. I served the above document(s) by the following means to the persons as listed below:

   ☒　　a.　　ECF System:

   CLARISSE L. CRISOSTOMO on behalf of ROBERT E. ATKINSON
   clarisse@nv-lawfirm.com, bknotices@nv-lawfirm.com

   GERALD M GORDON on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   ggordon@gtg.legal, bknotices@gtg.legal

   GABRIELLE A. HAMM on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   ghamm@Gtg.legal, bknotices@gtg.legal

   MICHAEL D. NAPOLI on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   michael.napoli@akerman.com,
   cindy.ferguson@akerman.com;catherine.kretzschmar@akerman.com;laura.taveras@akerman.com;masterdocketlit@akerman.com;teresa.barrera@akerman.com

   ARIEL E. STERN on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   ariel.stern@akerman.com, akermanlas@akerman.com

   ☐　　b.　　United States mail, postage fully prepaid:

   ☐　　c.　　Personal Service:

   I personally delivered the document(s) to the persons at these addresses:

   　　☐　　For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

   　　☐　　For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

   ☐　　d.　　By direct email (as opposed to through the ECF System):
   Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

   ☐　　e.　　By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐    f.    By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 12, 2022.

By: /s/ *Bart K. Larsen, Esq,*