Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:   blarsen@shea.law
             kwyant@shea.law

*Attorneys for HASelect-Medical Receivables Litigation Finance Fund International SP*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7 |
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br><br>Plaintiff,<br><br>v.<br><br>TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Defendant. | Adversary Case No. 21-01167-abl<br><br>**DECLARATION OF MICHAEL GRIFFIN IN SUPPORT OF PLAINTIFF HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S OPPOSITION TO TECUMSEH-INFINITY MEDICAL RECEIVABLE FUND, LP'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DIRECT PURCHASE RECEIVABLES** |
| TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Counter-Plaintiff,<br><br>v.<br><br>HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP; ROBERT E. ATKINSON, CHAPTER 7 TRUSTEE<br><br>Counter-Defendants. | Hearing Date: October 25, 2022<br>Hearing Time: 1:30 p.m. |

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,

                Counter-Claimant,

v.

TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,

                Counter-Defendant.

I, Michael Griffin, hereby declare as follows:

1. I am over the age of twenty-one (21) years old and am mentally competent. I have personal knowledge of the matters set forth herein except as to those matters stated on information and belief, which I believe to be true, and if called upon as a witness to testify to these facts, I could and would competently and truthfully do so.

2. I am the majority member and manager of Griffin Asset Management LLC ("GAM"). GAM serves as asset manager to HASelect-Medical Receivables Litigation Finance Fund International SP ("HASelect"). HASelect is an investment fund that was sponsored by an affiliated entity, and GAM serves as its investment manager.

3. I make this Declaration in support of HASelect's Opposition to Tecumseh-Infinity Medical Receivables Fund, LP's ("Tecumseh") *Motion for Partial Summary Judgment as to Direct Purchase Receivables* [ECF No. 90].

4. I make this declaration based upon my own personal knowledge of the facts stated herein as well as my review of the certain books and records of GAM and HASelect related to the Debtor Infinity Capital Management, Inc. ("Debtor" or "Infinity"), including the exhibits attached to the Motion. I am familiar with the business operations and document retention practices of both GAM and HASelect. I am informed and believe that the business records I have reviewed in connection with the preparation of this Declaration, including the exhibits attached to the Motion, were made at or near the time of the events they document by, or from information transmitted by, a person with knowledge of such events, all in the course of regularly conducted business activities.

5. Beginning in February 2019, HASelect made several loans to Infinity that were documented through various loan agreements and promissory notes through which Infinity pledged substantially all of its assets to HASelect as collateral for such loans.

6. HASelect perfected its security interest in Infinity's assets through the filing of a UCC-1 with the Nevada Secretary of State on February 19, 2019.

7. On or about December 18, 2019, HASelect, which was then doing business under the name HASelect-FTM Medical Receivables Litigation Finance Fund SP, and Infinity entered into a Second Amended & Restated Loan and Security Agreement and Promissory Note (the "MLA").

8. The MLA superseded and restated all prior loans made by HASelect to Infinity as well as extended further credit to Infinity.

9. Pursuant to the MLA, HASelect continues to hold a perfected security interest in all of Infinity's assets as collateral for all indebtedness owed by Infinity in connection with the MLA.

10. As of September 14, 2021, Infinity owed total indebtedness in excess of $16 million to HASelect pursuant to the MLA.

11. The MLA loan proceeds were to be used by Infinity to purchase accounts receivables from medical providers. These accounts receivables generally arose from medical treatment provided to individuals who were injured in accidents and had asserted personal injury claims. These accounts receivables are generally secured by liens against these personal injury claims and are typically paid at the time the personal injury claims are settled.

12. To ensure that HASelect received a perfected, first-priority security interest in such accounts receivable (as well as all other Collateral), HASelect required that Infinity use part of loan proceeds advanced by HASelect to repay and retire a prior secured debt owed to Law Finance Group, LLC ("LFG"), which had similarly advanced funds to Infinity for the purchase of accounts receivable.

13. HASelect also required that Infinity apply an electronic stamp to certain documents associated with its accounts receivable to identify the accounts receivable as HASelect's Collateral.

