1  Bart K. Larsen, Esq.
Nevada Bar No. 8538
2  Kyle M. Wyant, Esq.
Nevada Bar No. 14652
3  **SHEA LARSEN**
1731 Village Center Circle, Suite 150
4  Las Vegas, Nevada 89134
Telephone: (702) 471-7432
5  Fax: (702) 926-9683
Email:  blarsen@shea.law
6          kwyant@shea.law

7  *Attorneys for HASelect-Medical Receivables*
*Litigation Finance Fund International SP*

8

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**UNITED STATES BANKRUPTCY COURT**

9

**DISTRICT OF NEVADA**

10

11  In re:

INFINITY CAPITAL MANAGEMENT, INC.
12

13              Debtor.

Case No. 21-14486-abl
Chapter 7

Adversary Case No. 21-01167-abl

14  HASELECT-MEDICAL RECEIVABLES
LITIGATION FINANCE FUND
15  INTERNATIONAL SP,

16              Plaintiff,

17  v.

18  TECUMSEH–INFINITY MEDICAL
RECEIVABLES FUND, LP,
19

20              Defendant.

**PLAINTIFF HASELECT-MEDICAL
RECEIVABLES LITIGATION
FINANCE FUND INTERNATIONAL
SP'S STATEMENT OF DISPUTED
FACTS IN RESPONSE TO
TECUMSEH-INFINITY MEDICAL
RECEIVABLE FUND, LP'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO
DIRECT PURCHASE
RECEIVABLES**

21

22  TECUMSEH–INFINITY MEDICAL
RECEIVABLES FUND, LP,
23

              Counter-Claimant,

24  v.

25  HASELECT-MEDICAL RECEIVABLES
LITIGATION FINANCE FUND
26  INTERNATIONAL SP,

27              Counter-Defendant.

28

Hearing Date:  October 25, 2022
Hearing Time: 1:30 p.m.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  
2  
3  
4  
5  
6  
7  

HASELECT-MEDICAL RECEIVABLES
LITIGATION FINANCE FUND
INTERNATIONAL SP,

              Counter-Claimant,

v.

TECUMSEH–INFINITY MEDICAL
RECEIVABLES FUND, LP,

              Counter-Defendant.

8       Pursuant to LR 7056, HASelect-Medical Receivables Litigation Finance Fund International

9  SP ("HASelect"), by and through its undersigned counsel, respectfully submits this following

10  statement of disputed facts in support of its opposition (the "Opposition") to the *Motion for Partial*

11  *Summary Judgment as to Direct Purchase Receivables* [ECF No. 90] (the "Motion").

12  
13  

| TECUMSEH'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | HASELECT'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1.   The Debtor was in the business of purchasing receivables from medical providers, which receivables typically arose from medical treatment provided to individuals who were injured in accidents (the "Plaintiff(s)") who then asserted personal injury claims arising from the accidents (the "Receivables").<br><br>Both volumes of Rule 2004 Transcript of Oliver Hemmer's testimony are attached hereto as **Exhibit A**, ("Hemmer Dep. Vol.");<br><br>*See* Exhibit A, Hemmer Dep. Vol. I at 42:1-46:15; Vol. II at 175:7-179:3. | HASelect admits that a significant aspect of Debtor's business involved the purchase of accounts receivable from various medical providers pursuant to hundreds of written contracts entered into by and between Debtor and such medical providers.<br><br>HASelect further admits that such accounts receivable in many cases arose from medical treatment provided to individuals who were injured in accidents and later asserted personal injury claims arising from such accidents.<br><br>HASelect denies that the purchase of accounts receivable was the sole business activity of Debtor. Debtor also entered into a significant number of transactions in which it loaned funds to medical providers. While such transactions involved an advance of funds by Debtor and were typically designated by Debtor as a purchase of an account receivable, Debtor did not actually acquire ownership of or the right to collect the account receivable in question. Rather, the medical provider retained ownership of and all rights to collect the account |

14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28

receivable and generally bore the risk of non-payment of the account receivable. Neither the individual obligated as to payment of the account receivable nor that individual's attorney was informed of any transaction involving Debtor, nor were they instructed to pay any amount to Debtor. Moreover, Debtor did not receive any direct lien against such individual's personal injury claim to secure payment of amounts owed to Debtor by the medical provider. Rather, all such lien rights were given to and retained by the medical provider.

In consideration of the funds received from Debtor, the medical provider agreed to pay Debtor a predetermined amount consisting of the repayment of the funds advanced by Debtor and an additional fixed fee that typically varied depending on the length of time that passed between the advance of funds by Debtor and collection of the account receivable by the medical provider. The medical provider was generally obligated to pay such predetermined amounts to Debtor even if the subject account receivable proved to be uncollectible or the amount collected was insufficient to pay the entire amount owed to Debtor. The medical provider retained all rights to funds collected in excess of the predetermined amount owed to Debtor. The medical provider also had the right to repay the funds advanced by Debtor along with the applicable fixed fee at any time without penalty regardless of whether collection had occurred in which case the medical provider's obligation to Debtor would be fully satisfied.

Examples of such loan transactions include transactions occurring pursuant to written contracts between Debtor and Cuevas Diagnostics, LLC d/b/a Stat Diagnostics ("Stat"), Preva Advanced Surgicare – The Woodlands, LLC ("Preva"), and Viking Pain Management, LLC ("Viking"). Tecumseh was not a party to Debtor's contracts with Stat, Preva, or Viking. Debtor's rights under such contracts were not assignable to without the prior written consent of the counter party and were, in fact, never assigned to Tecumseh. HASelect held a

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | | | |
|---|---|---|---|
| | | | perfected, first-priority security interest in all of Debtor's rights to payment under such contracts as of the filing of Debtor's chapter 7 petition on September 14, 2021. Transactions between the Debtor and Stat, Preva, and Viking make up more than 60% of the face value of the Direct Purchase Receivables that are the subject of Tecumseh's Motion. Similar loan transactions occurred between Debtor and a small number of other medical providers.<br><br>HASelect further denies that all accounts receivable purchased or funded by Debtor arose from medical treatment provided to Plaintiffs. Debtor also funded accounts receivable relating to the purchase of prescription medication pursuant to a written contract between Debtor and ExpressCHEX LLC d/b/a Buena Vista Medical Services ("Buena Vista").<br><br>*See* HASelect's Exhibits 28 through 34. |
| 2. | The Receivables were secured by liens against recovery on the personal injury claims; the Debtor only recovered on its Receivables when Plaintiff's personal injury claims were settled.<br><br>*See* Exhibit A, Hemmer Dep. Vol. II at 44:20-47:3; Hemmer Dep. Vol. II at 176:8; Hemmer Dep. Vol. II at 180:4-183:8. | | HASelect admits that many accounts receivable acquired by Debtor were secured by liens against the recovery on the corresponding personal injury claims and that Debtor typically collected on such accounts receivable only when such personal injury claims were settled.<br><br>HASelect otherwise denies this Statement of Fact. Amounts owed to Debtor pursuant to Debtor's written contracts with Stat, Preva, Viking, and certain other medical providers were generally not secured by any direct lien held by Debtor against any recovery on any personal injury claim. HASelect further denies that Debtor recovered such amounts only when a personal injury claim was settled. Under their written contracts with Debtor, Stat, Preva, Viking, and certain other medical providers had the right to repay Debtor at any time.<br><br>*See* HASelect's Exhibits 28 through 34. |
| 3. | The Debtor used proceeds of its loan from HASelect to purchase Receivables on its own account and to fund its operations. | | HASelect admits that Debtor used proceeds of its loan from HASelect to purchase accounts receivables on its own account and to fund its operations. |

