# **EXHIBIT 5**

Return Date: No return date scheduled
Hearing Date: 10/1/2020 10:30 AM - 10:30 AM
Courtroom Number: 2102
Location: District 1 Court
    Cook County, IL

FILED
6/3/2020 9:02 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
9378610

FILED DATE: 6/3/2020 9:02 AM    2020CH04427

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| GRIFFIN ASSET MANAGEMENT, LLC, and HASELECT-FTM MEDICAL RECEIVABLES LITIGATION FINANCE FUND SP, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No.: 2020CH04427 |
| | ) |
| CHADWICK MEYER, TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP, ALTERNATIVE INVESTMENT SPECIALISTS LIMITED, and FTM LIMITED | ) ) ) ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT FOR MONETARY AND INJUNCTIVE RELIEF

Plaintiffs Griffin Asset Management, LLC ("**GAM**") and HASelect-FTM Medical Receivables Litigation Finance Fund SP ("**HASelect-FTM Fund**") (collectively, "**Plaintiffs**"), bring the following Complaint against Defendants Chadwick Meyer ("**Meyer**"), Tecumseh-Infinity Medical Receivables Fund, LP ("**Tecumseh-Infinity Fund**"), FTM Limited ("**FTM**"), and Alternative Investment Specialists Limited ("**AIS**") (together with FTM, "**AIS-FTM**") (collectively, "**Defendants**"), and state as follows in support thereof.

### PRELIMINARY STATEMENT

1.  Plaintiffs are a medical receivables investment fund that utilize confidential information to generate returns for investors.

2.  GAM's Chief Executive Officer, Michael Griffin, learned that GAM's former employee, Meyer, and GAM's sub-advisor and fiduciary, AIS-FTM, have set up a competing medical receivables fund, Tecumseh-Infinity Fund, in violation AIS-FTM's contractual and fiduciary duties and are soliciting members of a highly selective and confidential investment club (the "**Investment Club**").

FILED DATE: 6/3/2020 9:02 AM 2020CH04427

3. To operate Tecumseh-Infinity Fund, Defendants will necessary wrongfully misuse Plaintiffs' confidential information, which Defendants only learned in confidence, based on their positions of trust with Plaintiffs.

4. Meyer learned Plaintiffs' medical receivables investment strategy while working at GAM. As part of Meyer's employment at GAM, Plaintiffs introduced Meyer to Plaintiffs' confidential investment network and the source of Plaintiffs' investment opportunities, AIS-FTM and Infinity Capital Management, Inc. ("**Infinity**"). Defendants are already using this confidential information to compete against Plaintiffs by attempting to undercut Plaintiffs' loan terms with Infinity, and soliciting investors. Meyer would not be aware of Plaintiffs' confidential information but for his employment with GAM.

5. In addition, Defendants operation of the Tecumseh-Infinity Fund directly violates AIS-FTM's contractual and fiduciary obligations owed to Plaintiffs. Specifically, AIS-FTM and Plaintiffs entered contracts for AIS-FTM to serve as the sub-advisor for Plaintiffs (collectively, the "**Sub-Advisor Agreement**"). Under the Sub-Advisory Agreement, AIS-FTM was required to oversee and support all investment opportunities from Infinity *exclusively* for the benefit of HASelect-FTM Fund. The Sub-Advisory Agreement also made AIS-FTM a fiduciary for Plaintiffs, and obligated AIS-FTM to act in the best interest of HASelect-FTM Fund.

6. Notwithstanding the Sub-Advisory Agreement and its fiduciary duties, AIS-FTM is now directing potential investment opportunities to Tecumseh-Infinity Fund, instead of Plaintiffs. The investment opportunities AIS-FTM is providing Meyer and Tecumseh-Infinity Fund are the exact same assets AIS-FTM is supposed to be providing exclusively to Plaintiffs. AIS-FTM's work with Tecumseh-Infinity Fund prevents Plaintiffs from investing in these assets. By providing these investment opportunities to Tecumseh-Infinity Fund, in violation of the Sub-

73737213.4

FILED DATE: 6/3/2020 9:02 AM 2020CH04427

Advisory Agreement and its fiduciary duties, AIS-FTM is irreparably harming Plaintiffs, for which Plaintiffs have no adequate remedy at law.

