# EXHIBIT 8

# Bart Larsen

| | |
|---|---|
| **From:** | Dr. Oliver Hemmers <oliver@infinitycapital.com> |
| **Sent:** | Thursday, February 14, 2019 6:50 PM |
| **To:** | 'Simon Clark' |
| **Subject:** | RE: Comments on Lon Agreement and Note. |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Yes, those funds have their own receivables independent of what will be funded with HedgeAct's funds.

**From:** Simon Clark <s.h.clark@me.com>
**Sent:** Thursday, February 14, 2019 6:45 PM
**To:** Dr. Oliver Hemmers <oliver@infinitycapital.com>
**Subject:** Re: Comments on Lon Agreement and Note.

OK, so $1.9mm to this obligation and $8.8mm to FTM, would this be correct? And are these borrowings secured by a specific basket of receivables that would be separate from those which we would attain?

Simon H. Clark
President
HedgeAct International Ltd.

805-722-8599


On Feb 14, 2019, at 18:39, Dr. Oliver Hemmers <oliver@infinitycapital.com> wrote:

> $1.9M
>
> **From:** Simon Clark <s.h.clark@me.com>
> **Sent:** Thursday, February 14, 2019 6:37 PM
> **To:** Dr. Oliver Hemmers <oliver@infinitycapital.com>
> **Cc:** Daniel Peterson <DPeterson@polsinelli.com>; Pantelas Anne <anne@infinitycapital.com>; Dobozy Endre S <endre@ftm-investments.com>; Griffin Mike <mike@hedgeact.com>
> **Subject:** Re: Comments on Lon Agreement and Note.
>
> Sorry, could you also please quantify the outstanding debt/liability.
>
> Simon H. Clark
> President
> HedgeAct International Ltd.
>
> 805-722-8599

1

On Feb 14, 2019, at 18:32, Dr. Oliver Hemmers <oliver@infinitycapital.com> wrote:

> Neither is possible. The structure is in place and connect be changed. Repaying the loan might not be an option, either and we definitely cannot wait for funding until this is sorted out.
>
> **From:** Simon Clark <s.h.clark@me.com>
> **Sent:** Thursday, February 14, 2019 6:26 PM
> **To:** Dr. Oliver Hemmers <oliver@infinitycapital.com>
> **Cc:** Daniel Peterson <DPeterson@polsinelli.com>; Pantelas Anne <anne@infinitycapital.com>; Dobozy Endre S <endre@ftm-investments.com>; Griffin Mike <mike@hedgeact.com>
> **Subject:** Re: Comments on Lon Agreement and Note.
>
> Well, in my view, we'll have to address this in one of two ways; either that UCC will have to be tied to a specific pool of assets and subordinated to ours, or the loan will need to be repaid.
>
> As we do not have tangible security on specific lien positions, and the UCC was in lieu of same as perfecting was not possible, we shall need to be in first position. It might be possible to quantify the loan, however, the reps and warranties in our loan agreement, which you all signed earlier, clearly states that all assets are, or are to be unencumbered.
>
> Let's leave this to the attorneys to sort out.
>
> We can still execute documents and begin to socialize the PPM, but this matter needs to be resolved before any draws can be sanctioned.
>
> All the best.
>
> Simon H. Clark
> President
> HedgeAct International Ltd.
>
> 805-722-8599
>
>> On Feb 14, 2019, at 18:13, Dr. Oliver Hemmers <oliver@infinitycapital.com> wrote:
>>
>>> We looked into these and we contacted our attorney Brooke about
>>> those, as well. It looks like 2 of the 3 should get released. On the third

2

one we have a loan that is secured with receivables – similar to what we want to do with HedgeAct – and the loan is not repaid, yet.

---

**From:** Daniel Peterson <DPeterson@Polsinelli.com>
**Sent:** Thursday, February 14, 2019 3:51 PM
**To:** oliver@infinitycapital.com; 'Simon Clark' <s.h.clark@me.com>; 'Pantelas Anne' <anne@infinitycapital.com>; 'Dobozy Endre S' <endre@ftm-investments.com>
**Cc:** 'Griffin Mike' <mike@hedgeact.com>
**Subject:** RE: Comments on Lon Agreement and Note.

