GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
JARED M. SECHRIST
Nevada Bar No. 10439
E-mail: jsechrist@gtg.legal
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000 / Fax: (725) 777-3112

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116
Email: michael.napoli@akerman.com

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.<br><br>Debtor. | Case No.: 21-14486-abl<br>Chapter 7<br><br>Adversary Case No. 21-01167-abl |
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br><br>Plaintiff,<br><br>v.<br><br>TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Defendant. | **TECUMSEH–INFINITY MEDICAL RECEIVAB LES FUND, LP'S MOTION TO STRIKE THE DECLARATION OF BART K. LARSEN, ESQ. IN SUPPORT OF PLAINTIFF HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S OPPOSITION TO TECUMSEH-INFINITY MEDICAL RECEIVABLE FUND, LP'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DIRECT PURCHASE RECEIVABLES [ECF 0125]** |
| TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Counter-Claimant,<br><br>v. | Date: October 25, 2022<br><br>Time: 1:30 p.m. |

65410923;9

HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,

        Counter-Defendant.

HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,

        Counter-Claimant

v.

TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP,

        Counter-Defendant.

Tecumseh–Infinity Medical Receivable Fund, LP ("Tecumseh"), through counsel, submits this *Motion to Strike the Declaration of Bart K. Larsen in support of HASelect-Medical Receivables Litigation Finance Fund International SP's* ("HASelect") *Opposition* ("Opposition") *to Tecumseh-Infinity Medical Receivables Fund, LP's Motion for Partial Summary Judgment as to Direct Purchase Receivables* ("Motion") [ECF No. 125]

This motion is made and based upon Federal Rule of Bankruptcy Procedure 7056, which makes Fed. R. Civ. P. 56 applicable to this adversary proceeding, Federal Rule of Bankruptcy Procedure 9017, Local Rule of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Nevada 7056,[1] and the following memorandum of points and authorities.

…

…

---

[1] Unless otherwise stated, all "Chapter" and "Section" references are to Title 11 of the U.S. Code (the "Bankruptcy Code"), all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and all references to "Local Rules" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada (the "Local Rules").

2

65410923;9

## I. INTRODUCTION

Federal Rule of Civil Procedure 56(c)(2) states, "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." And Rule 56(c)(4) specifically addresses the evidentiary standard for declarations, stating "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The Declaration of Bart K. Larsen ("Larsen Decl.") that HASelect has proffered in support of its Opposition to Tecumseh's Motion is replete with statements that are not relevant[2] regarding the legal issues being prosecuted by HASelect in the *Amended First Amended Adversary Complaint* ("AFAC") [ECF No. 28] and addressed in the MPSJ, lack foundation and irrelevant conclusions. And it improperly states as fact the opinions of counsel. Accordingly, paragraphs 4-6, 10 and 11 of the Larsen Declaration do not present admissible evidence and should be stricken and disregarded by this Court.

## II. STATEMENT OF FACTS[3]

### A. THE MEYER ACTION

1. On June 6, 2020, HASelect and Griffin Asset Management, LLC ("GAM") filed a complaint ("Meyer Complaint") in the Circuit Court of Cook County, Illinois, County Department, Chancery Division against Tecumseh, its principal, Chadwick Meyer, Alternative Investment Specialists Limited and FTM Limited ("Meyer Action"). *See* Ex. 5 to HASelect's Opposition.

2. In the Meyer Complaint, HASelect asserted claims against Tecumseh (and the other

---

[2] Federal Rule of Evidence 401 provides that "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it could be without the evidence; and (b) the fact is of consequence in determining the action.

[3] The facts stated in Tecumseh's Statement of Undisputed Facts In Support of the Motion [ECF No. 94] and in the concurrently filed Reply In Support of Motion are incorporated herein by reference as if set forth at length. Accordingly, Tecumseh states here only those additional facts necessary for the Court to evaluate this Motion.

3

65410923;9

defendants) arising from Tecumseh's business dealings with the Debtor. Notably, the Meyer Complaint states as follows:

- ¶ 92: Plaintiffs owned and possessed confidential, proprietary, and trade secret information, as alleged above, including, among other things, Plaintiffs' relationship with AIS- FTM and [Debtor], including the terms of [Debtor's] borrowing agreement with Plaintiffs, and the identity of Plaintiffs' investors and potential investors, including the Investment Club.

