GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
JARED M. SECHRIST
Nevada Bar No. 10439
E-mail: jsechrist@gtg.legal
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000 / Fax: (725) 777-3112

MICHAEL D. NAPOLI (*Pro hac vice*)
Email: michael.napoli@akerman.com
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116

ARIEL E. STERN
Nevada Bar No. 8276
Email: ariel.stern@akerman.com
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572

*Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>INFINITY CAPITAL MANAGEMENT, INC.,<br>Debtor. | Case No.: 21-14486-abl<br>Chapter 7 |
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br>Plaintiff,<br>v.<br>TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br>Defendant.<br>TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br>Counter-Claimant,<br>v.<br>HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br>Counter-Defendant. | Adversary Case No.: 21-01167-abl<br><br>**SUPPLEMENTAL DECLARATION OF MICHAEL BELOTZ IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DIRECT PURCHASE RECEIVABLES**<br><br>Hearing Date: October 25, 2022<br>Hearing Time: 1:30 p.m. |

|   |
|---|
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP, |
| Counter-Claimant, |
| v. |
| TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP, |
| Counter-Defendant. |

I, MICHAEL BELOTZ, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  My name is Michael Belotz. I am over the age of twenty-one years, of sound mind, and fully competent to testify in this cause.

2.  I submit this supplemental declaration in support of the Motion for Partial Summary Judgment as to Direct Purchase Receivables (the "**Motion**") of Tecumseh–Infinity Medical Receivable Fund, LP ("**Tecumseh**"), defendant and counterclaimant in the above-captioned adversary proceeding.

3.  I am a principal of Tecumseh Alternatives, LLC, the advisor to Tecumseh. In that capacity, I have personal knowledge of the facts stated herein, all of which are true and correct. If called upon to testify regarding the contents of this Declaration, I could and would do so.

4.  In my role as a principal of Tecumseh, I am responsible for all aspects of Tecumseh's investments in medical receivables. Part of my duties require that I ensure the proper accounting and reporting of funds flowing to and from Tecumseh. In order to do so, I review and manage Tecumseh's banking records, financial records, contracts, and investments.

5.  As it relates to Tecumseh, I was personally involved in the business between Debtor and Tecumseh, particularly as it relates to the purchase of receivables pursuant to a sub-advisory agreement entered with the Debtor on June 18, 2020, as modified by Addendum A on or about January 5, 2021 (the "**Sub-Advisory Agreement**").[1]

---

[1] A true and correct copy of the Sub-Advisory Agreement is attached to Tecumseh's Statement of Undisputed Facts in *Support of Motion for Partial Summary Judgment as to Direct Purchase Receivables* (the "**Statement of Undisputed Facts**") as **Exhibit B**.

GARMAN TURNER GORDON LLP
7251 Amigo Street
Suite 210
Las Vegas, NV 89119
725-777-3000

2

6. As part of my work coordinating with the Debtor, I had access to the Debtor's internal database that stored all receivables Debtor managed on behalf of Tecumseh. I regularly reviewed the database in the course of my duties. I also had extensive contact with various employees of the Debtor, including Oliver Hemmers ("**Hemmers**"). I also spoke regularly, multiple times per week, with FTM Investments, Inc. ("**FTM**"), Tecumseh's and with the Debtor's employees about the receivables that Tecumseh owned. We also had frequent e-mail exchanges. Generally, I would contact FTM before reaching out to the Debtor because contractually FTM managed accounting on all Tecumseh receivables.

7. To pay for the receivables that it intended to purchase, Tecumseh opened a bank account (whose account number ends in 8995) at Bank of America (the "**BofA Account**") in July 2020. This is the same account that I referred to in my earlier declaration (ECF No. 91). The BofA Account and all funds in it belong to Tecumseh. The account bears the title "Tecumseh-Infinity Medical Receivables Fund, LP," which is Tecumseh's legal name. That title is referenced on all of the bank statements and checks issued on the account.