14. To ensure loan proceeds were used appropriately by Infinity, HASelect engaged FTM Limited under a sub-advisory agreement dated February 7, 2019 (the "FTM Agreement") to provide

sub-advisory and fiduciary services to HASelect that included the investigation and verification of accounts receivable to be purchased by Infinity and the review and approval of draw requests submitted by Infinity on which HASelect relied in advancing funds to Infinity under the Loan.

15. Under the FTM Agreement, FTM Limited agreed that its services would be exclusive to GAM and HASelect and agreed it would not use, disclose, or distribute any confidential information received from GAM or HASelect. FTM Limited also agreed that it would act professionally and in best interests of GAM and HASelect at all times and that its principals would act in accordance with the FTM Agreement.

16. FTM Limited is a Vanatu limited liability company and that the principals of FTM Limited are Endre Debozy and William Dalzell. Debozy and Dalzell introduced HASelect to Infinity in late 2018 and strongly encouraged HASelect to enter into a lending relationship with Infinity. In doing so, Debozy and Dalzell did not disclose to HASelect that they had a nearly 20-year history of soliciting investment capital and financing for Infinity or that Infinity owed approximately $12 million in connect with promissory notes given to Coastal Investments, PLC ("Coastal"), a Cook Islands public limited company owned by Hemmers, Pantelas, and Infinity that Debozy and Dalzell helped create and for which they had solicited and received investments from dozens of third parties.

17. As a result, despite several months spent discussing and negotiating the MLA, HASelect did not learn of the debts owed by Infinity in connection with the Coastal notes or the secured LFG loan referenced above until February 2019 shortly before the Loan was set to close. When confronted with this information, Debozy, Dalzell, Hemmers, and Pantelas misrepresented the debts owed to Coastal as debts owed to FTM Limited or a related entity, concealing Coastal's existence and ownership from HASelect, and misrepresented the amounts of the indebtedness owed under both the Coastal notes and LFG loan as $8.8 million and $1.9 million, respectively – approximately $3.5 million less than Infinity actually owed.

18. After reconsidering the matter, HASelect advised Infinity it would go forward with entering into the MLA only if (i) FTM Limited agreed to subordinate all indebtedness owed under the Coastal notes to the HASelect Loan, which Debozy and Dalzell agreed to do, and (ii) the indebtedness

owed to LFG was repaid immediately and LFG released its security interest in Infinity's assets. Ultimately, HASelect and Infinity agreed that HASelect would advance additional Loan proceeds to refinance the LFG loan as referenced above.

19. HASelect began advancing Loan funds to Infinity under the MLA on March 5, 2019. All advances made under the MLA were wired to an Infinity deposit account at Nevada State Bank ending in 8480 (the "<u>8480 Account</u>"). From March 2019 through April 2020, wired nearly $16 million in Loan proceeds to the 8480 Account. In making such advances, HASelect relied on Debozy and Dalzell's representations that FTM Limited had investigated and verified Infinity's use of funds to be advanced for the purchase of accounts receivable.

20. In communicating with FTM Limited and Infinity and in negotiating and entering into the MLA, HASelect was represented by Simon Clark, who was then employed by GAM and was responsible for GAM's offshore division, which included HASelect. Following the execution of the MLA, Clark remained responsible for the administration of the Loan and for protecting HASelect's rights and interests under the MLA.

21. Clark continued to serve as HASelect's primary point of contact for Infinity and FTM until he resigned his position with GAM in February 2020 to join another former GAM employee, Chad Meyer, along with Debozy, Dalzell, Hemmers, and Pantelas in establishing Tecumseh to replace HASelect in its role as lender to Infinity.

22. Meyer was terminated from his position with GAM in May 2019. Unbeknownst to HASelect or GAM at the time, Meyer, Clark, and another individual they met through GAM, Michael Belotz, formed Tecumseh Alternatives, LLC in August of 2019 as an investment advisory firm modeled after and designed to compete with GAM. Shortly thereafter, Tecumseh Alternatives LLC formed Tecumseh and, upon Clark's resignation, began working with Debozy and Dalzell to solicit Infinity to terminate its relationship with HASelect and to enter into a new financing arrangement with Tecumseh.