| | | |
|---|---|---|
| | *See* Exhibit A, Hemmer Dep. Vol. I at 108:12-109:1. | HASelect denies that such uses were Debtor's sole uses of loan funds received from HASelect.  Among other things, Debtor also used such funds to repay debts owed to third parties, to make loans and pay bonuses to Debtor's principals, to purchase accounts receivable Debtor later sold and assigned to Tecumseh, and to fund Debtor's operating expenses relating services provided to Tecumseh following the execution of the Sub-Advisory Agreement between Debtor and Tecumseh.<br><br>*See* HASelect's Exhibits 3, 11, and 37. |
| 4. | Among other things, those Receivables legally and beneficially owned by the Debtor secured the HASelect loan.<br><br>*See* Exhibit A, Hemmer Dep. Vol. 108:12-109:1; Hemmer Dep. Vol. II at 168:17-169:5. | HASelect admits it holds a perfected first-priority security interest in all of Debtor's personal property, including without limitation, all owned and after-acquired goods, inventory, equipment, fixtures, accounts, general intangibles, instruments, chattel paper, documents, commercial tort claims, investment property, letter of credit rights, deposit accounts, and all money, and all other property (including claims and credit balances), and all proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties), and all products and all books and records related to any of the foregoing as collateral for all indebtedness owed to HASelect by Debtor.<br><br>HASelect denies that its collateral was limited to those Receivables legally and beneficially owned by the Debtor.<br><br>*See* HASelect Exhibits 1 and 2. |
| 5. | HASelect asserts that is owed $16,000,543.00 as of September 14, 2021.<br><br>*See* Main Case, Proof of Claim No. 8-2. | HASelect admits that Debtor owed indebtedness of at least $16,000,543 to HASelect as of September 14, 2021. |
| 6. | On October 15, 2021, the Trustee abandoned to HASelect collateral valued by the Debtor at approximately 10 million dollars.<br><br>*See* Main Case, ECF Nos. 12, 64, and 97. | HASelect admits that the Trustee represented to it and to the Bankruptcy Court that Debtor had represented to the Trustee that the value of the collateral referenced in the *Joint Motion of Chapter 7 Trustee and Secured Creditor HASelect-Medical Receivables Litigation Finance Fund International SP to Approve Abandonment of Collateral* [ECF No. 12] |

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | | |
|---|---|---|---|
| | | | (the "<u>Joint Motion</u>") was approximately $10 million.<br><br>HASelect denies that the actual value of the collateral surrendered to HASelect pursuant to the Bankruptcy Court's order granting the Joint Motion is $10 million as the value of such collateral remains uncertain.<br><br>*See* Main Case, ECF Nos. 47 and 112. |
| 7. | This Court has ruled that HASelect may also recover receivables totaling $3,734,397.25, and concluded that HASelect's position as a "lien creditor" under 11 U.S.C. § 544(a) was superior to any interest held by Tecumseh in those particular Receivables, and therefore, that any interest held by Tecumseh in such receivables was avoided pursuant to 11 U.S.C. § 544(a).<br><br>*See* Adv. Case, ECF No. 88. | | HASelect admits that, in granting HASelect's *Motion for Partial Summary Judgment as to Certain Disputed Receivables* [ECF No. 53], the Bankruptcy Court has ruled that HASelect is entitled recover certain Tecumseh Receivables with a total face value of $3,734,397.25 and concluded that HASelect's position as a "lien creditor" under 11 U.S.C. § 544(a) was superior to any interest held by Tecumseh in those particular Tecumseh Receivables, and therefore, that any interest held by Tecumseh in such receivables was avoided pursuant to 11 U.S.C. § 544(a). |
| 8. | The relationship between Tecumseh and the Debtor was governed by a June 2020 Sub-Advisory Agreement (the "Sub-Advisory Agreement").<br><br>*See* Declaration of Michael Belotz (the "Belotz Declaration") ¶ 5, submitted herewith; *see also* Sub-Advisory Agreement attached hereto as **Exhibit B.** | | HASelect admits that certain aspects of the relationship between Tecumseh and Debtor were governed by the Sub-Advisory Agreement.<br><br>HASelect denies that the relationship between Tecumseh and Debtor was governed solely by the Sub-Advisory Agreement as Tecumseh and Debtor also entered into a series of Assignments and Bills of Sale with respect to the sale of certain accounts receivable by Debtor to Tecumseh.  Moreover, the Tecumseh Receivables were purchased or funded[1] by Debtor from approximately 100 different medical providers pursuant to separate written contracts between Debtor and such medical providers that govern Debtor's rights in the Tecumseh Receivables. Debtor's rights under such contracts are included in HASelect's Collateral. Tecumseh is not a party to and holds no rights under any such contract. |

---

[1] *See* Response to Statement of Fact No. 1 above.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | | |
|---|---|---|---|
| | 1 | | *See* HASelect's Exhibits 26, 27, 28, 31, and 33. |
| 9. | | The Sub-Advisory Agreement generally provided that the Debtor would (i) assist Tecumseh with purchasing the Tecumseh Receivables "directly from the Medical Service Provider" and (ii) service and collect the Tecumseh Receivables.<br><br>*See* Exhibit B, Sub-Advisory Agreement, ¶ 3(b), (e); Belotz Decl. at ¶ 7. | HASelect admits that, in entering into the Sub-Advisory Agreement, Tecumseh engaged Debtor as an independent contractor in contemplation of Debtor performing the services described in Exhibit A to the Sub-Advisory Agreement.<br><br>HASelect denies this Statement of Fact to the extent it is inconsistent with the actual language of the Sub-Advisory Agreement.<br><br>HASelect further denies that Debtor actually assisted Tecumseh in purchasing any Tecumseh Receivable directly from any medical service provider. All Tecumseh Receivables were purchased or funded[2] by Debtor pursuant to written contracts between Debtor and medical service providers, which in most cases existed prior to the execution of the Sub-Advisory Agreement and in all cases govern Debtor's rights in the Tecumseh Receivables. Debtor's rights under such contracts are included in HASelect's Collateral. Tecumseh is not a party to and holds no rights under any such contract.<br><br>*See* HASelect's Exhibits 26, 27, 28, 31, and 33. |
| 10. | | The Sub-Advisory Agreement called for the Debtor to identify receivables for Tecumseh to purchase and to negotiate a purchase price on Tecumseh's behalf.<br><br>*See* Exhibit B, Sub-Advisory Agreement at ¶¶ 1(b), 3(a), 3(b). | HASelect admits that, in entering into the Sub-Advisory Agreement, Tecumseh engaged Debtor as an independent contractor in contemplation of Debtor performing the services described in Exhibit A to the Sub-Advisory Agreement.<br><br>HASelect otherwise denies this Statement of Fact. The Sub-Advisory Agreement does not state that Debtor would negotiate the purchase price of any account receivable or take any other action "on Tecumseh's behalf".<br><br>HASelect further denies that Debtor actually assisted Tecumseh in purchasing any account receivable directly from any medical service provider. All Tecumseh |