7. Plaintiffs bring this action to: (i) enjoin Defendants from soliciting investors in the Investment Club to invest in Tecumseh-Infinity Fund, or any other competing funds; (ii) enjoin Defendants from otherwise leveraging Plaintiffs' proprietary investment network to take available funding away from Plaintiffs; (iii) enjoin Defendants from operating a competing investment fund that invests in the exact same medical receivable assets from Infinity; and (iv) enjoin Plaintiffs' Sub-advisor AIS-FTM from providing Meyer and Tecumseh-Infinity Fund with access to the exact same assets AIS-FTM is supposed to be providing exclusively to Plaintiffs. Without such injunctive relief, Plaintiffs will be irreparably harmed and have no adequate remedy at law. The balance of hardships weigh in favor of Plaintiffs and Plaintiffs have a likelihood of success on the merits.

## PARTIES

8. Plaintiff GAM is a Delaware limited liability company with its principal place of business located at 403 South La Grange Road, La Grange, Illinois 60525.

9. Plaintiff HASelect-FTM Fund is a segregated portfolio company of HedgeACT International SPC Ltd., a Cayman Islands corporation.

10. Defendant Meyer is a citizen of South Carolina, residing at 5668 Morris Hunt Drive, Fort Mill, South Carolina 29708.

11. Defendant FTM is a Vanuatu limited liability company with its principal place of business located at Tana Russet Plaza, First Floor Suite T-19, Kumul Highway, Port Vila, Efate Vanuatu, South Pacific.

73737213.4

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

12.     Defendant AIS is a Vanuatu private company with its principal place of business located at Tana Russet Plaza, First Floor Suite T-19, Kumul Highway, Port Vila, Efate Vanuatu, South Pacific.

13.     Defendant Tecumseh-Infinity Fund is a Delaware limited partnership.

## JURISDICTION AND VENUE

14.     Jurisdiction is proper in this Court pursuant to 735 ILCS 5/2-209(a)(1), (2), (7), (11), and (12) because Defendants transacted business within the state of Illinois, did or caused a tortious act to occur within the state of Illinois, entered into a contract or promise substantially connected with the state of Illinois, breached fiduciary duties within the state of Illinois, and performed duties as a director or officer of a corporation that has its principal place of business in Illinois.

15.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101 as the actions, or portions thereof, giving rise to this suit occurred in Cook County, Illinois.

## GENERAL ALLEGATIONS

**A.     Plaintiffs' Sub-Advisory Relationship with AIS-FTM and Borrower Relationship with Infinity.**

16.     Plaintiff GAM serves as the investment manager for HASelect-FTM Fund, an investment fund that provides lending to secure accounts receivable from medical providers

17.     HASelect-FTM Fund provides loans to a third-party, Infinity, pursuant to a certain Loan and Security Agreement under which Infinity is prohibited from incurring any indebtedness of any kind from other than HASelect-FTM Fund. ("**Infinity Loan Agreement**").

18.     Infinity uses these loans to purchase receivables from medical providers that are subject to personal injury claims.

4

73737213.4

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

19.     For example, these receivables might include treatment of a patient involved in a car accident, when the other drivers' insurance is refusing to pay the medical bills.

20.     By purchasing the medical receivable at a discount, the patient receives necessary medical treatment, the medical provider receives immediate cash flow, and Infinity earns profit when the final payment is complete.

21.     Infinity pays interest to HASelect-FTM Fund while Infinity holds the receivables, and Infinity pays off the loan principle when the personal injury claims are settled or otherwise resolved.

22.     As part of their investment strategy, on or about February 7, 2019, GAM, on its behalf and on behalf of HASelect-FTM Fund, entered into a sub-advisory agreement with FTM ("**FTM Sub-Advisory Agreement**").