It appears that there are three existing UCC liens filed for Infinity already. Can you get these removed?

Daniel Peterson
Shareholder
dpeterson@polsinelli.com
314.622.6130
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
polsinelli.com


Polsinelli PC, Polsinelli LLP in California


-----Original Message-----
From: oliver@infinitycapital.com [mailto:oliver@infinitycapital.com]
Sent: Monday, February 11, 2019 11:49 PM
To: 'Simon Clark'; 'Pantelas Anne'; 'Dobozy Endre S'
Cc: 'Griffin Mike'; Daniel Peterson
Subject: RE: Comments on Lon Agreement and Note.

Dear Simon,

Thank you very much for your comments and we agree that time is of the essence. Please find our comments below and maybe this will suffice.

1. No, this is not an oversight; as lenders, we do reserve the right to withhold sanction of advance should the be "matters pertinent" that need to be addressed. Whilst this is a committed facility, each draw request will be evaluated on its own merit based on information received regarding the schedule of receivables, requisite coverage ratio, and detail as discussed last week.

OK, we can leave this as is.

2. As we discussed in Henderson, we would expect the expenses to be in the region of $5,000, however, should there be extraneous issues (such as a need to obtain specific regulatory exceptions for Sub-adviser seed

3

monies, there could be an incremental cost: we would therefore suggest that we set a ceiling at $10,000.

Yes, we discussed this amount but a number in writing would be appreciated for obvious reasons. $10k as a ceiling would work.

3. It is standard lending practice to require a legal opinion of such, we are amenable to waiving the pre-requisite.

Brooke was simply asking for the format that you expect that opinion in. She is happy to get this done.

4. This is standard lending terminology, and as would be holders of senior, secured debt, we would look to keep this.

OK, we can keep this as is.

5. As senior secured debt holders and, as we have been told, sole lenders to the firm (outside those promissory obligations to FTM...for which we would appreciate detail) we would expect that there are no other direct liabilities, or non-disclosed contingent liabilities. Perhaps it would be prudent if you completed a full financial statement detailing any and all heretofore undisclosed debt obligations or contingent liabilities, this would then let us go back and review whether to afford a carve-out with specific identification of same.

Agree, this might be moot since in the long run HedgeAct would be the only entity holding any receivables. We were not sure what Endre discussed or agreed upon regarding FTM. When Endre thinks this is ok we are, too.

6. Perhaps you would provide us (Dan) with exception language you might wish to include.

Infinity's recent expansion brought us into Texas, Illinois, GA and some other states. We thought this is the intention for Infinity to grow and expand into other markets, why would there be a clause to limit that? Honestly, we do not understand the point of having this in the contract.

7. My apologies, but we really don't understand this. In order to make any advance, you will need to clearly demonstrate a net (columnar additions/subtractions discussed last week..ergo the paying of commissions to the injury center) 200% deminimus coverage ratio.

Is 200% of the portfolio ratio per draw? If yes, then it is ok but if it is on the per individual bill/invoice then this would not work very well.

The Note.

It is normal business practice that should there be a default, for whatever reason, under a separate borrowing arrangement, then that would be an event of default under any corollary note. As stated above,

4

we were told by the sub-adviser that this is, and would be, the only loan facility extant against the flow of receivables, hence this is either a moot point or we have to re-evaluate the underwriting based on actual or contingent liabilities yet to be disclosed.

This might be a moot point, again just thinking of FTM so maybe Endre has some concerns and he might be able to provide input.

Thank you so much for the fast turnaround and comments. Hopefully, we can get this going tomorrow (Tuesday).

Kind Regards,

Anne and Oliver

This electronic mail message contains CONFIDENTIAL information which is (a) ATTORNEY - CLIENT PRIVILEGED COMMUNICATION, WORK PRODUCT, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not an Addressee, or the person responsible for delivering this to an Addressee, you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please reply to the sender and take the steps necessary to delete the message completely from your computer system.