- ¶ 93: Plaintiffs have taken reasonable measures to keep such information secret and confidential as alleged herein.

- ¶ 94: This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value form the disclosure or use of the information.

- ¶ 95: In violation of Plaintiffs' rights, Defendants misappropriated the confidential, proprietary and trade secret information in the manner alleged herein and used it to try to usurp Plaintiffs' existing and future business.

- ¶ 96: The misappropriation of Plaintiffs' confidential, proprietary, and trade secret information by Defendants was intentional, knowing, willful, malicious, and fraudulent.

- ¶ 97: Defendants have used and/or disclosed, and if not enjoined, will continue to misappropriate, disclose, and use for their own benefit and to Plaintiffs' detriment, Plaintiffs' trade secret information.

3. Based on these allegations and others in Meyer Complaint, HASelect sought to enjoin Tecumseh from conducting business with the Debtor and recovery of damages. *See* Meyer Complaint at 19-20.

4. In furtherance of that goal, HASelect sought a preliminary injunction against the Meyer Action defendants to "enjoin Defendants from doing business with nonparty [Infinity]." **Exhibit J** to

4

the Motion (Order dated February 17, 2021). "After a two-day hearing in which testimony was taken, various documents were admitted into evidence, and having heard the arguments of counsel," the Meyer Action court denied HASelect's motion for preliminary injunction and made the following findings:

- "Defendant Meyer worked for GAM until May 2019. Subsequently, Meyer formed [Tecumseh] to purchase medical receivables in connection with personal injury cases. [Tecumseh] and Infinity entered into a sub-advisory agreement under which Infinity provides portfolio management and administrative services, including negotiating the price of receivables. [Tecumseh] purchases receivables for itself and secures a lien on proceeds from the receivable." *Id.* at 2.

- "As to the interference claim related to Infinity, it seems that the Defendants structured [Tecumseh] to avoid interfering with Infinity's pre-existing contractual obligations with [HASelect]. Significantly, unlike [HASelect] which loans money to Infinity to purchase the medical receivables, [Tecumseh] is not a lender. It purchases the receivables itself. Thus, the structure does not run afoul of the MLA's prohibition on Infinity borrowing from anyone other than [HASelect]. Plaintiffs claim that the net effect of [Tecumseh]'s activity is to reduce receivable opportunities for [HASelect], while at the same time causing confusion in the marketplace and reputational damage to Plaintiffs. That, however, does not demonstrate that Infinity breached a specific contractual obligation to Plaintiffs. In closing argument, Plaintiffs pointed to a potential impairment of its collateral (the receivables purchased by Infinity), but there was no evidence of this." *Id.* at 3.

5. Without any evidence that Tecumseh's business dealings wrongfully interfered with HASelect's, the Meyer Action court denied the preliminary injunction. And having failed to obtain that remedy, HASelect dismissed the Meyer Action without appeal. **Exhibit K** to the Motion (docket sheet for the Meyer Case demonstrating the matter has been dismissed).

B. THE CLARK ACTION

6. On August 12, 2022, HASelect and GAM filed a complaint ("Clark Complaint") in the

5

65410923;9

United States District Court for the Northern District of Illinois against Simon Clark, another of Tecumseh's principals ("Clark Action"). Ex. 14 to Opposition.

7.   The Clark Action, like the Meyer Action, arises from HASelect's grievances with Clark concerning Tecumseh's formation and business dealings with the Debtor. *See generally id.*

8.   The Clark Action, however, which remains pending, consists entirely of HASelect's and GAM's unfounded and unproven allegations, as the Clark Action court has not made a single substantive ruling.

C.   **THE ADVERSARY PROCEEDING**

9.   In the AFAC, HASelect seeks entry of a declaratory judgment determining that HASelect holds a perfected security interest in the accounts receivable the subject of the MPSJ senior to that of Tecumseh. It is focused on the breadth of the HASelect security interest In Infinity's assets. *See generally* AFAC The issues raised by the Motion are narrow: i) Did the Debtor ever have an ownership interest in the Direct Purchase Receivables (Mot. at 11); ii) alternatively, did a purchase money resulting trust arise in Tecumseh's favor with respect to the Direct Purchase Receivables at the time of their purchase (Mot. at 12); iii) whether HASelect's lien extends to the Direct Purchase Receivables (Mot. at 15); and iv) whether 11 U.S.C. § 544 can be used to make the Direct Purchase Receivables part of the bankruptcy estate (Mot. at 17).