8. The Debtor suggested that we associate its trade name, Infinity Health Connections, with the BofA Account. Hemmers explained that associating Debtor's trade name with our account would make it easier to deposit checks from lawyers paying the receivables we intended to purchase. We informed the bank that the Debtor authorized us to accept deposits in the name of Infinity Health Connections into the BofA Account for the receivables that Tecumseh owned.

9. Tecumseh opened the account with a $350 counter deposit on July 16, 2020. Following July 2020, Tecumseh made deposits into the BofA account from its bank account (account number ending in 1991) at Wintrust Funds Group/Northbrook Bank & Trust (the "**Northbrook Account**"). The Northbrook Account is the account that Tecumseh uses to receive and hold investments from investors. The funds in the Northbrook account are almost exclusively from investors. None of the funds in that account were the proceeds of any receivable acquired with the assistance of the Debtor, including both the Disputed Receivables and the Direct Purchase Receivables (both as defined in the Motion).

10. As part of the process by which Tecumseh purchased receivables and paid for them using the BofA account, the Debtor informed us in advance of the general quantity of receivables it had identified for Tecumseh to purchase over the next several weeks. Based on that estimate, Tecumseh would deposit funds as needed to pay for the receivables. From October 2020 through September 2021, Tecumseh deposited an average of $308,950 per month. For that same period, we paid an average of $290,385 to medical providers to purchase receivables.

11. I and people working under my supervision traced all of the deposits and withdrawals in the BofA Account. Our Tracing Analysis is attached to Tecumseh's Supplemental Statement of Undisputed Facts ("**Supp. SOUF**") as **Exhibit O.**

12. To determine the source of the deposits in the BofA Account, we reviewed all of the account statements for that account through September 2021. Deposits by Tecumseh are identified on the account statements with the following language: "ORIG:TECUMSEH INFINITY MEDICAL ID:8704901991 SND BK:NORTHBROOK BANK & TRUST COMPA." We determined that Tecumseh deposited $3,707,401.26 in investor funds into the BofA account. Copies of the BofA Account statements showing all withdrawals and deposits are attached to Supp. SOUF as **Exhibit M.**[2] They are identified on the Tracing Analysis as "Tecumseh Deposits."

13. To confirm that these deposits reflected investor funds, we reviewed the Northbrook Account. I reviewed all of the statements for the Northbrook Account from June 2020 through September 2021. For each month in which in which Tecumseh deposited funds into the BofA Account from the Northbrook Account, I confirmed that there were sufficient investor deposits in the Northbrook Account to cover the deposit to the BofA Account. Copies of the Northbrook Account statements are attached to Supp. SOUF as **Exhibit N**.[3]

14. We identified $696,747.31 of deposits that relate to payments received for receivables purchased by Tecumseh. To insure that we did not understate the funds related to

---

[2] We redacted the account number and any patient names appearing on the statements. In addition, all of the checks drawn on the BofA account were previously attached to Tecumseh's Statement of Undisputed Facts and will not be resubmitted.

[3] We redacted the account number and any investor names appearing on the statements.

payments received on receivables, we credited all deposits that we could not positively identify as either a deposit by Tecumseh or a returned item or the like as a receivable deposit. These are shown on the Tracing Analysis as "Receivables." Note that for August 2021, $80,564.35 was deposited but $32,380.80 was reversed by the bank for a net of $48,183.55. The $32,380.80 item was deposited on August 26, 2021 and charged back by the bank on August 27, 2021.

15. We also identified $139,403.56 as "Other Deposits." These are a $60 wire transfer fee refund on December 14, 2020, a $59,047.97 return of posted check 1691 on March 4, 2021, a $78,000 returned wire from Stat Diagnostics on March 24, 2021 and a $2,295.59 returned item in June 2021.