23. While at the same time assisting Tecumseh in soliciting Infinity (and concealing such activities from HASelect), Debozy and Dalzell continued to assist Infinity in obtaining additional

Loan advances from HASelect under the MLA. From March through May 2020, Infinity requested and received Loan advances totaling approximately $1.45 million. HASelect advanced such funds in reliance upon Debozy and Dalzell's representations that FTM Limited had verified the information provided by Infinity concerning the accounts receivable to be purchased with such funds.

24. During the course of their employment with GAM, Meyer and Clark had access to GAM's confidential and proprietary business information concerning GAM's relationships with investors and potential investors. Such information was not publicly known and was highly valuable to GAM.

25. While soliciting Infinity to terminate its relationship with HASelect in favor of a new funding relationship with Tecumseh, Meyer and Clark used confidential and proprietary information received through their prior employment with GAM to solicit and obtain investment capital from several parties to whom they had been introduced through their employment with GAM.

26. HASelect learned in May 2020 of a potential business relationship between Tecumseh and Infinity and later that Tecumseh and Infinity had entered into a sub-advisory agreement under which Tecumseh provided funding to Infinity. However, prior to Infinity's bankruptcy filing, HASelect had only limited information available to it concerning Infinity's dealings with Tecumseh.

27. After the filing of Infinity's chapter 7 petition, HASelect discovered that Infinity had sold and assigned accounts receivable included within HASelect's Collateral to Tecumseh. HASelect did not have contemporaneous knowledge of or consent to any sale or transfer of its Collateral, including the accounts receivable at issue in this action, by Infinity to Tecumseh.

28. After the filing of Infinity's chapter 7 petition, HASelect also discovered that Infinity routinely misrepresented the cost and value of the accounts receivable that it purchased through draw requests made to HASelect in order to obtain excess Loan proceeds. HASelect also learned that Infinity had misappropriated several million dollars in Loan proceeds, including over $2.5 million used by Infinity to pay debts allegedly owed under the Coastal notes and $150,000 Infinity

loaned to Anne Pantelas. Despite the duties they owed to HASelect, neither Debozy, Dalzell, nor Clark made any effort to inform HASelect of Infinity's misconduct.

29. I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

DATED this 30th day of September 2022.

/s/ *Michael Griffin*
MICHAEL GRIFFIN

**CERTIFICATE OF SERVICE**

1. On September 30, 2022, I served the following document(s): **DECLARATION OF MICHAEL GRIFFIN IN SUPPORT OF PLAINTIFF HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S OPPOSITION TO TECUMSEH-INFINITY MEDICAL RECEIVABLE FUND, LP'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DIRECT PURCHASE RECEIVABLES**.

2. I served the above document(s) by the following means to the persons as listed below:

    ☒   a.   ECF System:

    CLARISSE L. CRISOSTOMO on behalf of ROBERT E. ATKINSON
    clarisse@nv-lawfirm.com, bknotices@nv-lawfirm.com

    GERALD M GORDON on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
    ggordon@gtg.legal, bknotices@gtg.legal

    GABRIELLE A. HAMM on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
    ghamm@Gtg.legal, bknotices@gtg.legal

    MICHAEL D. NAPOLI on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
    michael.napoli@akerman.com,
    cindy.ferguson@akerman.com;catherine.kretzschmar@akerman.com;laura.taveras@akerman.com;masterdocketlit@akerman.com;teresa.barrera@akerman.com

    ARIEL E. STERN on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
    ariel.stern@akerman.com, akermanlas@akerman.com

    ☐   b.   United States mail, postage fully prepaid:

    ☐   c.   Personal Service:

    I personally delivered the document(s) to the persons at these addresses:

    ☐   For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

    ☐   For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

    ☐   d.   By direct email (as opposed to through the ECF System):

    Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐     e.     By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐     f.     By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2022.

By: /s/ *Bart K. Larsen, Esq,*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432