---

[2] *See* Response to Statement of Fact No. 1.

| | | |
|---|---|---|
| | | Receivables were purchased or funded[3] by Debtor pursuant to written contracts between Debtor and medical service providers, which in most cases existed prior to the execution of the Sub-Advisory Agreement and in all cases govern Debtor's rights in the Tecumseh Receivables. Debtor's rights under such contracts are included in HASelect's Collateral. Tecumseh is not a party to and holds no rights under any such contract.<br><br>*See* HASelect's Exhibits 26, 27, 28, 31, and 33. |
| 11. | The Debtor was also to arrange all of the paperwork necessary to "evidence the sale of the Receivable to [Tecumseh] by the Medical Service Provider."<br><br>*See* Exhibit B, Sub-Advisory Agreement at ¶ 3(d). | HASelect admits that, in entering into the Sub-Advisory Agreement, Tecumseh engaged Debtor as an independent contractor in contemplation of Debtor performing the services described in Exhibit A to the Sub-Advisory Agreement.<br><br>HASelect otherwise denies this Statement of Fact. Except with respect to those Tecumseh Receivables for which Debtor and Tecumseh entered into an Assignment and Bill of Sale, HASelect denies that Debtor arranged or otherwise secured any paperwork or other document evidencing the sale of any account receivable to Tecumseh. In fact, no document exists that evidences any direct sale or assignment of any account receivable to Tecumseh by any medical provider. All Tecumseh Receivables were purchased or funded[4] by Debtor pursuant to written contracts between Debtor and medical service providers, which in most cases existed prior to the execution of the Sub-Advisory Agreement and in all cases govern Debtor's rights in the Tecumseh Receivables. Debtor's rights under such contracts are included in HASelect's Collateral. Tecumseh is not a party to and holds no rights under any such contract.<br><br>*See* HASelect's Exhibits 26, 27, 28, 31, and 33. |

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

---

[3] *See* Response to Statement of Fact No. 1.

[4] *See* Response to Statement of Fact No. 1.

| | | |
|---|---|---|
| 12. | FTM Investments, Inc. ("FTM") would verify the receivable on behalf of Tecumseh, after which Tecumseh would approve of the purchase.<br><br>*See* Belotz Decl., ¶ 10. | HASelect denies this Statement of Fact. A significant number of the Tecumseh Receivables were purchased or funded[5] by Debtor prior to any opportunity for review or approval by FTM or Tecumseh. HASelect is informed and believes that FTM (or a related entity) holds a pecuniary interest in Tecumseh's dealings with Debtor under the Sub-Advisory Agreement. However, additional discovery is needed to ascertain the full nature of such interest as well as the nature of any services FTM (or a related entity) provided in connection with Debtor's purchases of the Tecumseh Receivables.<br><br>*See* HASelect's Exhibit 19; *see* Larsen Declaration, ¶ 11. |
| 13. | Tecumseh then paid the price agreed to by the medical provider along with the fee to the Debtor required by the Sub-Advisory Agreement.<br><br>*See* Belotz Decl., ¶ 10. | HASelect denies this Statement of Fact. All Tecumseh Receivables were purchased or funded[6] by Debtor pursuant to written contracts between Debtor and medical service providers, which in most cases existed prior to the execution of the Sub-Advisory Agreement and in all cases govern Debtor's rights in the Tecumseh Receivables. Debtor's rights under such contracts are included in HASelect's Collateral. Tecumseh is not a party to and holds no rights under any such contract. No document exists that evidences any direct sale or assignment of any account receivable to Tecumseh by any medical provider. Tecumseh admits it has never communicated with any medical provider regarding any Tecumseh Receivable. All payments to medical providers were made by Debtor.<br><br>*See* Response to Statement of Fact No. 21 below.<br><br>*See* HASelect's Exhibits 26, 27, 28, 31, and 33. |
| 14. | The process of purchasing a receivable began with a personal injury plaintiff being referred to the Debtor. | HASelect admits that the purchase of some accounts receivable by Debtor has historically been initiated by a referral of a |

---

[5] *See* Response to Statement of Fact No. 1 above.

[6] *See* Response to Statement of Fact No. 1.

SHEA LARSEN<br>1731 Village Center Circle, Suite 150<br>Las Vegas, Nevada 89134<br>(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | | |
|---|---|---|---|
| | | *See* Referral, attached hereto as **Exhibit C.** | personal injury plaintiff to Debtor by various third parties.<br><br>HASelect otherwise denies this Statement of Fact.  Most accounts receivable purchased or funded[7] by Debtor, including most of the Direct Purchase Receivables (both by number and face value), were purchased or funded through contracts between Debtor and medical providers.  Debtor's rights under such contracts are included in HASelect's Collateral.  Tecumseh is not a party to any such contract and holds no rights under any such contract.  In many instances, including transactions between Debtor and Stat, Preva, Viking, and certain other medical providers, Debtor periodically advanced funding to medical providers relating to pre-existing accounts receivable without any referral or direct contact with any personal injury plaintiff or other referral.<br><br>In other instances, Debtor directly marketed its willingness to purchase accounts receivable and funding abilities to personal injury attorneys and medical providers with whom it had no prior business relationship through direct mailings, cold calls, emails, and other means.  In many cases, it remains unclear how Debtor came into contact with certain personal injury plaintiffs and medical providers.  Additional discovery is needed to ascertain the means by which such contacts were initiated and the sources of any alleged referrals.<br><br>*See* HASelect's Exhibits 26, 27, 28, 31, and 33. |
| 15. | | Each plaintiff was then assigned a unique ClaimID number by the Debtor.<br><br>*See* Exhibit A, Hemmer Dep. Vol. I at 45:15-46:23. | HASelect admits that Debtor typically assigned a unique ClaimID number to each individual that received medical treatment relating to an account receivable purchased or funded[8] by Debtor. |
| 16. | | Acting on behalf of Tecumseh, Debtor would provide a preauthorization letter to the medical provider prior to the | HASelect denies this Statement of Fact.  While, in some instances, Debtor provided a preauthorization letter to a medical |

---

[7] *See* Response to Statement of Fact No. 1 above.