23.     On or about  February 17, 2020, FTM assigned its rights and obligations under the FTM Sub-Advisory Agreement to its manager company, AIS, pursuant to a sub-advisory assignment ("**FTM-AIS Assignment**") (collectively with FTM Sub-Advisory Agreement, the "**Sub-Advisory Agreement**", attached hereto as **Group Exhibit A**.)

24.     Plaintiffs discovered FTM through a propriety database of potential investment sources.

25.     Plaintiffs spent significant time and energy analyzing the information in the database to find the best investment sources.

26.     The information in this database is not publically available, and Plaintiffs do not disclose the information or the database to anyone outside their organizations.

27.     Pursuant to the Sub-Advisory Agreement, AIS-FTM is required to oversee and support all investment opportunities from Infinity exclusively to HASelect-FTM Fund, including

5

reviewing and approving the underlying account receivable collateral presented by Infinity. (Sub-Advisory Agreement, Group Exh. A, Section 1(a).)

28.     Specifically, pursuant to Section 1(c), AIS-FTM's services to GAM and the HASelect-FTM Fund "will be exclusive and [AIS-FTM] and will not render any similar services to any other pooled investment vehicle without GAM's prior written consent." (Sub-Advisory Agreement, Group Exh. A, Section 1(c).)

29.     Pursuant to Section 2(d), AIS-FTM's "principals, officers, employees and agents will conduct business and activities in accordance with…the terms of this Agreement." (Sub-Advisory Agreement, Group Exh. A, Section 2 (d).)

30.     Pursuant to Section 7 of the FTM Sub-Advisory Agreement, each party agreed that any confidential information furnished by the other party "shall be kept in strict confidence." (Sub-Advisory Agreement, Group Exh. A, Section 7.)

31.     AIS-FTM explicitly "acknowledges that GAM's investor lists are confidential information and proprietary to GAM" and that such lists "may not be used, disclosed or distributed by [AIS-FTM], internally or to any third party, for any reason other than in connection with services for the benefit of [HASelect-FTM Fund]." (Sub-Advisory Agreement, Group Exh. A, Section 7.)

32.     Moreover, the Sub-Advisory Agreement also requires AIS-FTM to act as a fiduciary on behalf of Plaintiffs.

33.     Pursuant to Section 2(g) of the Sub-Advisory Agreement provides that AIS-FTM "shall use best efforts to act at all times in a professional manner and in the best interest of GAM and the Fund." (Sub-Advisory Agreement, Group Exh. A, Section 2(g).)

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

73737213.4

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

34.     Plaintiffs entered the Sub-Advisory Agreement with AIS-FTM specifically because AIS-FTM had a relationship with Infinity.

35.     Infinity's existence was not generally known in the industry.

36.     Plaintiffs then conducted its own due diligence for more than six months before entering into any agreements with Infinity.

37.     Prior to Defendants' disclosure, Plaintiffs kept their relationship with Infinity confidential, and did not share the details of their relationship with Infinity outside their companies except as necessary for the HASelect-FTM Fund.

38.     Protecting the confidential identity of Infinity is critical to Plaintiffs' business.

39.     Plaintiffs earn returns for investors, in part, by providing loans to Infinity under the terms of a confidential loan agreement.

40.     If others investment funds knew about Infinity or the terms of the loan agreement, they could try to undercut Plaintiffs lending rates for Infinity or otherwise try to invest in the same underlying assets.

41.     This would prevent Plaintiffs from loaning Infinity money to invest in these assets, thereby decreasing Plaintiffs' investment opportunities, and ultimately, Plaintiff's rate of return.

## B.     Plaintiffs' Prior Engagement with Defendant Meyer and Confidential Relationship with the Investment Club.

42.     Meyer worked for GAM from 2012 until 2019.

43.     Prior to his employment with GAM, Meyer did not have experience investing in medical receivables.

44.     During the course of his employment, Meyer had access to Plaintiffs' confidential and proprietary business information, including information regarding Plaintiffs' contract with

7

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

AIS-FTM, Plaintiffs' contract with Infinity, and Plaintiffs' investors and potential investors, including members of the Investment Club.