10.   Tecumseh filed the Motion on August 26, 2022. [ECF No. 90].

11.   HASelect filed the Opposition on September 30, 2022. [ECF No. 122].

12.   HASelect filed the Larsen Decl. in support of the Opposition on September 30, 2022. [ECF No. 125].

13.   Larsen has been counsel to HASelect in this litigation since September 20, 2021. Larsen Decl. ¶ 2.

14.   In the Larsen Declaration, Larsen made the following statements, which are the basis of this Motion:

6

65410923;9

- ¶ 4: "As of the filing of Infinity's chapter 7 petition, Infinity owed in excess of $16 million to HASelect under a series of secured loans for which HASelect held a perfected security interest in substantially all of Infinity's personal property, including its books and records. Such collateral consisted primarily of accounts receivable that Infinity had purchased or funded through transactions with over 100 different medical providers. Immediately upon learning of Infinity's bankruptcy filing, HASelect acted diligently to obtain relief from the automatic stay and to obtain control over its collateral and possession of Infinity's books and records."

- ¶ 5: "On or about October 24, 2021, HASelect gained access to Infinity's physical office in Henderson, Nevada and to what was left of Infinity's computer systems and physical files upon which HASelect discovered that a substantial number of records relating to Infinity's business operations and HASelect's collateral were missing or incomplete. Moreover, those records that remained were poorly organized and difficult to access without the use of the proprietary Case Manager software developed by Infinity, which had been rendered unusable prior to Infinity's abandonment of its office."

- ¶ 6: "As is thoroughly document[ed] in filings on this Court's docket in a separate adversary proceeding HASelect filed against Infinity's principals, Oliver Hemmers and Anne Pantelas, and their new company, Infinity Health Solutions, LLC ("IHS") Adversary Case No. 22-01109), HASelect's efforts to obtain control over its collateral and possession of Infinity's books and records have continually been frustrated by Hemmers and Pantelas's attempts to secretly misappropriate and transfer Infinity's business records and intangible property to IHS as well as countless false representations by Hemmers and Pantelas concerning Infinity's dealings with Tecumseh and FTM Limited and their business activities through IHS."

- ¶ 10: "HASelect is informed and believes that Infinity used one or more file sharing applications in addition to its Case Manager software to transmit information and records to Tecumseh and FTM relating to the accounts receivable in dispute. HASelect has not been provided

7

65410923;9

access to any such applications or the information and records exchanged through those applications, which it believes are directly relevant to the issues raised in Tecumseh's Motion."

- ¶ 11: "Additional discovery is also needed concerning the nature and extent of Infinity's dealings with Tecumseh and FTM Limited and their respective principals. As set forth in HASelect's Opposition to the Motion and the supporting declaration of Michael Griffin, two of Tecumseh's principals are former employees of Griffin Asset Management LLC ("GAM"), serves as asset manager to HASelect. Also, FTM Limited was engaged by HASelect to provide subadvisory and fiduciary services in connection with the administration of HASelect's loan to Infinity. As outlined in the Opposition, HASelect has discovered evidence that those former employees and the principals of FTM Limited improperly used confidential and proprietary knowledge they gained through their employment with GAM and dealings with HASelect both in soliciting Infinity and in soliciting investors to whom they were introduced through GAM to fund Tecumseh and otherwise colluded with Infinity and FTM Limited to intentionally harm HASelect by stripping Infinity of the assets that served as HASelect's collateral and interfering in HASelect's relationships with its investors. Such discovery includes the depositions of Hemmers and Pantelas and, potentially, former employees of Infinity as well as the depositions of the principals of Tecumseh and HASelect. HASelect expects it will also need to subpoena records from and take the depositions Three Bell Capital as well as other third parties."