16. The withdrawals for payments to medical service providers to purchase receivables are set out in the Reconciliation that is attached to Tecumseh's Statement of Undisputed Facts as **Exhibit F.** The Reconciliation shows that Tecumseh paid $3,185,582.35 directly to medical service providers from the BofA Account. Our separate review of the bank statements confirms that at least that much was distributed from the BofA Account to medical providers. These payments are identified as "Provider Payments" in the Tracing Analysis. The monthly totals in the Reconciliation and the Tracing Analysis do not correspond because the Reconciliation is based on the date checks were written and the Tracing Analysis is based on the date checks cleared. In addition, the total amount in the Tracing Analysis is higher ($3,484,619.03) due to returned items such as the two items totaling $137,047.97 in March 2021 discussed above and because Tecumseh bought receivables not brokered by the Debtor in September 2021 following the petition date using the BofA Account.

17. Tecumseh also paid the Debtor's fee out of the BofA Account. It paid $723,072.79 to the Debtor in fees and expense reimbursements. The payments are identified as "Infinity Fees" in the Tracing Analysis. In addition, Tecumseh distributed $55,580.80 to the Debtor in October 2020 (Check 1001, dated 9/30/2020 cleared 10/1/2020) to enable the Debtor to purchase the Batch 1-G receivables, which are part of the Disputed Receivables, on Tecumseh's behalf.

///

18.     The total Tecumseh Deposits into the BofA Account ($3,707,401.26) exceed the amount that Tecumseh paid for the Direct Purchase Receivables ($3,185,582.35) by more than $521,000. The flow of funds from Tecumseh Deposits and Provider Payments shows that the Tecumseh Deposits were used to pay the Provider Payments. On October 1, 2020, the BofA account had a balance of $56,175.06. On that day, check 1001 in the amount of $55,580.80 for Batch 1-G of the Disputed Receivables cleared leaving a balance of less than $1,000. On October 29, 2020, Tecumseh deposited $200,000 and wired $142,862.63 to medical providers South Atlanta MUA, Stat Diagnostics and Preva. The only possible source of payment for these receivables was Tecumseh's $200,000 deposit. From then on Tecumseh Deposits exceeded Provider Payments by a wide margin. From July 2020 through September 2021, cumulative Tecumseh Deposits were higher than cumulative Provider Payments in each month as shown below.

|        | Cumulative Tecumseh Deposits | Cumulative Provider Payments | Difference |
|--------|-----------------------------:|------------------------------:|-----------:|
| Jul-20 | $ 350.00                     | $ -                           | $ 350.00   |
| Aug-20 | $ 350.00                     | $ -                           | $ 350.00   |
| Sep-20 | $ 350.00                     | $ -                           | $ 350.00   |
| Oct-20 | $ 400,350.00                 | $ 143,269.01                  | $ 257,080.99 |
| Nov-20 | $ 400,350.00                 | $ 271,866.95                  | $ 128,483.05 |
| Dec-20 | $ 800,350.00                 | $ 529,150.63                  | $ 271,199.37 |
| Jan-21 | $ 1,300,350.00               | $ 830,245.60                  | $ 470,104.40 |
| Feb-21 | $ 1,300,350.00               | $ 1,067,187.31                | $ 233,162.69 |
| Mar-21 | $ 1,592,653.50               | $ 1,506,191.97                | $ 86,461.53 |
| Apr-21 | $ 1,962,785.20               | $ 1,855,632.65                | $ 107,152.55 |
| May-21 | $ 2,447,365.18               | $ 2,214,705.14                | $ 232,660.04 |
| Jun-21 | $ 2,860,043.95               | $ 2,767,335.39                | $ 92,708.56 |
| Jul-21 | $ 3,191,470.48               | $ 2,979,537.16                | $ 211,933.32 |
| Aug-21 | $ 3,417,561.32               | $ 3,204,879.42                | $ 212,681.90 |
| Sep-21 | $ 3,707,401.26               | $ 3,484,619.03                | $ 222,782.23 |

19.     Also, the total payments related to Receivables ($696,747.31) was less than the amount paid to the Debtor for fees ($723,072.79). The margin is even greater when the $55,580.80 for the Batch 1-G receivables is included.

///

1
2       I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
3
4       Dated October  21, 2022.
5                                            MICHAEL BEL~~OTZ~~
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7

66922748;1