[8] *See* Response to Statement of Fact No. 1 above.

| | | |
|---|---|---|
| | performance of any authorized service by the provider to the Plaintiff.<br><br>*See* Preauthorization Letter, attached hereto as **Exhibit D.** | provider prior to treatment, such practice was not universal and was not done on behalf of Tecumseh. No preauthorization letter provided by Debtor to any medical provider makes any reference to Tecumseh. Debtor's practices varied widely based on the terms of Debtor's written contracts with medical providers and the nature of the medical services in question. Most accounts receivable purchased or funded[9] by Debtor, including most of the Direct Purchase Receivables (both by number and face value), were purchased or funded through contracts between Debtor and medical providers. Debtor's rights under such contracts are included in HASelect's Collateral. Tecumseh is not a party to any such contract and holds no rights under any such contract. In many instances, including transactions between Debtor and Stat, Preva, Viking, and certain other medical providers, Debtor periodically advanced funding to medical providers relating to pre-existing accounts receivable without any referral or direct contact with any personal injury plaintiff or other referral.<br><br>*See* HASelect's Exhibits 26, 27, 28, 31, and 33. |
| 17. | Subsequent to the provision of an authorized procedure, Tecumseh would provide payment in a previously agreed upon amount.<br><br>*See* Belotz Decl., ¶ 9-10. | HASelect denies this Statement of Fact. While, in some instances, Debtor provided a preauthorization letter to a medical provider prior to treatment, such practice was not universal and was not done on behalf of Tecumseh. No preauthorization letter provided by Debtor to any medical provider makes any reference to Tecumseh. Debtor's practices varied widely based on the terms of Debtor's written contracts with medical providers and the nature of the medical services in question. Most accounts receivable purchased or funded[10] by Debtor, including most of the Direct Purchase Receivables (both by number and face value), were purchased or funded through contracts between Debtor and medical providers. Debtor's rights under such contracts are included in HASelect's |

[9] *See* Response to Statement of Fact No. 1 above.

[10] *See* Response to Statement of Fact No. 1 above.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | | Collateral. Tecumseh is not a party to any such contract and holds no rights under any such contract. In many instances, including transactions between Debtor and Stat, Preva, Viking, and certain other medical providers, Debtor periodically advanced funding to medical providers relating to pre-existing accounts receivable without any referral or direct contact with any personal injury plaintiff or other referral. In all instances, it was Debtor that made payment to the medical provider, not Tecumseh.<br><br>*See* HASelect's Exhibits 11, 22, 23, 24, 26, 27, 28, 31, and 33. |
|---|---|---|---|
| | 18. | The Debtor retained in its records an HCFA 1500 medical billing claim form (the "Claim Form") reflecting, among other things, the face amount of each Receivable, and transmitting the Claim Form to the Plaintiff's counsel of record.<br><br>*See* Claim Form, attached hereto as **Exhibit E.** | HASelect denies this Statement of Fact. While, in many instances, Debtor retained in its records a Claim Form reflecting the face amount of the relevant account receivable, such practice was not universal. The extent to which Claim Forms were created and maintained by Debtor or sent to personal injury plaintiffs' attorneys is unknown and requires additional discovery.<br><br>*See* Larsen Declaration, ¶¶ 7 - 10. |
| | 19. | Each Claim Form represented a distinct Receivable, affiliated with a unique BillID number.<br><br>See Exhibit A, Hemmer Dep. Vol. I at 45:15-46:23. | HASelect denies this Statement of Fact. The purpose and extent of Debtor's use of Claim Forms is largely unknown and requires additional discovery.<br><br>*See* Larsen Declaration, ¶¶ 7 - 10. |
| | 20. | Each receivable would receive its own unique BillID number, and the Debtor would maintain in its records a corresponding Claim Form, together with evidence of Tecumseh's contemporaneous payment.<br><br>*See* Exhibit A, Hemmer Dep. Vol. I at 45:15-46; Exhibit E, Claim Form. | HASelect admits that the accounts receivable purchased or funded[11] by Debtor were generally each assigned a unique BillID number.<br><br>HASelect otherwise denies this Statement of Fact. There was no contemporaneous payment by Tecumseh for which Debtor could have retained records. Further, the purpose and extent of Debtor's use of Claim Forms as well as the full scope of records retained by Debtor with respect to the Tecumseh Receivables is unknown and requires additional discovery. |

---

[11] *See* Response to Statement of Fact No. 1 above.

| | | |
|---|---|---|
| | | *See* Larsen Declaration, ¶¶ 7 - 10. |
| 21. | To facilitate the purchase of Tecumseh Receivables and collection of proceeds, Tecumseh opened an account with Bank of America (the "BofA Account"). Tecumseh funded the BofA Account with money from its investors.<br><br>Belotz Decl., ¶ 11 | HASelect admits that funds from Tecumseh's investors were periodically deposited to the BofA Account.<br><br>HASelect otherwise denies this Statement of Fact. Tecumseh's investors were not the sole source of funds deposited to the BofA Account. From June 2020 through the Petition Date, Debtor collected approximately $500,000 in proceeds from the Tecumseh Receivables. Debtor generally deposited or transferred such collections to the BofA Account and later used the same to purchase or fund additional Tecumseh Receivables included in the Direct Purchase Receivables. Many of the Tecumseh Receivable on which those collections were realized have already been determined by the Bankruptcy Court to be subject to HASelect's superior perfected security interest through the *Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment as to Certain Disputed Receivables* [ECF No. 88]. As such, the proceeds of those Tecumseh Receivables undoubtedly constitute proceeds of HASelect's collateral and remain subject to HASelect's superior perfected security interest. Additional Tecumseh Receivables collected by Debtor were also subject to HASelect's superior perfected security interest. As such. the proceeds of those additional Tecumseh Receivables that were deposited to the BofA Account also remain subject to HASelect's superior perfected security interest.<br><br>The BofA account was opened under the fictitious firm name "Infinity Health Connections", which is a fictitious firm name registered to and used by Debtor since at least 2016. Parties responsible for payment of the Tecumseh Receivables were generally instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections". No such party was instructed to send payment to Tecumseh. Debtor's principals, Oliver Hemmers and Anne Pantelas, were signatories on the BofA Account and made all payments from the BofA account. Additionally, |