45.     The Investment Club is an exclusive group of highly sophisticated and high net worth investors that is intentional about keeping its existence and the identity of its members, confidential.

46.     The Investment Club rigorously restricts access to its members, and neither the investment funds nor the general public are permitted to be members of the Investment Club.

47.     Investment funds must be sponsored by a member to present to the Investment Club.

48.     Through years of working in the investment community, Plaintiffs developed relationships with multiple members of the Investment Club.

49.     Plaintiffs do not disclose the identity of the Investment Club or its members to anyone outside Plaintiffs' organization.

50.     Plaintiffs derive significant value from the Investment Club as a source of capital.

51.     If other investment fund managers, particularly funds with competing investment strategies, learned about the Investment Club, they would solicit its members.

52.     This would make it more difficult for Plaintiffs to access the capital necessary to invest.

53.     The access to capital from the Investment Club also provides Plaintiffs with a competitive advantage to negotiate more favorable lending rates with borrowers, thereby increasing the rate of return provided to investors.

54.     Meyer would not have known about AIS-FTM, Infinity, or the Investment Club but for his employment with GAM.

8

FILED DATE: 6/3/2020 9:02 AM    2020CH04427

55.     From 2018-2019, GAM attempted to enter an Operating Agreement with Meyer.

56.     As part of their negotiations, Griffin and Meyer exchanged multiple drafts of the Operating Agreement, all of which contained an express confidentiality provision, which Meyer and his counsel never edited in any of the drafts.  (*See* Draft Operating Agreements attached as **Group Exhibit B**.)

57.     Griffin and Meyer could not reach accord on other terms and Meyer never signed.

58.     Based on Meyer's refusal to sign the Operating Agreement, Griffin became suspicious of Meyer's motivations and commitment to Plaintiffs.

59.     Griffin's suspicions were further aroused by Meyer's lack of performance and, eventually, Griffin concluded that Meyer's employment with GAM was no longer tenable.

60.     In May 2019, GAM terminated its relationship with Meyer.

## C.     Defendants Created a Competing Fund Using Plaintiffs' Confidential Information to Usurp Plaintiffs' Business Opportunities and Investors.

61.     Plaintiffs recently learned that Meyer and AIS-FTM started Tecumseh-Infinity Fund, a competing fund that also invests in medical receivables.

62.     On information and belief, Tecumseh-Infinity Fund intends to purchase medical receivables directly from Infinity.

63.     These are the exact same medical receivable assets that AIS-FTM was contractually required to oversee and manage exclusively for the benefit of HASelect-FTM Fund.

64.     HASelect-FTM Fund and Tecumseh-Infinity Fund cannot both invest in the same medical receivable assets.

65.     Any investment by Tecumseh-Infinity Fund necessarily usurps an investment opportunity that otherwise would go to HASelect-FTM Fund and GAM.

73737213.4

FILED DATE: 6/3/2020 9:02 AM    2020CH04427

66.     Plaintiffs have learned investors have the impression Meyer and AIS-FTM split-off to form a new competing fund, rather than working with Plaintiffs.

67.     Plaintiffs learned Meyer solicited Plaintiffs' investors to invest in Tecumseh-Infinity Fund.

68.     Tecumseh-Infinity Fund's entire business model is based on the Plaintiffs' confidential information and would not be possible if Meyer was not misappropriating confidential information he learned through his employment with GAM and AIS-FTM was not breaching its contractual and fiduciary duties.

69.     Meyer's solicitation of these investors has caused confusion within the Investment Club and is damaging Plaintiffs' reputation and jeopardizing Plaintiffs' access to capital.

70.     Additionally, when there is a dispute between two investment funds with connection to the Investment Club, the Investment Club may advise its member to withdraw their investments in both funds.

**D.    Plaintiffs' Efforts to Protect its Confidential Information.**

71.     Plaintiffs have made substantial efforts to maintain the secrecy and confidentiality of their confidential information, as alleged herein.