## III.    ARGUMENT

A court can strike summary judgment evidence when the evidence is inadmissible, speculative, conclusory, improperly authenticated, or otherwise incompetent. *See Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004*); Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972); *Newport Elecs., Inc. v. Newport Corp.*, 157 F. Supp. 2d 202, 208 (D. Conn. 2001). A court can strike a declaration if it is not

based on personal knowledge, if it sets out facts that would not be admissible in evidence, or if it does not show that the declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). The court should strike any portions of a declaration that do not meet the standards of Federal Rule of Civil Procedure 56(c)(4). *See Akin v. Q-L Invs., Inc.,* 959 F.2d 521, 530–31 (5th Cir. 1992).

Federal Rule of Bankruptcy Procedure 9017 provides that "the Federal Rules of Evidence apply in bankruptcy cases." *See also* Fed. R. Evid. 1101(a), (b) (providing that bankruptcy judges must apply the Federal Rules of Evidence in "proceedings and cases under title 11...."). Thus, "the Federal Rules of Evidence are applicable in adversary proceedings even when the proceeding implicates state substantive law." *In re Denh Nhiet Chu*, No. BAP.NV-07-, 2008 WL 8444805, at *4 (B.A.P. 9th Cir. Mar. 18, 2008) citing *Boone v. Barnes (In re Barnes)*, 266 B.R. 397, 403 (8th Cir.BAP2001).

Paragraphs 4, 5, 6, 10 and 11 of the Larsen Declaration do not contain admissible evidence; therefore, they should be stricken from the record and/or not considered by the Court in deciding the Motion.

### A.  LARSEN IS A TESTIFYING WITNESS.

In paragraph 1 of his declaration, Larsen states, "I have personal knowledge of the matters set forth herein except as to those matters stated on information and belief, which I believe to be true, and if called upon as a witness to testify to these facts, I could and would competently and truthfully do so." Excepting paragraph 10, which is objectionable for the reasons stated below, Larsen premises none of statements in his declaration on information and belief. *See* Larsen Decl. ¶¶ 2-9, 11-14. As to those matters, therefore, Larsen purports to have personal knowledge.

### B.  PARAGRAPHS 4, 5 AND 6 ARE UNCITED AND, THEREFORE, NOT EVIDENCE.

First, HASelect has not cited paragraphs 4, 5 or 6 in the Opposition or in its Statement of Disputed Facts [ECF No. 124]. These paragraphs, therefore, are not evidence at all, let alone admissible evidence, and should be disregarded by this Court. *See Meridian Textiles Inc. v. Topson*

**AKERMAN LLP**
1635 VILLAGE CENTER CIRCLE, SUITE 200
LAS VEGAS, NEVADA 89134
TEL.: (702) 634-5000 – FAX: (702) 380-8572

*Downs of California,* No. CV1108351RGKJCX, 2012 WL 12919533, at *3 (C.D. Cal. Nov. 15, 2012) ("It is incumbent on the parties to submit their 'best evidence' in an effective manner, and more importantly, to reference such evidence, rather than relying on that evidence to make itself known.") citing *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (Court may disregard uncited evidence because "Judges are not like pigs, hunting for truffles buried in briefs."). HASelect's failure to cite to these paragraphs begs the question "Why are they included in the declaration?" There is only one conclusion—to confuse the discrete issues presented by the Motion with immaterial and inadmissible evidence.

### C.  PARAGRAPH 4 DOES NOT CONTAIN ADMISSIBLE EVIDENCE.

In paragraph 4, Larsen testifies (again, without stating he asserts these statements on information and belief) about the amount and nature of HASelect's claim, stating, "HASelect held a perfected security interest in substantially all of Infinity's personal property, including its books and records." Larsen Decl. ¶ 4. Larsen further states that HASelect's "collateral consisted primarily of accounts receivable that Infinity had purchased or funded through transactions with over 100 different medical providers." *Id.* But Federal Rule of Evidence 602 provides, in pertinent part, that "A witness may testify to a matter *only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter*." FRE 602 (emphasis added). Larsen's—who has not been designated and does not purport to testify as an expert—conclusions presented in paragraph 4 relate to HASelect's claims arising from its business transactions and should, therefore, be evidenced by documents demonstrating those practices or, at minimum, testimony from a witness actually involved in those business practices, not HASelect's counsel. Indeed, assertions of counsel do not constitute probative evidence. *In re Dewey & LeBoeuf LLP*, 478 B.R. 627 (Bankr. S.D. N.Y. 2012) (opinion of counsel is not evidence.); *In re Smith*, 170 B.R. 111 (Bankr. N.D. Ohio 1994); *In re Hilton*, 544 B.R. 1 (Bankr. N.D. N.Y. 2016) (summary judgment declaration submitted by counsel in which the declarant alleged creditor's proof of claim relating to mortgage was inflated based on declarant's

65410923;9

review and understanding of creditor's payment schedule did not demonstrate that declarant had personal knowledge of matters relating to mortgage, and therefore was inadmissible).