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | | |
|---|---|---|---|
| | | | Debtor often treated the funds in the BofA Account as its own. In at least one instance, Debtor borrowed funds from the BofA account to pay its own operating expenses without informing Tecumseh. On March 10, 2021, Debtor transferred $25,000 from the BofA account to its own operating account at Nevada State Bank, which at the time was overdrawn by $720.81. Debtor was obligated to fund its payroll the following day. On March 11, 2021, after satisfying its payroll obligations and obtaining a loan from a third party, Debtor returned the $25,000 to the BofA account. |
| | | | The amounts and methods, if any, by which proceeds from earlier Tecumseh Receivables were identified allocated to the purchase of subsequent Tecumseh Receivables is largely unknown. The purposes for and circumstances under which Tecumseh and Debtor opened and used the BofA account are also unknown. As such, additional discovery is required. |
| | | | *See* HASelect's Exhibits 11, 22, 23, 24, 25, 26, 27, 28, 31, 33, 35, and 36. |
| | | | *See* Larsen Declaration, ¶¶ 7 - 11. |
| 22. | | The receivables purchased by Tecumseh from and after October 29, 2020—4,190 receivables at a face amount of approximately $19,846,621.37 (the "Direct Purchase Receivables")—were paid for with transfers of purchase money directly from Tecumseh's BofA Account to the respective medical providers.<br><br>*See* Belotz Decl., ¶ 12; *see also* a detailed Reconciliation prepared by Tecumseh attached hereto as **Exhibit F,** and Tecumseh's collaborating BofA Bank Statements from October of 2020 through and including September of<br><br>2021, attached hereto as **Composite Exhibit G**. | HASelect admits that payments for the Tecumseh Receivables purchased and funded[12] by Debtor after October 29, 2020 were generally paid by Debtor from the BofA Account directly to medical providers.<br><br>HASelect otherwise denies this Statement of Fact. The BofA Account held proceeds of HASelect's collateral. All payments from the BofA Account were made by Debtor, not Tecumseh.<br><br>*See* Response to Statement of Fact No. 21 above.<br><br>*See* HASelect's Exhibits 11, 22, 23, 24, 25, 26, 27, 34, 35, and 36. |

---

[12] *See* Response to Statement of Fact No. 1 above.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | |
|---|---|---|
| 23. | Tecumseh paid for the Direct Purchase Receivables directly from its BofA Account to the medical providers.<br><br>*See* Belotz Decl., ¶ 13; *see also* Exhibit F (Reconciliation) and Composite Exhibit G. | HASelect admits that payments for the purchase and funding of the Tecumseh Receivables by Debtor after October 29, 2020 were sent by Debtor from the BofA Account directly to medical providers.<br><br>HASelect otherwise denies this Statement of Fact.  The BofA Account held proceeds of HASelect's collateral.  All payments from the BofA Account were made by Debtor, not Tecumseh.<br><br>*See* Response to Statement of Fact No. 21 above.<br><br>*See* HASelect's Exhibits 11, 22, 23, 24, 25, 26, 27, 34, 35, and 36. |
| 24. | Tecumseh paid the Debtor its servicing fee for its work in locating and servicing the Tecumseh Receivables monthly from the BofA Account.<br><br>*See* Belotz Decl., ¶ 13; *see also* Exhibit F (Reconciliation) and Composite Exhibit G. | HASelect admits that Debtor received payment of certain fees from the BofA Account.<br><br>HASelect otherwise denies this Statement of Fact.  Payment of fees to Debtor from the BofA account was initiated by Debtor, not Tecumseh.  Additionally, certain fees paid to Debtor pursuant to the Sub-Advisory Agreement were paid from sources other than the BofA Account.<br><br>The extent to which and reasons why Debtor received payment of fees owed under to the Sub-Advisory Agreement from sources other than the BofA Account is unknown and requires additional discovery.<br><br>*See* HASelect's Exhibits 11, 22, 23, and 37; *see* Larsen Declaration, ¶¶ 7-10. |
| 25. | As required by the Sub-Advisory Agreement, the Debtor maintained a log of the Tecumseh Receivables along with any collections on them.<br><br>Belotz Decl., ¶ 14. | HASelect admits Debtor maintained records relating to the Tecumseh Receivables that generally included information regarding collections on the Tecumseh Receivables.<br><br>HASelect otherwise denies this Statement of Fact.  The extent and location of Debtor's records relating to the Tecumseh Receivables is unknown.  HASelect is informed and believes that Debtor used one or more file sharing applications to transmit records relating to the Tecumseh Receivables to Tecumseh and FTM.  HASelect has not received copies or any |

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | | |
|---|---|---|---|
| | | | log of records transmitted through such file sharing applications.  As such, additional discovery is required.<br><br>*See* Larsen Declaration, ¶¶ 7-10. |
| 26. | | Debtor made these records available to Tecumseh on a regular basis through an application known as "Case Manager."<br><br>Belotz Decl. ¶ 14. | HASelect denies this Statement of Fact.  The extent to which Debtor maintained made records relating to the Tecumseh Receivables available to Tecumseh and its use of the Case Manager software in connection with the Tecumseh Receivables is largely unknown and requires additional discovery.<br><br>*See* Response to Statement of Fact No. 25 above.<br><br>*See* Larsen Declaration, ¶¶ 7-10. |
| 27. | | In addition, Tecumseh maintained its own records related to the Tecumseh Receivables.<br><br>Belotz Decl. ¶ 14; *see also* Exhibit F (Reconciliation) and Composite Exhibit G. | HASelect denies this Statement of Fact.  The nature and extent of Tecumseh's records relating to the Tecumseh Receivables is largely unknown and requires additional discovery.<br><br>*See* Larsen Declaration, ¶ 12. |
| 28. | | The Debtor likewise created a Claim Form for each Direct Purchase Receivable purchased by Tecumseh.<br><br>Belotz Decl., ¶ 19; *see also* Claim Form, attached hereto as **Exhibit E** | HASelect admits that Debtor maintained Claim Forms for many of the Direct Purchase Receivables.<br><br>HASelect otherwise denies this Statement of Fact.  The Direct Purchase Receivables were purchased by Debtor, not Tecumseh, pursuant to written contracts between Debtor and medical providers.  All rights held by Debtor under such contracts are included in HASelect's collateral.  Tecumseh was not a party any such contract and holds no rights under any such contract.<br><br>The nature and extent of Debtor's creation of records relating to the Direct Purchase Receivables is largely unknown and requires additional discovery.<br><br>*See* Response to Statement of Fact No. 26 above.<br><br>*See* HASelect's Exhibits 26, 27, 28, 31, and 33; *see* Larsen Declaration, ¶¶ 7-10. |