72.     For instance, Plaintiffs refrain from sharing client details with their sub-advisors.

73.     Also, all of Plaintiffs' contracts and subscription agreements have stringent confidentiality provisions.

74.     Plaintiffs include the following in each of its subscription documents:

The Company's [fund?] policy is to require that all employees, financial professionals and companies providing services on its behalf keep client information confidential.

75.     GAM keeps the hard copies of all executed agreements, including the agreements with Infinity and AIS-FTM, in files located at Griffin's house.

10

FILED DATE: 6/3/2020 9:02 AM    2020CH04427

76.    Griffin and his wife, Debra Griffin, were the only people with access to these files in Griffin's home.

77.    The list of Plaintiffs' investors is kept by a third-party vendor, NAV Consulting.

78.    NAV Consulting keeps all investor information confidential and is subject to confidentiality agreements with GAM.

79.    Further, information from NAV Consulting sent over email is protected by a separate password.

80.    As described herein, Plaintiffs' enterprise is built on confidentiality, and throughout Meyer's employment, Griffin had numerous conversations with Meyer about how maintaining Plaintiffs' confidentiality was of paramount importance.

81.    During Meyer's employment, Plaintiffs' confidential information about the Investment Club and the terms of the lending agreement with Infinity was known by only five people within GAM: (i) Meyer, (ii) Plaintiffs' principal owner, Griffin, (iii) Plaintiffs' Director of Operations, Debra Griffin; (iv) Simon Clark; and (v) James Gallagher.

82.    Griffin had numerous conversations with Meyer about how maintaining Plaintiffs' confidentiality was of paramount importance.

83.    Griffin presented Meyer with GAM's Code of Ethics which states Meyer was prohibited from revealing any information related to GAM's investment intentions, activities, or portfolios of advisory clients.  (*See* Gam Code of Ethics attached as **Exhibit C**.)

84.    Additionally, Meyer's computer was password protected, and Meyer was only provided confidential information that was necessary for him to perform his job duties.

85.    Any confidential information was sent to Meyer's GAM email account.

73737213.4

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

86.    Meyer's GAM email account was password protected and GAM controlled the domain for Meyer's GAM email account.

87.    GAM could access information contained in Meyer's GAM email account, if necessary.

88.    After Meyer left GAM, GAM removed Meyer's access to his GAM email account and redirected all emails to Griffin.

89.    Despite Plaintiffs' significant efforts to maintain the secrecy of its confidential information, Defendants have misappropriated Plaintiffs' confidential information causing Plaintiffs to lose investment opportunities and potentially lose investors, and may result in severe damage to Plaintiffs' reputation, and a loss of capital, from which Plaintiffs might never recover.

## COUNT I
### Breach of Illinois Trade Secrets Act – Against Defendants

90.    Plaintiffs re-allege and incorporate paragraphs 1 through 89 of this Complaint, as though fully set forth herein.

91.    Under the Illinois Trade Secrets Act ("**ITSA**"), "[a]ctual or threatened misappropriation may be enjoined" and "a person is entitled to recover damages for misappropriation." 765 ILCS 1065/3(a), 1065/4(a).

92.    Plaintiffs owned and possessed confidential, proprietary, and trade secret information, as alleged above, including, among other things, Plaintiffs' relationship with AIS-FTM and Infinity, including the terms of Infinity's borrowing agreement with Plaintiffs, and the identity of Plaintiffs' investors and potential investors, including the Investment Club.

93.    Plaintiffs have taken reasonable measures to keep such information secret and confidential as alleged herein.  (See Paragraphs 71 -89, above.)

73737213.4

94.     This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value form the disclosure or use of the information.

95.     In violation of Plaintiffs' rights, Defendants misappropriated the confidential, proprietary and trade secret information in the manner alleged herein and used it to try to usurp Plaintiffs' existing and future business.

96.     The misappropriation of Plaintiffs' confidential, proprietary, and trade secret information by Defendants was intentional, knowing, willful, malicious, and fraudulent.