And Larsen's statements concerning whether HASelect's security interest was perfected and to what extent it reached and was secured by Infinity's property are inadmissible legal conclusions. *See In re Van Der Laan*, 556 B.R. 366 (Bankr. N.D. Ill. 2016) (Because legal argumentation is an expression of legal opinion and is not a recitation of a "fact" to which an affiant is competent to testify, legal argument in an affidavit may be disregarded.).

### D. PARAGRAPH 5 DOES NOT CONTAIN ADMISSIBLE EVIDENCE.

Larsen's statements in paragraph 5 are similarly inadmissible. He makes factual statements in paragraph 5 concerning HASelect's access to Infinity's offices, evaluation of Infinity's computer system, and the usability of the computer system when HASelect examined it. But Larsen does not state any basis for his knowledge of these assertions. If he learned the information from documents, he should have authenticated and attached them. *See* FRE 602; *see In re Dewey,* supra; *In re Hilton*, *supra*. If he learned it from talking to someone about it, it is inadmissible hearsay. *See* FRE 802.

Further, paragraph 5 is irrelevant and inadmissible pursuant to FRE 401 (Test for Relevant Evidence).[4] The issues raised by the Motion are narrow: i) Did the Debtor ever have an ownership interest in the Direct Purchase Receivables (Mot. at 11); ii) alternatively, did a purchase money resulting trust arise in Tecumseh's favor with respect to the Direct Purchase Receivables at the time of their purchase (Mot. at 12); iii) whether HASelect's lien extends to the Direct Purchase Receivables (Mot. at 15); and iv) whether 11 U.S.C. § 544 can be used to make the Direct Purchase Receivables part of the bankruptcy estate (Mot. at 17). But, by paragraph 5, Larsen attempts to shift this Court's focus away from the discrete issues of the Motion, suggesting by their inclusion that issues such as

---

[4] Federal Rule of Evidence 401 provides that "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it could be without the evidence; and (b) the fact is of consequence in determining the action."

11

Infinity's document and software handling practices are germane to the Motion. They are not, and this Court should not consider paragraph 5.

Larsen's statements about Infinity's bookkeeping are barred by claim preclusion to the extent they are intended to demonstrate HASelect had a recoverable interest in Tecumseh's business dealings with Infinity because such an argument necessarily contradicts the Meyer Action court's ruling that Tecumseh was a purchaser, not a lender, of medical receivables. *See* Ex. L (Preliminary Injunction Order) at 3.

The three elements essential to establish claim preclusion are:

(1) the identities of the parties are the same as a prior litigation;

(2) the subject matter is the same as the prior litigation, and

(3) there was a prior adjudication of the issue by a court of competent jurisdiction

*Garris v. S. C. Reinsurance Facility*, 333 S. C. 432, 511 S.E.2d 48, 57 (1998); *Johnson v. Greenwood Mills, Inc.*, 317 S. C. 248, 452 S.E.2d 832, 833 (1994); *Pye v. Aycock*, 325 S. C. 426, 480 S.E 2d 455, 458 (Ct. App. 1997). If these conditions are met, a litigant is barred from raising any of the issues which were raised in the prior action as well as any issues which might have been raised then. *Garris*, 511 S.E.2d at 57, *Hilton Head Center of South Carolina, Inc. v Public Service Comm'n*, 294 S.C. 9, 362 S.E.2d 176, 177 (1987).

Here, the parties and issues are the same as in the Meyer Action—with HASelect on the one side and Tecumseh on the other. *See also Pye*, 480 S.E.2d at 458 (stating it is well settled that the doctrine of claim preclusion has been extended to include privies of the parties to the prior litigation). Without question, the subject matter—HASelect's grievances concerning Tecumseh's business transactions with the Debtor and rights to the identified medical receivables—is the same as in the Meyer Action. *See Murphy v. Owens-Corning Fiberglass Corp.*, 356 S.C. 592, 590 S E.2d 479, 481 (2003) (The "subject of the action" is "the matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been done; and **this is,**

12

**ordinarily the property, or the contract and its subject matter, or the thing involved in the dispute**." (emphasis added)).