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| 29. | The Debtor also maintained several binders, a segregated compilation of documents, evidencing Tecumseh's direct payments to medical providers and all corresponding Claim Forms for nearly all of the Direct Purchase Receivables. *See* **Exhibit I** binders. | HASelect denies this Statement of Fact. The nature and extent of Debtor's creation of records relating to the Tecumseh Receivables, including the Direct Purchase Receivables, is largely unknown and requires additional discovery. *See* Response to Statement of Fact No. 26 above. *See* Larsen Declaration, ¶¶ 7-10. |
|---|---|---|
| 30. | Each Claim Form represented a distinct receivable, affiliated with a unique BillID number. *See* Exhibit A, Hemmer Dep. Vol. I at 45:15-46:23; *see also* Exhibit E, Claim Form. | HASelect admits that accounts receivable purchased or funded[13] by Debtor were generally each assigned a unique BillID by Debtor. The nature and extent of creation of records relating to the Tecumseh Receivables, including Debtor's use of Claim Forms, is largely unknown and requires additional discovery. *See* Response to Statement of Fact No. 26 above. *See* Larsen Declaration, ¶¶ 7-10. |
| 31. | In October 2020, Tecumseh purchased 92 receivables with a face value of $828,614.88 for a purchase price of $142,862.63 and paid the Debtor a fee of $28,572.52 from its BofA Account. *See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | HASelect denies this Statement of Fact. All Tecumseh Receivables purchased or funded[14] in October 2020 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers. All rights held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds no rights under any such contract. In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party. No such contract was ever assigned to Tecumseh. All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh. All payments from the BofA Account were made by Debtor, not Tecumseh. All parties responsible for payment of the Tecumseh Receivables were instructed to send payment to Debtor's fictitious firm name |

---

[13] *See* Response to Statement of Fact No. 1 above.

[14] *See* Response to Statement of Fact No. 1 above.

| | | | |
|---|---|---|---|
| | | | "Infinity Health Connections", not to Tecumseh.

*See* HASelect's Exhibits 26, 27, 28, 31, and 33. |
| 32. | In November 2020, Tecumseh purchased 266 receivables with a face value of $501,921.54 for a purchase price of $142,862.63 and paid the Debtor a fee of $28,572.52 from its BofA Account.

*See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | HASelect denies this Statement of Fact. All Tecumseh Receivables purchased or funded[15] in November 2020 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers.  All rights held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds no rights under any such contract.  In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party.  No such contract was ever assigned to Tecumseh.  All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh.  All payments from the BofA Account were made by Debtor, not Tecumseh.  All parties responsible for payment of the Tecumesh Receivables were instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections", not to Tecumseh.

*See* HASelect's Exhibits 26, 27, 28, 31, and 33. |
| 33. | In November 2020, Tecumseh purchased 266 receivables with a face value of $501,921.54 for a purchase price of $142,862.63 and paid the Debtor a fee of $28,572.52 – all paid from its BofA Account.

*See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | This Statement of Fact is a duplicate of Statement of Fact No. 32. |
| 34. | In December 2020, Tecumseh purchased 441 receivables with a face value of $1,305,197.62 for a purchase price of $283,162.07 and paid the Debtor a fee of | HASelect denies this Statement of Fact. All Tecumseh Receivables purchased or funded[16] in December 2020 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers.  All rights |

---

[15] *See* Response to Statement of Fact No. 1 above.

[16] *See* Response to Statement of Fact No. 1 above.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | | |
|---|---|---|---|
| | | $56,692.44 – all paid from its BofA Account. *See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds no rights under any such contract. In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party. No such contract was ever assigned to Tecumseh. All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh. All payments from the BofA Account were made by Debtor, not Tecumseh. All parties responsible for payment of the Tecumesh Receivables were instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections", not to Tecumseh. *See* HASelect's Exhibits 25, 26, 27, 28, 31, 33, and 36. |
| | 35. | In January 2021, Tecumseh purchased 430 receivables with a face value of $1,500,807.25 for a purchase price of $284,325.87 and paid the Debtor a fee of $56,865.78 – all paid from its BofA Account. *See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | HASelect denies this Statement of Fact. All Tecumseh Receivables purchased or funded[17] in January 2021 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers. All rights held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds no rights under any such contract. In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party. No such contract was ever assigned to Tecumseh. All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh. All payments from the BofA Account were made by Debtor, not Tecumseh. All parties responsible for payment of the Tecumseh Receivables were instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections", not to Tecumseh. *See* HASelect's Exhibits 25, 26, 27, 28, 31, 33, and 36. |

[17] *See* Response to Statement of Fact No. 1 above.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| 36. | In February 2021, Tecumseh purchased 323 receivables with a face value of $1,248,675.56 for a purchase price of $321,377.94 and paid the Debtor a fee of $64,588.45 – all paid from its BofA Account.<br><br>*See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | HASelect denies this Statement of Fact. All Tecumseh Receivables purchased or funded[18] in February 2021 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers. All rights held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds no rights under any such contract. In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party. No such contract was ever assigned to Tecumseh. All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh. All payments from the BofA Account were made by Debtor, not Tecumseh. All parties responsible for payment of the Tecumseh Receivables were instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections", not to Tecumseh.<br><br>*See* HASelect's Exhibits 25, 26, 27, 28, 31, 33, and 36. |
| --- | --- | --- |
| 37. | In March 2021, Tecumseh purchased 412 receivables with a face value of $2,081,787.17 for a purchase price of $285,862.33 and paid the Debtor a fee of $46,100.85 – all paid from its BofA Account.<br><br>*See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | HASelect denies this Statement of Fact. All Tecumseh Receivables purchased or funded[19] in March 2021 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers. All rights held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds no rights under any such contract. In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party. No such contract was ever assigned to Tecumseh. All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh. All payments from the BofA Account were made by Debtor, not Tecumseh. All parties responsible for payment of the Tecumseh Receivables were instructed to send payment to Debtor's fictitious firm name |

---

[18] *See* Response to Statement of Fact No. 1 above.

[19] *See* Response to Statement of Fact No. 1 above.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | | |
|---|---|---|---|
| | | | "Infinity Health Connections", not to Tecumseh. |
| | | | *See* HASelect's Exhibits 25, 26, 27, 28, 31, 33, and 36. |
| 38. | | In April 2021, Tecumseh purchased 425 receivables with a face value of $1,278,990.10 for a purchase price of $308,721.70 and paid the Debtor a fee of $33,371.64 – all paid from its BofA Account.<br><br>*See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | HASelect denies this Statement of Fact. All Tecumseh Receivables purchased or funded[20] in April 2021 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers. All rights held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds no rights under any such contract. In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party. No such contract was ever assigned to Tecumseh. All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh. All payments from the BofA Account were made by Debtor, not Tecumseh. All parties responsible for payment of the Tecumseh Receivables were instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections", not to Tecumseh.<br><br>*See* HASelect's Exhibits 25, 26, 27, 28, 31, 33, and 36. |
| 39. | | In May 2021, Tecumseh purchased 582 receivables with a face value of $2,647,439.26 for a purchase price of $349,515.96 and paid the Debtor a fee of $69,903.19 – all paid from its BofA Account.<br><br>*See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | HASelect denies this Statement of Fact. All Tecumseh Receivables purchased or funded[21] in May 2021 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers. All rights held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds no rights under any such contract. In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party. No such contract was ever assigned to Tecumseh. All liens securing payment of |

---

[20] *See* Response to Statement of Fact No. 1 above.