97.     Defendants have used and/or disclosed, and if not enjoined, will continue to misappropriate, disclose, and use for their own benefit and to Plaintiffs' detriment, Plaintiffs' trade secret information.

98.     As a direct and proximate result of the wrongful conduct by Defendants, Plaintiffs have been injured and are entitled to injunctive relief and to recover damages, including exemplary damages and attorneys' fees, in an amount to be established at trial. 765 ILCS 1065/4, 1065/5(iii).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter an order finding in favor of Plaintiffs on Count I and providing the following relief:

(a)     Enjoining Defendants' use of Plaintiffs' confidential information;

(b)     Awarding Plaintiffs money damages, including exemplary damages pursuant to 765 ILCS 1065/4, in an amount to be determined at trial;

(c)     Awarding Plaintiffs their attorneys' fees and costs pursuant to 765 ILCS 1065/5(iii); and

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

73737213.4

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

(d)      Such other and further relief that the Court deems just and proper.

**COUNT II**
**Breach of Contract – Against AIS-FTM**

99.      Plaintiffs re-allege and incorporate paragraphs 1 through 98 of this Complaint, as though fully set forth herein.

100.      The Sub-Advisory Agreement constitutes a valid and enforceable contract.

101.      Plaintiffs have fully performed their obligations pursuant to the Sub-Advisory Agreement.

102.      The Sub-Advisory Agreement provides that AIS-FTM's services to Plaintiffs is exclusive and AIS-FTM "may not render similar services to any other pooled investment vehicle without GAM's prior written consent." (Sub-Advisory Agreement, Group Exh. A, Section 1(c).)

103.      AIS-FTM breached the Sub-Advisory Agreement by rendering services to Tecumseh-Infinity Fund, a pooled investment vehicle, without GAM's prior written consent. (*Id.*)

104.      The Sub-Advisory Agreement also provides that AIS-FTM must keep Plaintiffs' confidential information in "strict confidence" including GAM's "investor lists". (Sub-Advisory Agreement, Group Exh. A, Section 7.)

105.      AIS-FTM breached the Sub-Advisory Agreement by misappropriating Plaintiffs' confidential information, as alleged above, including Plaintiffs' relationship with Infinity, including the terms of Infinity's borrowing agreement with Plaintiffs, and the identity of Plaintiffs' investors and potential investors, including the Investment Club, for its own benefit and to Plaintiffs' detriment

106.      Moreover, Section 2(g) of the Sub-Advisory Agreement provides that AIS-FTM "shall use best efforts to act at all times in a professional manner and in the best interest of GAM and the Fund." (Sub-Advisory Agreement, Group Exh. A, Section 2(g).)

14

107.   AIS-FTM breached the Sub-Advisory agreement by failing to act in Plaintiffs' best interest by providing services to Meyer and Tecumseh-Infinity Fund.

108.   As a direct and proximate result of the wrongful conduct by AIS-FTM, Plaintiffs have incurred damages and are entitled to injunctive relief to prevent further irreparable harm.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order finding in favor of Plaintiffs on Count II and providing the following relief:

(a)   Enjoining AIS-FTM from overseeing and providing any services related to investment opportunities to Meyer, Tecumseh-Infinity Fund, or any other commingled product pursuant to Section 2(c) of the Sub-Advisory Agreement;

(b)   Enjoining AIS-FTM's use of Plaintiffs' confidential information;

(c)   Awarding Plaintiffs money damages in an amount to be determined at trial:

(d)   Awarding Plaintiffs' attorneys fees pursuant to Section 12 of the Sub-Advisory Agreement, and statute or equity;

(e)   Awarding Plaintiffs pre- and post- judgment interest; and

(f)   Such other and further relief that the Court deems just and proper.

## COUNT III
## Breach of Fiduciary Duty – Against AIS-FTM

109.   Plaintiffs re-allege and incorporate paragraphs 1 through 108 of this Complaint, as though fully set forth herein.