There was a prior adjudication of the subject matter by a court of competent jurisdiction. As set forth above, Judge Mitchell of the Circuit Court of Cook County, Illinois has already heard two days of testimony and considered the parties' evidence on HASelect's claims against Tecumseh, including whether Tecumseh was a lender or a purchaser of medical receivables, holding Tecumseh was a purchaser. Based on that finding, ancillary issues about Infinity's bookkeeping process do not introduce a material issue as to Tecumseh's contractual rights where the Meyer Action court found none.

### E.   PARAGRAPH 6 DOES NOT CONTAIN ADMISSIBLE EVIDENCE.

Paragraph 6 consists entirely of Larsen's summary and commentary concerning Adversary Case No. 22-01109 ("Hemmers Case"). But he not only fails to attach pleadings or papers from that action to support his conclusions, he does not cite one document from that case. Without reference to any findings of fact or conclusions of law in the Hemmers Case, Larsen's statements in paragraph 6 are merely the inadmissible opinions and legal conclusions of counsel—not admissible evidence. *See, infra,* Part III.B. regarding inadmissibility of attorney opinions.

Additionally, like paragraph 5, Larsen's statements in paragraph 6 are irrelevant to the scope of the Motion. This Court has not invited inquiry, and the Motion certain does not instigate such an analysis, of the Debtor's principals' actions, as was evaluated by the Meyer Action court. Rather, the Motion contemplates an analysis of Tecumseh's rights to the Direct Purchase Receivables based upon the uncontroverted documentary evidence presented. HASelect cannot rebut that evidence and hopes instead to distract the Court with unfounded, irrelevant, and inadmissible statements like those contained in paragraph 6.

13

65410923;9

### F. PARAGRAPH 10 DOES NOT CONTAIN ADMISSIBLE EVIDENCE.

In paragraph 10, Larsen testifies that "HASelect is informed and believes that Infinity used one or more file sharing applications in addition to its Case Manager software to transmit information and records to Tecumseh and FTM relating to the accounts receivable in dispute. HASelect has not been provided access to any such applications or the information and records exchanged through those applications, which it believes are directly relevant to the issues raised in Tecumseh's Motion." But Larsen is HASelect's counsel, not HASelect. He has not stated how he knows what HASelect is informed or believes and this paragraph, therefore, lacks foundation and should be stricken. FRE 602.

### G. PARAGRAPH 11 DOES NOT CONTAIN ADMISSIBLE EVIDENCE.

In paragraph 11, Larsen states that HASelect requires additional discovery based on his unsubstantiated conclusions that Tecumseh's principals were involved in a plot to improperly use HASelect's confidential and proprietary information to harm HASelect's collateral. Of course, Larsen does not reference a single document. And, as discussed at length herein, the opinions and unfounded conclusions of counsel are not evidence, but merely argument.

Further, paragraph 11 does not present relevant evidence. Again, the issues in the Motion relate to this Court's interpretation of identifiable (and identified) documents and determining the parties' respective rights and liabilities based on the application of the law to those documents—same the process the Meyer Action court undertook (but with the benefit of two days of testimony). Larsen's unfounded allegation of some clandestine plot to harm HASelect without reference to a single document does not tell this Court what additional discovery precludes summary judgment or why it should revisit the findings of the Meyer Action court. Indeed, it is a transparent effort to avert the Court's attention from the fact the Motion discretely focuses on issues the Court can and should resolve through the application of law to evidence, not speculation.

65410923;9

### IV. CONCLUSION

Based on the foregoing, Tecumseh respectfully requests that this Court grant this Motion in its entirety, striking paragraphs 4, 5, 6, 10 and 11 of the Larsen Declaration.

Dated this 24th day of October.

                            Respectfully submitted,

                            GARMAN TURNER GORDON LLP

By: */s/ Jared M. Sechrist*
GERALD M. GORDON, ESQ.
JARED M. SECHRIST, ESQ.
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119

and

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

65410923;9