[21] *See* Response to Statement of Fact No. 1 above.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | |
|---|---|---|
| | | the Tecumseh Receivables were assigned to Debtor, not Tecumseh. All payments from the BofA Account were made by Debtor, not Tecumseh. All parties responsible for payment of the Tecumesh Receivables were instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections", not to Tecumseh.<br><br>*See* HASelect's Exhibits 25, 26, 27, 28, 31, 33, and 36. |
| 40. | In June 2021, Tecumseh purchased 533 receivables with a face value of $4,233,654.73 for a purchase price of $539,763.82 and paid the Debtor a fee of $98,999.89 – all paid from its BofA Account.<br><br>*See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | HASelect denies this Statement of Fact. All Tecumseh Receivables purchased or funded[22] in June 2021 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers. All rights held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds no rights under any such contract. In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party. No such contract was ever assigned to Tecumseh. All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh. All payments from the BofA Account were made by Debtor, not Tecumseh. All parties responsible for payment of the Tecumesh Receivables were instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections", not to Tecumseh.<br><br>*See* HASelect's Exhibits 25, 26, 27, 28, 31, 33, and 36. |
| 41. | In July 2021, Tecumseh purchased 245 receivables with a face value of $2,154,768.92 for a purchase price of $197,192.40 and paid the Debtor a fee of $29,861.69 – all paid from its BofA Account | HASelect denies this Statement of Fact. All Tecumseh Receivables purchased or funded[23] in July 2021 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers. All rights held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds |

---

[22] *See* Response to Statement of Fact No. 1 above.

[23] *See* Response to Statement of Fact No. 1 above.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | | |
|---|---|---|---|
| | | *See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | no rights under any such contract.  In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party.  No such contract was ever assigned to Tecumseh.  All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh.  All payments from the BofA Account were made by Debtor, not Tecumseh.  All parties responsible for payment of the Tecumseh Receivables were instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections", not to Tecumseh.<br><br>*See* HASelect's Exhibits 25, 26, 27, 28, 31, 33, and 36. |
| | 42. | In August 2021, Tecumseh purchased 394 receivables with a face value of $1,751,688.53 for a purchase price of $199,942.76 and paid the Debtor a fee of $31,348.54 – all paid from its BofA Account.<br><br>*See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | HASelect denies this Statement of Fact.  All Tecumseh Receivables purchased or funded[24] in August 2021 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers.  All rights held by Debtor under such contracts are included in HASelect's Collateral.  Tecumseh was not a party to any such contract and holds no rights under any such contract.  In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party.  No such contract was ever assigned to Tecumseh.  All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh.  All payments from the BofA Account were made by Debtor, not Tecumseh.  All parties responsible for payment of the Tecumseh Receivables were instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections", not to Tecumseh.<br><br>*See* HASelect's Exhibits 25, 26, 27, 28, 31, 33, and 36. |
| | 43. | In September 2021, Tecumseh purchased 47 receivables with a face value of $313,075.81 for a purchase price of | HASelect denies this Statement of Fact.  All Tecumseh Receivables purchased or |

---

[24] *See* Response to Statement of Fact No. 1 above.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | |
|---|---|---|
| | $102,827.82 – all paid from its BofA Account.<br><br>*See* Exhibit F (Reconciliation) and Composite Exhibit G (Bank Statements). | funded[25] in September 2021 were purchased or funded by Debtor pursuant to written contracts entered into between Debtor and medical providers. All rights held by Debtor under such contracts are included in HASelect's Collateral. Tecumseh was not a party to any such contract and holds no rights under any such contract. In most cases, such contracts expressly preclude Debtor from assigning its rights under such contracts without the prior written authorization of the counter party. No such contract was ever assigned to Tecumseh. All liens securing payment of the Tecumseh Receivables were assigned to Debtor, not Tecumseh. All payments from the BofA Account were made by Debtor, not Tecumseh. All parties responsible for payment of the Tecumseh Receivables were instructed to send payment to Debtor's fictitious firm name "Infinity Health Connections", not to Tecumseh.<br><br>*See* HASelect's Exhibits 25, 26, 27, 28, 31, 33, and 36. |
| 44. | The Debtor's did not possess a beneficial interest in the Direct Purchase Receivables.<br><br>*See* Exhibit A, Hemmer Dep. Vol. II at 173:18-174:4, 174:15-175:3; *see also* Exhibit B, Sub-Advisory Agreement at ¶¶ 1(b), 3(a), 3(b); Exhibit F (Reconciliation), Composite Exhibit G (Bank Statements), and Exhibit I. | HASelect denies this Statement of Fact. Much remains unknown regarding the nature and details of the transactions through which Debtor purchased and funded the Direct Purchase Receivables. Additional discovery is required.<br><br>*See* Responses to Statements of Fact Nos. 1, 21, and 31-43 above and 51 below.<br><br>*See* HASelect's Exhibits 11, 22, 23, 24, 26, 27, 28, 31, 33, 34, 35, and 36; *see* Larsen Declaration, ¶ 10. |
| 45. | Debtor's internal records likewise denote which receivables belong to Tecumseh and which receivables belonged to the Debtor and secured HASelect's loan.<br><br>*See* Exhibit A, Hemmer Dep. Vol. II at 170:24-171:6. | HASelect denies this Statement of Fact. With exception of the Tecumseh Receivables for which an Assignment and Bill of Sale was executed between Debtor and Tecumseh, no business record maintained by Debtor evidences the sale or assignment of any account receivable to Tecumseh by Debtor or any medical provider.<br><br>The extent and location of Debtor's records relating to the Tecumseh |

---

[25] *See* Response to Statement of Fact No. 1 above.