110.   As sub-advisors, AIS-FTM owed a fiduciary duty to Plaintiffs.

111.   AIS-FTM breached its fiduciary duty to Plaintiffs when it provided its services to a competing medical receivables fund, Tecumseh-Infinity Fund, used Plaintiffs' confidential and proprietary information to usurp Plaintiffs' business opportunities as alleged herein, and failing to act in Plaintiffs' best interest.

15

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

FILED DATE: 6/3/2020 9:02 AM    2020CH04427

112.    AIS-FTM's wrongful conduct was intentional, knowing, willful, malicious, and fraudulent.

113.    Plaintiffs have suffered damages as a direct and proximate result of AIS-FTM's breach of its fiduciary duty.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order finding in favor of Plaintiffs on Count III and providing the following relief:

(a)    Awarding Plaintiffs money damages in an amount to be determined at trial;

(b)    Awarding Plaintiffs pre- and post- judgment interest;

(c)    Awarding Plaintiffs' attorneys' fees and costs pursuant to statute or equity; and

(d)    Such other and further relief that the Court deems just and proper.

## COUNT IV
### Tortious Interference with Contract – Against Meyer

114.    Plaintiffs re-allege and incorporate paragraphs 1 through 113 of this Complaint, as though fully set forth herein.

115.    The Sub-Advisory Agreement constitutes a valid and enforceable contract between Plaintiffs and AIS-FTM.

116.    Meyer knew of the existence of the Sub-Advisory Agreement through his prior engagement with GAM.

117.    AIS-FTM breached the Sub-Advisory Agreement by: (1) rendering services to Meyer and Tecumseh-Infinity Fund; (2) revealing Plaintiffs' confidential information; and (3) failing to act in Plaintiffs' best interest.

118.    Meyer intentionally and unjustifiably interfered with the Sub-Advisory Agreement by soliciting AIS-FTM to provide services to Meyer and the Tecumseh-Infinity Fund.

73737213.4

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

119.    Plaintiffs have incurred damages as the direct and proximate result of Meyer's interference with the Sub-Advisory Agreement.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order finding in favor of Plaintiffs on Count IV and providing the following relief:

(a)    Awarding Plaintiffs money damages in an amount to be determined at trial;

(b)    Awarding Plaintiffs pre- and post- judgment interest;

(c)    Awarding Plaintiffs' attorneys' fees and costs pursuant to statute or equity; and

(d)    Such other and further relief that the Court deems just and proper.

## COUNT V
### Tortious Interference with Contract – Against Defendants

120.    Plaintiffs re-allege and incorporate paragraphs 1 through 119 of this Complaint, as though fully set forth herein.

121.    The Infinity Loan Agreement constitutes a valid and enforceable contract between Plaintiffs and Infinity.

122.    Meyer knew of the existence of the Loan Agreement through his prior engagement with GAM.

123.    AIS-FTM knew of the existence of the Loan Agreement as the sub-advisor and there direct involvement in the negotiation of the Loan Agreement.

124.    Infinity breached the Loan Agreement by providing the exact same medical receivable assets that Infinity was contractually required to present to HASelect-FTM Fund to Tecumseh-Infinity Fund.

125.    Defendants intentionally and unjustifiably interfered with the Loan Agreement by soliciting Infinity to provide medical receivable assets to the Tecumseh-Infinity Fund.

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

126.     Plaintiffs have incurred damages as the direct and proximate result of Defendants'
interference with the Loan Agreement.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order finding in favor
of Plaintiffs on Count V and providing the following relief:

(a)     Awarding Plaintiffs money damages in an amount to be determined at trial;

(b)     Awarding Plaintiffs pre- and post- judgment interest;

(c)     Awarding Plaintiffs' attorneys' fees and costs pursuant to statute or equity; and

(d)     Such other and further relief that the Court deems just and proper.

## COUNT VI
### Tortious Interference with Business Relations – Against Defendants

127.     Plaintiffs re-allege and incorporate paragraphs 1 through 126 of this Complaint, as
though fully set forth herein.