**SHEA LARSEN**
1731 Village Center Circle. Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | | |
|---|---|---|
| | | Receivables is unknown.  HASelect is informed and believes that Debtor used one or more file sharing applications to transmit records relating to the Tecumseh Receivables to Tecumseh and FTM.  HASelect has not received copies or any log of records transmitted through such file sharing applications.  As such, additional discovery is required. *See* Larsen Declaration, ¶¶ 7-11. |
| 46. | Tecumseh relayed to its fund administrator the "Bill ID, cost of the receivable, the overhead charge, the total cost, date paid and the type" of receivables "bought since the [time the] last report was generated." *See* Email Correspondence attached hereto as **Exhibit H.** | HASelect denies this Statement of Fact. The nature and extent of information Tecumseh provided to its fund administrator is unknown and requires additional discovery. *See* Larsen Declaration, ¶ 12. |
| 47. | Tecumseh likewise made this information available to its investors on a regular basis, posting publicly available fund reports detailing, among other things, the "date of purchase" together with the "purchase cost" of each Tecumseh Receivable denoted by its "BillID." Belotz Decl. at ¶ 22; see also Reports (tecumsehalts.com), last visited 8.26.22. | HASelect admits that Tecumseh has made certain reports relating to the Tecumseh Receivables publicly available at www.tecumsehhalts.com/reports. HASelect otherwise denies this Statement of Fact.  The source, basis, and accuracy of the information included in such reports is largely unknown and requires additional discovery. *See* Larsen Declaration, ¶ 12. |
| 48. | Tecumseh reported its ownership interest and any resulting capital gains and losses to the Internal Revenue Service. Belotz Decl. at ¶ 22. | HASelect denies this Statement of Fact. The nature and extent of Tecumseh's reporting to the Internal Revenue Service is largely unknown and requires additional discovery. *See* Larsen Declaration, ¶ 12. |
| 49. | The Debtor's bankruptcy schedules do not claim an ownership interest in Direct Purchase Receivables. See Exhibit A, Hemmer Dep. Vol. II at 173:18-174:4, 174:15-175:3; see also Debtor's Schedules [Main Case, ECF No. 47]. | HASelect admits that Debtor's bankruptcy schedules do not include any reference to the Direct Purchase Receivables. HASelect otherwise denies this Statement of Fact.  Debtor's bankruptcy schedules do not identify the Direct Purchase Receivables as being held in trust by Debtor or otherwise being held by Debtor for Tecumseh's benefit. *See* Main Case, ECF Nos. 47 and 112. |

| 50. | All dollars collected on the Tecumseh Receivables were paid directly to Tecumseh and not to the Debtor.<br><br>Belotz Decl. at ¶ 23; *see also* Hemmer Dep. Vol. II at 186:18-23. | HASelect denies this Statement of Fact. No funds collected on the Tecumseh Receivables were paid directly to Tecumseh. Rather, all such funds were paid directly to Debtor with most, if not all, such funds paid to Debtor under the fictitious firm name "Infinity Health Connections".<br><br>*See* HASelect's Exhibits 11, 22, 23, 24, 25, 26, 27, 28, 31, 33, 35, and 36. |
| --- | --- | --- |
| 51. | Under the Sub-Advisory Agreement, the Debtor received a 20% acquisition fee. The Debtor earned 10% of the acquisition fee immediately, and 10% according to a contingency schedule. The contingency schedule turned on the average investor annual rate of return; the Debtor earned up to 10% if the annual rate of return exceeded 30%.<br><br>See Exhibit A, Sub-Advisory Agreement, Addendum A, ¶ (a). | HASelect denies this Statement of Fact. This Statement of Fact misrepresents the language of the Sub-Advisory Agreement.<br><br>Prior to its amendment in January 2021, the Sub-Advisory Agreement provided that Debtor was entitled to receive an acquisition fee equal to 20% of the cost of each account receivable purchased by Tecumseh at the time of purchase. Debtor also had the right to receive an additional fee generally equal to 15% of any profit made on each account receivable at the time of collection. With the exception of the Tecumseh Receivables purchased and funded[26] by Debtor in September 2021 for which Debtor's acquisition fee remains unpaid, the 20% acquisition fee was paid to Debtor. It is unknown if Debtor received or is owed payment of any additional 15% fee based on the collection of any Tecumseh Receivable. As such, additional discovery is required.<br><br>The Sub-Advisory Agreement was amended on or about January 5, 2021. The fee structure described above remained the same for Tecumseh Receivables purchased or funded by Debtor using new investor funds. For Tecumseh Receivables purchased or funded by Debtor using proceeds collected from earlier Tecumseh Receivables ("Rollover Receivables"), Debtor's acquisition fee payable at the time of purchase was reduced to 10% of the purchase price with an additional amount of up to 10% of the purchase process payable at a later date based on the contingency schedules set forth in Addendum A to the Sub-Advisory |

SHEA LARSEN<br>1731 Village Center Circle, Suite 150<br>Las Vegas, Nevada 89134<br>(702) 471-7432

[26] *See* Response to Statement of Fact No. 1 above.

| | | Agreement.  Additionally, Debtor retained its right to receive an additional fee generally equal to 15% of any profit made on each Rollover Receivable at the time of collection.<br><br>With the exception of any Rollover Receivables purchased and funded by Debtor in September 2021 for which Debtor's acquisition fee remains unpaid, the 10% acquisition fee was paid to Debtor.  It is unknown whether Debtor received or may be owed payment of any contingency fee.  It is also unknown if Debtor received or may be owed payment of any additional 15% fee based on the collection of any Rollover Receivable.  As such, additional discovery is required.<br><br>*See* Larsen Declaration, ¶ 11. |

Dated this 30th day of September 2022.

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
BART K. LARSEN, ESQ.
Nevada Bar No. 8538
KYLE M. WYANT, ESQ.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for HASelect-Medical Receivable*
*Litigation Finance Fund International SP*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**CERTIFICATE OF SERVICE**

1. On September 30, 2022, I served the following document(s): **PLAINTIFF HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S STATEMENT OF DISPUTED FACTS IN RESPONSE TO TECUMSEH-INFINITY MEDICAL RECEIVABLE FUND, LP'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DIRECT PURCHASE RECEIVABLES**.

2. I served the above document(s) by the following means to the persons as listed below:

   ☒ a. ECF System:

   CLARISSE L. CRISOSTOMO on behalf of ROBERT E. ATKINSON
   clarisse@nv-lawfirm.com, bknotices@nv-lawfirm.com

   GERALD M GORDON on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   ggordon@gtg.legal, bknotices@gtg.legal

   MICHAEL D. NAPOLI on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   michael.napoli@akerman.com,
   cindy.ferguson@akerman.com;catherine.kretzschmar@akerman.com;laura.taveras@akerman.com;masterdocketlit@akerman.com;teresa.barrera@akerman.com

   ARIEL E. STERN on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   ariel.stern@akerman.com, akermanlas@akerman.com

   ☐ b. United States mail, postage fully prepaid:

   ☐ c. Personal Service:

   I personally delivered the document(s) to the persons at these addresses:

   ☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

   ☐ For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

   ☐ d. By direct email (as opposed to through the ECF System): Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

   ☐ e. By fax transmission:

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐        f.        By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2022.

By: /s/ *Bart K. Larsen, Esq,*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432