128.     Plaintiffs had confidential business relationship with the investors of the Investment
Club.

129.     Meyer knew of the existence of the Investment Club through his prior engagement
with GAM.

130.     AIS-FTM knew of the existence of the Investment Club as the sub-advisor of
HASelect-FTM Fund and through Meyer.

131.     Defendants intentionally and unjustifiably interfered with Plaintiffs' business
relationship with the Investment Club by soliciting investors to invest in Tecumseh-Infinity Fund.

132.     As a direct and proximate result of the wrongful conduct by AIS-FTM, Plaintiffs
have incurred damages and are entitled to injunctive relief to prevent further irreparable harm.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order finding in favor
of Plaintiffs on Count VI and providing the following relief:

73737213.4

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

(a)     Enjoining Defendants from soliciting investors in the Investment Club to invest in Tecumseh-Infinity Fund, or any other competing funds;

(b)     Awarding Plaintiffs money damages in an amount to be determined at trial;

(c)     Awarding Plaintiffs pre- and post- judgment interest;

(d)     Awarding Plaintiffs' attorneys' fees and costs pursuant to statute or equity; and

(e)     Such other and further relief that the Court deems just and proper.

**COUNT VII**
**Civil Conspiracy – Against Defendants**

133.     Plaintiffs re-allege and incorporate paragraphs 1 through 132 of this Complaint, as though fully set forth herein.

134.     On information and belief, Defendants worked in concert with one another to create a competing fund using Plaintiffs' confidential information to usurp Plaintiffs' business opportunities.

135.     Specifically, Defendants intentionally and unjustifiably interfered with Plaintiffs' business relationship with the Investment Club by soliciting investors to invest in Tecumseh-Infinity Fund in direct competition with HASelect-FTM Fund.

136.     As a direct and proximate result of the tortious interference by Defendants pursuant to the conspiracy described herein, Plaintiffs have incurred damages and are entitled to injunctive relief to prevent further irreparable harm.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order finding in favor of Plaintiffs on Count VII and providing the following relief:

(f)     Enjoining Defendants from soliciting investors in the Investment Club to invest in Tecumseh-Infinity Fund, or any other competing funds;

(g)     Awarding Plaintiffs money damages in an amount to be determined at trial;

19

FILED DATE: 6/3/2020 9:02 AM   2020CH04427

(h)     Awarding Plaintiffs pre- and post- judgment interest;

(i)     Awarding Plaintiffs' attorneys' fees and costs pursuant to statute or equity; and

(j)     Such other and further relief that the Court deems just and proper.

Date:   June 3, 2020                         Respectfully submitted,

                                             GRIFFIN ASSET MANAGEMENT, LLC,
                                             and HASELECT-FTM MEDICAL
                                             RECEIVABLES LITIGATION FINANCE FUND.
                                             SP,

                                             By: */s/ Rodney L. Lewis*
                                                    One of Their Attorneys

                                                    Rodney L. Lewis
                                                    Bryan M. Westhoff
                                                    Anthony J. Nasharr
                                                    Claire Brennan
                                                    POLSINELLI PC
                                                    150 N. Riverside Plaza, Suite 3000
                                                    Chicago, IL 60606
                                                    (312) 819-1900
                                                    rodneylewis@polsinelli.com
                                                    bwesthoff@polsinelli.com
                                                    anasharr@polsinelli.com
                                                    cbrennan@polsinelli.com

73737213.4

## VERIFICATION

The undersigned, under penalties of perjury as provided by law pursuant to Section 5/1-109 of the Illinois Code of Civil Procedure, verifies and certifies that he is a duly authorized representative of Plaintiffs Griffin Asset Management, LLC and HASelect-FTM Medical Receivable Litigation Finance Fund SP, that he is duly authorized by the companies to execute this instrument, and that the statements set forth in the Verified Complaint are true and correct, except as to matters stated to be on information and belief and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

Michael Griffin

Title: Managing Member
Director
CEO

FILED DATE: 6/3/2020 9:02 AM  2020CH04427