Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  blarsen@shea.law
          kwyant@shea.law

*Attorneys for HASelect-Medical Receivables*
*Litigation Finance Fund International SP*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.<br><br>Debtor. | Case No. 21-14486-abl<br>Chapter 7 |
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br><br>Plaintiff,<br><br>v.<br><br>TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Defendant. | Adversary Case No. 21-01167-abl<br><br><br>**PLAINTIFF HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN 1-F, 1-I, AND 1-J ACCOUNTS** |
| TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>Counter-Claimant,<br><br>v.<br><br>HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP;<br><br>Counter-Defendants. | Hearing Date:   March 2, 2023<br>Hearing Time:  9:30 a.m. |

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

HASelect-Medical Receivables Litigation Finance Fund International SP ("HASelect") by and through counsel, respectfully submits this Motion for Partial Summary Judgment (the "Motion") to determine the superior priority of HASelect's perfected security interest in certain of the accounts receivable (specifically, the 1-F Accounts, 1-I Accounts, and 1-J Accounts as described herein) that Tecumseh-Infinity Medical Receivables Fund, LP ("Tecumseh") claims to have acquired from Debtor Infinity Capital Management, Inc. ("Infinity" or "Debtor").

This Motion is made pursuant to Fed. R. Civ. P. 56 and Federal Rules of Bankruptcy Procedure 7056 and Rule 7056 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Nevada,[1] and is made and based upon the following memorandum of points and authorities, the statement of undisputed facts submitted herewith, the exhibits attached hereto as well as the pleadings and other documents on file in this Adversary Proceeding and related chapter 7 bankruptcy case of Infinity, judicial notice of which is requested.[2]

## I.    PRELIMINARY STATEMENT

In March 2022, HASelect brought a Motion for Partial Summary Judgment [ECF No. 53] (the "Prior Motion") as to certain of the accounts in dispute.  The Prior Motion was supported by evidence showing that Infinity had purchased the accounts at issue (defined in the Prior Motion and herein as the "Sold Accounts" – a subset of the "Disputed Accounts")[3] using its own funds prior to selling and assigning such accounts to Tecumseh.  In its Opposition [ECF No. 74] to the Prior Motion, Tecumseh disputed HASelect's evidence as to the timing of Infinity's purchase of the Sold Accounts and claimed that such Sold Accounts were subject to a purchase money resulting trust in

---

[1] Unless otherwise stated, all "Chapter" and "Section" references are to Title 11 of the U.S. Code (the "Bankruptcy Code"), all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and all references to "Local Rules" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada (the "Local Rules").

[2] Judicial notice of all materials appearing on the docket in the above-captioned Chapter 7 Bankruptcy Case and related adversary proceedings is proper. *See* FRE 201(b); *see also U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.)*, 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case, and public records.") (cited by *In re Fikrou*, No. 19-13180-mkn, 2019 Bankr. LEXIS 2613, n. 2 (D. Nev. Bankr. Aug. 8, 2019)).

[3] A list of the Disputed Accounts (also referred to in other filings as the "Tecumseh Receivables") is on file in Infinity's chapter 7 case at ECF Nos. 201-1 and 201-2.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

favor of Tecumseh.  In HASelect's Reply [ECF No. 79] in support of the Prior Motion, it provided additional evidence confirming the timing of Infinity's purchase of the Sold Accounts and showing that no such resulting trust could arise because Tecumseh provided payment to Infinity only after Infinity had already purchased and paid for nearly all of the Sold Accounts.

In deciding the Prior Motion, this Court rightly refused to impose the rarely granted remedy of a resulting trust in favor of Tecumseh because subsequent payment by an alleged beneficiary cannot give rise to a resulting trust relationship under applicable law. Instead, the Court granted HASelect's Prior Motion in part, awarding HASelect all relief it requested as to the 1-A through 1-E Accounts, the 1-G Accounts, and the 1-H accounts (as defined in the Prior Motion).[4]  However, the Court found that HASelect did not provide sufficient evidence regarding Tecumseh's subsequent payment to Infinity with respect to the 1-F Accounts, 1-I Accounts, and 1-J Accounts (as defined in the Prior Motion).

The instant Motion supplements and clarifies the evidence submitted in support of the Prior Motion to establish beyond any credible doubt that the 1-F Accounts, 1-I Accounts, and 1-J Accounts at issue herein were funded by Infinity directly from its own operating account and in almost all cases prior to Infinity's receipt of any corresponding payment from Tecumseh.  The subset of the 1-F Accounts, 1-I Accounts, and 1-J Accounts that are the subject of this Motion are identified in Exhibit 2, Exhibit 5, and Exhibit 7, respectively, and are summarized in the table below:

| Sale | Date of Purchase Order | Purchase Price | Face Value |
|------|------------------------|----------------|------------|
| 1-F Accounts | 9/22/2020 | $315,166.54 | $1,416,411.02 |
| 1-I Accounts | 10/12/2020 | $170,795.83 | $1,012,044.44 |
| 1-J Accounts | 10/23/2020 | $54,823.26 | $149,420.09 |
| | | **$540,785.63** | **$2,577,875.55** |

The evidence provided herewith and referenced in the corresponding *Statement of Undisputed Facts*, which is incorporated in full herein by reference, plainly establishes that Infinity funded these accounts directly from its own operating account using its own funds and, with the exception of a

---

[4] *See* Order Granting in Part and Denying in Part HASelect's Prior Motion [ECF No. 88].

single transaction within the 1-I Accounts as discussed below, prior to its receipt of any corresponding payment from Tecumseh. As such, no resulting trust can arise, and the Court must grant partial summary judgment in HASelect's favor as requested herein.

## II.    JURISDICTION AND VENUE

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are FRCP 56, Bankruptcy Rule 7056, and Local Rule 7056.

## III.    ARGUMENT

### A.    Partial Summary Judgment Confirming Haselect's Superior Interest in the 1-F, 1-I, and 1-J Accounts at Issue Herein Is Appropriate and Warranted.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Id.* As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

**B.    HASelect's Perfected Security Interest in the Sold Accounts Is Superior to Any Interest Tecumseh May Claim.**

As this Court has already confirmed through its orders granting HASelect's *Motion for Relief from Automatic Stay*,[5] HASelect and chapter 7 Trustee Robert Atkinson's *Joint Motion for Abandonment of Collateral*[6] filed in Infinity's chapter 7 case, and this Court's previous granting of HASelect's *Prior Motion*,[7] HASelect holds a perfected, first-priority security interest in all Collateral, including all existing and after acquired accounts receivable in which Infinity held any interest, pursuant to the MLA.  As such, there should be no dispute that HASelect's perfected and first priority security interest in the Collateral includes the 1-F, 1-I, and 1-J Accounts at issue in this Motion.

Additionally, the Court has already concluded that Tecumseh has no perfected security interest in the Collateral, including, but not limited to, accounts receivable owned by Infinity.[8]  The Court also concluded that, as such, HASelect's security interest in the Collateral trumps any security interest claimed by Tecumseh in the Collateral.[9]  The Court further concluded that HASelect could also avoid Tecumseh's unperfected security interest through HASelect's Section 544 claims, which HASelect purchased from Infinity's bankruptcy estate.[10]

In unsuccessfully attempting to avoid these findings, Tecumseh has repeatedly claimed the Sold Accounts were held by Infinity subject to a resulting trust in favor of Tecumseh and, thus, were never owned by Infinity.[11]  Just as the Court found previously that no resulting trust existed over the 1-A through 1-E Accounts, 1-G Accounts, and 1-H Accounts, the Court should again find here that

---

[5] *See* ECF No. 96 in Infinity's chapter 7 case.

[6] *See* ECF No. 97 in Infinity's chapter 7 case.

[7] *See* ECF No. 88 on file herein.

[8] *See id.*

[9] *See id.*

[10] *See id.*

[11] *See* Tecumseh's Opposition to the Prior Motion [ECF No. 74].

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

no resulting trust exists over the 1-F Accounts, 1-I Accounts, and 1-J Accounts that are the subject of this Motion.

**C.     Tecumseh Is Not Entitled to the Rarely Granted Remedy of a Resulting Trust Because Its Funds Were Not Used to Purchase the 1-F, 1-I, and 1-J Accounts.**

Tecumseh has asserted that it is entitled to a resulting trust over the Sold Accounts under South Carolina law.[12]  Assuming that South Carolina law applies, Tecumseh must establish, through clear and convincing evidence, the following to obtain a resulting trust over the 1-F, 1-I, and 1-J Accounts at issue: (1) that Tecumseh paid for the accounts (2) with the intent to own them (3) on the date of purchase. *See, e.g.*, *Anderson v. Monroe (In re Hester)*, No. 18-03903, 2019 Bankr. LEXIS 2371, *8-9 (S.C. Bankr. July 26, 2019) (holding that a resulting trust arises at the time of purchase, or not at all, and only arises if intent and payment coincide with the transfer of assets). Payment contemporaneously or prior to the actual transaction is required:

> The last requirement is important.  South Carolina trust law is clear that a resulting trust arises at the time of purchase, or not at all.  [T]he trust must be coequal with the deed, and cannot arise from any subsequent transactions.  That a party pays for property and/or intends to own it at some point in time fails to establish a trust.  For a resulting trust to arise, payment and intent must coincide with a deed's execution.

*Anderson v. Architectural Glass Constr., Inc. (In re Pfister)*, 749 F.3d 294, 299 (4th Cir. 2014) (emphasis in original) (citations omitted); *see also Glover v. Glover*, 234 S.E.2d 488 (S.C. 1977) ("In order to establish a resulting trust [under South Carolina law], it was necessary that respondent show by definite, clear, unequivocal, and convincing evidence that she paid a definite portion of the purchase money at the time of the transaction.").  Many other states, including Nevada, require that "in order to establish a resulting trust from the payment of the purchase money, it must be shown that it was paid at the time the title passed; that no subsequent payment will satisfy the statute."  See *Boskowitz v. Davis*, 12 Nev. 446 (1877); *see also, e.g., Buckwalter Stove Co. v. Edmonds*, 128 A. 835, 836 (Pa. 1925) ("A subsequent payment of purchase money will not raise a resulting trust.").

The evidence provided herewith indisputably shows that Tecumseh's funds were not used to purchase any of the 1-F Accounts, 1-I Accounts, and 1-J Accounts at issue.  Consequently, Tecumseh has no defense to HASelect's valid request for partial summary judgment as to these

---

[12] *See id.*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  accounts.

2          1.      *Tecumseh's Subsequent Payment for the 1-F Accounts Precludes the Court
3                  from Finding a Resulting Trust in Tecumseh's Favor as a Matter of Law.*

4          On September 22, 2020, Tecumseh issued its sixth Receivables Purchase Order to Infinity

5  (the "1-F Purchase Order") identifying approximately 332 separate 1-F Accounts it intended to

6  purchase from Infinity for a total price of $481,023.10, which was comprised of Infinity's costs for

7  the 1-F Accounts of $400,852.58 and a 20% fee to Infinity of $80,170.52.[13]  Tecumseh did not send

8  the corresponding payment to Infinity until September 25, 2020 when it wired $481,023.10 to

9  Infinity's Nevada State Bank account ending in 8480 (the "8480 Account").[14]

10         The 1-F Purchase Order contains a "Date Paid" column that identifies numerous 1-F

11  Accounts as being paid for by Infinity on or before the date of the execution of the 1-F Purchase

12  Order.  For other 1-F Accounts, the "Date Paid" column remains blank.[15] To address these missing

13  dates of payment, HASelect compiled a spreadsheet for the 1-F Accounts that are the subject of this

14  Motion (the "1-F Accounts Spreadsheet")[16], which is sorted by "PaidDate" (the date of payment by

15  Infinity to the medical provider for the associated account) and refers to bates numbered documents

16  included in Exhibit 3 evidencing the corresponding payment and payment date.[17]

17         Beyond the full analysis provided in the 1-F Accounts Spreadsheet, the following examples

18  show that the 1-F Accounts Spreadsheet is accurate and can be used to determine that Infinity

19

20  [13] The 1-F Purchase Order was filed in Infinity's chapter 7 case at ECF No. 201-9 and designated as "Exhibit D-6".  A copy of the 1-F Purchase Order is submitted herewith as Exhibit 1.

21  [14] *See* Tecumseh's Response to Statement of Undisputed Facts, ECF No. 75, ¶ 31, on file herein.

22  [15] *See id.*

23  [16] A copy of the 1-F Accounts Spreadsheet is submitted herewith as Exhibit 2.  A copy of all relevant bates numbered documents evidencing Infinity's payments to medical providers relating to the 1-F Accounts is submitted herewith as Exhibit 3.

24  [17] The 1-F Accounts Spreadsheet is a reorganized and simplified version of the original "TIFDumpWithIncome-
25  Final.xlsx" spreadsheet provided by Infinity to identify the Disputed Accounts, which is the same record used to create the spreadsheet identifying the Disputed Accounts on file in Infinity's chapter 7 case at ECF No. 201-1.  Certain information has been redacted from the 1-F Accounts Spreadsheet to protect patient information and remove irrelevant
26  information.  For ease of reference, certain columns have been added to the 1-F Accounts Spreadsheet, which are identified as the "Bates Nos." and "W/O 20%" columns.  The "Bates Nos." column refers to the supporting documents
27  through which the "PaidDate" for each account can be verified.  The figures provided in the "W/O 20%" column are reduced by 20% from the figures in the "BillCost" column to reflect the amounts actually paid by Infinity to the various
28  medical providers through whom the 1-F Accounts were funded.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

purchased the 1-F Accounts at issue prior to selling and assigning the same to Tecumseh. Starting with the first entry, Infinity paid $240.00 on July 21, 2020 to Dr. Kevin Hicks, D.O. as confirmed by Infinity's American Express billing statement provided at Bates No. 0265 in Exhibit 3, which shows a $240.00 payment on July 21, 2020 to Family Practice of Peachtree where a Dr. Hicks practices.[18]

Looking to the next four entries in the 1-F Accounts Spreadsheet (highlighted in yellow), paid with Check No. 7608 to Safeway Psychological Services, the same amounts appear on the check image (located at Bates No. 0039 in Exhibit 3) as for BillID 23977 ($844.00), BillID 23978 ($436.00), BillID 24379 ($328.00), and BillID 24443 ($328.00) in the 1-F Accounts Spreadsheet. Thess BillIDs and corresponding payment amounts can be confirmed through the 1-F Purchase Order on file in Infinity's Chapter 7 case at ECF No. 201-9 and submitted herewith as Exhibit 1. For example, BillID 23977 corresponds to a purchase price of $844.00 (as calculated by reducing the BillCost amount by 20%) and a GFB Amount of $2,110.00 in both documents.[19]

On July 23, 2020, Infinity issued Check No. 7629 from its Operating Account to the Center for Spine Procedure, which included the purchase of a receivable for $8,048.00,[20] which is associated with BillID 23992.[21]   On August 13, 2020, Infinity issued Check No. 7652 from its Operating Account to Perimeter Orthopedics PC, which was for the purchase of accounts receivable in the amounts of $1,240.35, $738.30, and $40.36 (among others).[22] This coincides with BillIDs 24566, 24567, and 24571 (highlighted in green).[23]

In a slightly more complicated example, BillID 24564 (highlighted in blue) was paid by Infinity on July 30, 2020 by Check No. 7630 in the amount of $45,200.00 to Northside Hospital,

---

[18] See https://drhickspractice.com/.

[19] Compare 1-F Purchase Order, BillID 23977 at p. 12, submitted herewith as Exhibit 1 with 1-F Accounts Spreadsheet, submitted herewith as Exhibit 2.

[20] See Bates No. 0042, contained in Exhibit 3 submitted herewith.

[21] Compare 1-F Purchase Order, p. 12, submitted herewith as Exhibit 1 with 1-F Accounts Spreadsheet entries associated with Check No. 7608.

[22] See Bates No. 0074, contained in Exhibit 3 submitted herewith.

[23] Compare 1-F Purchase Order, pp. 3-4, submitted herewith as Exhibit 1 with 1-F Accounts Spreadsheet entries associated with Check No. 7608.

which can be found at Bates No. 0045 in <u>Exhibit 3</u>.  On September 9, 2020, Northside Hospital refunded $7,390.20 of this amount to Infinity (refund also highlighted in blue), which reduced amount paid by Infinity in connection with this account to $37,809.80.[24]  The 1-F Purchase Order issued by Tecumseh, which is on file in Infinity's Chapter 7 case at ECF No. 201-9, confirms that the "Purchase Price" paid to Infinity by Tecumseh for BillID 24564 was $37,809.80.[25]

Infinity also caused transfers to be made by wire to acquire 1-F Accounts prior to Tecumseh providing payment or issuing the 1-F Purchase Order.  For example, BillID 24515 (highlighted in red) reflects the first wire transfer in the 1-F Accounts Spreadsheet and shows a wire in the amount of $6,380.50 to South Atlanta MUA Center on July 30, 2020.[26]  Infinity's Nevada State Bank Account ending in 6375 (the "<u>Operating Account</u>") confirms a transfer to South Atlanta MUA for $6,380.50 on July 30, 2020.[27]  Similarly, Infinity wired $10,230.00 to South Atlanta MUA Center on August 10, 2020.[28]  This amount is the exact amount associated with a payment to South Atlanta MUA Center on the same date associated with BillID 24613 (also highlighted in red) reflected in the 1-F Purchase Order.[29]

This same analysis can be performed to confirm the dates of payment by Infinity for all of the 1-F Accounts included in the 1-F Accounts Spreadsheet and plainly demonstrates that Infinity funded the 239 separate 1-F Accounts that are the subject of this Motion at a cost of $315,116.54 and with a face value of $1,416,411.02 prior to Tecumseh's execution of the 1-F Purchase Order on September 22, 2020 and prior to Infinity's receipt of any funds from Tecumseh.  As such, no resulting trust can exist.  HASelect's Motion should be granted with respect to the 1-F Accounts at issue herein.

---

[24] $45,200 - $7,390.20 = $37,809.80.

[25] The 1-F Purchase Order was filed in Infinity's chapter 7 case at ECF No. 201-9 and designated as "Exhibit D-6".  A copy of the 1-F Purchase Order is submitted herewith as <u>Exhibit 1</u>.

[26] *See id.*; *see also* 1-F Purchase Order, BillID24515 at p. 12, submitted herewith as <u>Exhibit 1</u>.

[27] *See* <u>Exhibit 3</u> at Bates No. 0248.

[28] *See* Bates No. 0252, contained in <u>Exhibit 3</u> submitted herewith.

[29] *Compare* 1-F Purchase Order, p. 4, submitted herewith as <u>Exhibit 1</u> *with* 1-F Accounts Spreadsheet entries associated with BillID 24613.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

2. *Tecumseh's Subsequent Payment for the 1-I Accounts Precludes the Court from Finding a Resulting Trust in Tecumseh's Favor as a Matter of Law.*

On October 12, 2020, Tecumseh issued a ninth Receivables Purchase Order to Infinity (the "1-I Purchase Order") identifying approximately 718 separate accounts receivable (the "1-I Accounts") it intended to purchase from Infinity for a total price of $209,320.99, which was comprised of Infinity's costs for the 1-I Accounts of $174,434.16 and a 20% fee to Infinity of $34,886.83.[30]  Tecumseh did not send the corresponding payment to Infinity until October 14, 2020 when it wired $209,320.99 to Infinity's 8480 Account.[31]

The 1-I Purchase Order contains a "Date Paid" column that identifies numerous 1-I Accounts as being paid for by Infinity on or before the date of the execution of the 1-I Purchase Order.  For other 1-I Accounts, the "Date Paid" column remains blank.[32]  To address these missing dates of payment, HASelect compiled a spreadsheet for the 1-I Accounts (the "1-I Accounts Spreadsheet")[33], which is sorted by "PaidDate" (the date of payment by Infinity for the associated account) and refers to bates numbered documents included in Exhibit 3 evidencing the corresponding payment and payment date.[34]

As shown by the 1-I Accounts Spreadsheet and related bates numbered documents included in Exhibit 3, Infinity paid for and acquired accounts receivable with a face value of $1,012,044.44 using its own funds and in nearly all cases prior to its receipt of the corresponding purchase price

---

[30] The 1-I Purchase Order was filed in Infinity's chapter 7 case at ECF No. 201-12 and designated as "Exhibit D-9".  A copy of the 1-I Purchase Order is submitted herewith as Exhibit 4.  Tecumseh admits it did not provide the funds associated with the 1-I Accounts to Infinity until October 14, 2020. *See* Tecumseh's Response to Statement of Undisputed Facts [ECF No. 75], ¶ 39, on file herein.

[31] *See* Exhibit 3 at Bates No 0272.

[32] *See id.*

[33] A copy of the 1-I Accounts Spreadsheet is submitted herewith as Exhibit 5.  A copy of all relevant bates numbered documents regarding all evidence of payments at issue in this Motion is submitted herewith as Exhibit 3.

[34] The 1-I Accounts Spreadsheet is a reorganized and simplified version of the original "TIFDumpWithIncome-Final.xlsx" spreadsheet provided by Infinity to identify the Disputed Accounts, which is the same record used to create the spreadsheet identifying the Disputed Accounts on file in Infinity's chapter 7 case at ECF No. 201-1.  Certain information has been redacted from the 1-I Accounts Spreadsheet to protect patient information and remove irrelevant information.  For ease of reference, certain columns have been added to the 1-I Accounts Spreadsheet, which are identified as the "Bates Nos." and "W/O 20%" columns.  The "Bates Nos." column refers to the supporting documents in Exhibit 3 through which the "PaidDate" for each account can be verified.  The figures provided in the "W/O 20%" column are reduced by 20% from the figures in the "BillCost" column to reflect the amounts actually paid by Infinity to the various medical providers through whom the 1-I Accounts were funded.

from Tecumseh on October 14, 2020.[35]

On October 5, 2020, Infinity paid a total of $48,854.77 (via two ACH payments of $3,991.68 and $44,863.09) to ExpressCHEX LLC, d/b/a Buena Vista Medical Services.[36]  The first payment of $3,991.68 corresponds to Infinity's funding of 101 accounts.[37]  Eighty-nine (89) of these accounts are included in the 1-H Accounts on which the Court has already granted summary judgment in favor of HASelect and were funded at a total cost to Infinity of $3,638.18.[38]  The remaining 12 accounts (highlighted in yellow), which have a combined face value of $1,178.34, are included in the 1-I accounts and were funded at a total cost of $353.50.[39]  The second payment of $44,863.09 corresponds to Infinity's funding of 659 accounts.[40]  Six hundred and seventeen (617) of these accounts (highlighted in blue), which have a combined face value of $132,141.10, are included in the 1-I Accounts and were funded at a total cost to Infinity of $39,462.33.[41]  Forty-one (41) of these accounts are included in the 1-J Accounts and were funded at a total cost to Infinity of $5,198.26.[42]  Finally, a single account funded at a cost to Infinity of $22.50[43] [BillID 25941] is included in a later purchase order prepared by Tecumseh in or around December 2020 as part of "Series-1/Intake P (A)".[44]

[35] *See* Tecumseh's Response to Statement of Undisputed Facts [ECF No. 75], ¶ 39, on file herein.

[36] *See* Infinity's Operating Account bank statement for October 30, 2020, Bates No. 259 and included with Exhibit 3 submitted herewith.

[37] *See* Sales Receipt 1091 submitted herewith as Exhibit 8 – paid via ACH1091-020279001679193.

[38] A list of these 89 1-H Accounts is submitted herewith as Exhibit 9.  These 89 1-H accounts are duplicated in Tecumseh's 1-I Purchase Order submitted herewith as Exhibit 4.  These duplicate accounts are not included in the 1-I Accounts Spreadsheet submitted herewith as Exhibit 5 and are not the subject of this Motion.

[39] $3,638.16 + 353.50 = $3,991.68.  The 12 1-I Accounts included in this payment are identified in yellow in the 1-I Accounts Spreadsheet submitted herewith as Exhibit 5.

[40] *See* Sales Receipt 1095 submitted herewith as Exhibit 10 – paid via ACH1095-020279002238078.  Patient names and prescription drug information has been redacted from the list of accounts included with Sales Receipt 1095.  Also, the accounts in this list have been color coded to identify them as part of the 1-I Accounts (blue), the 1-J Accounts (orange), or the "Series-1/Intake P (A)" accounts (purple).

[41] These 617 1-I Accounts included in this payment are identified in blue in the 1-I Accounts Spreadsheet submitted herewith as Exhibit 5.

[42] These 41 1-J Accounts included in this payment are identified in orange in the 1-I Accounts Spreadsheet submitted herewith as Exhibit 5.

[43] $39,462.33 + 5,198.26 + 22.50 = $44,863.09.

[44] See Exhibit 11 submitted herewith.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Similarly, on October 9, 2020, Infinity sent an ACH payment in the amount of $106,200.00 from its Operating Account to Stat Diagnostics. This payment corresponds to Infinity's funding of 97 accounts (highlighted in red) with a total face value of $714,000.00.[45]

On October 15, 2020, Infinity sent another ACH payment in the amount of $24,600.00 from its Operating Account to Stat Diagnostics. This payment corresponds to Infinity's funding of 29 accounts (highlighted in green) with a total face value of $164,725.00.[46] While Tecumseh wired funds for its purchase of the 1-I Accounts to Infinity's 8480 Account on October 14, 2020, Infinity did not use those funds for this payment to Stat Diagnostics. Rather, Infinity used funds from its Operating Account to make this payment while Tecumseh's funds remained in the 8480 Account until at least October 19, 2020 before being transferred to Infinity's Operating Account.[47]

The foregoing plainly demonstrates that the 1-I Accounts identified in the 1-I Accounts Spreadsheet were funded directly by Infinity using its own funds and, with the sole exception of the October 15, 2020 payment to Stat Diagnostics as noted above, prior to the receipt of any corresponding payment from Tecumseh. As such, no resulting trust can exist. HASelect's Motion should be granted with respect to the 1-I Accounts at issue.

   3. *Tecumseh's Subsequent Payment for the 1-J Accounts Precludes the Court from Finding a Resulting Trust in Tecumseh's Favor as a Matter of Law.*

On October 23, 2020, Tecumseh issued a tenth Receivables Purchase Order to Infinity (the "1-J Purchase Order") identifying approximately 125 separate accounts receivable it intended to purchase from Infinity for a total price of $136,063.26, which was comprised of Infinity's costs for the 1-I Accounts of $113,386.06 and a 20% fee to Infinity of $22,677.20.[48] Tecumseh did not send

---

[45] The 97 1-I Accounts included in this payment are identified in pink in the 1-I Accounts Spreadsheet submitted herewith as Exhibit 5. *Compare* 1-I Accounts Spreadsheet submitted herewith as Exhibit 5 *with* Infinity's Operating Account bank statement for October 30, 2020, Bates No. 259 and included with Exhibit 3 submitted herewith.

[46] The 29 1-I Accounts included in this payment are identified in pink in the 1-I Accounts Spreadsheet submitted herewith as Exhibit 5.

[47] *See* Exhibit 3 at Bates No. 274. Of the 1-F, 1-I, and 1-J Accounts at issue in this Motion, this is the only instance in which Infinity received funds from Tecumseh prior to funding the corresponding accounts with the medical provider. Again, however, Infinity did not use the funds received from Tecumseh for this payment to Stat Diagnostics. Rather, Infinity used its own funds from its Operating Account while the funds received from Tecumseh remained in the 8480 Account.

[48] The 1-J Purchase Order was filed in Infinity's chapter 7 case at ECF No. 201-13 and designated as "Exhibit D-10". A copy of the 1-J Purchase Order is submitted herewith as Exhibit 6.

the corresponding payment to Infinity until October 26, 2020 when it wired $136,063.26 to Infinity's 8480 Account.[49]

The 1-J Purchase Order contains a "Date Paid" column that identifies numerous 1-J Accounts as being paid for by Infinity on or before the date of execution of the 1-J Purchase Order. For other 1-J Accounts, the "Date Paid" column remains blank.[50] To address these missing dates of payment, HASelect compiled a spreadsheet for the 1-J Accounts (the "1-J Accounts Spreadsheet")[51], which is sorted by "PaidDate" (the date of payment by Infinity for the associated account) and refers to bates numbered documents included in Exhibit 3 evidencing the corresponding payment and payment date.[52] Beyond the full analysis provided in the 1-J Accounts Spreadsheet, the following examples show that the 1-J Accounts Spreadsheet is accurate and can be used to determine that Infinity funded the 1-J Accounts at issue with its own funds prior to selling and assigning the same to Tecumseh.

For example, on August 18, 2020 Infinity paid to Stat Diagnostics (via Check No. 7655) $1,200 as payment for BillID 25118.[53] This payment was included within a larger batch of purchases,[54] but is confirmed by the 1-J Purchase Order.[55] The next entries on the 1-J Accounts Spreadsheet (highlighted in yellow) are associated with the payment to ExpressCHEX from Infinity's Account on October 5, 2020, which included 1-H Accounts and 1-I Accounts as discussed above.[56]

---

[49] See Tecumseh's Response to Statement of Undisputed Facts, [ECF No. 75], ¶ 41, on file herein.

[50] See id.

[51] A copy of the 1-J Accounts Spreadsheet is submitted herewith as Exhibit 7. A copy of all relevant bates numbered documents regarding all evidence of payments at issue in this Motion is submitted herewith as Exhibit 3.

[52] The 1-J Accounts Spreadsheet is a reorganized and simplified version of the original "TIFDumpWithIncome-Final.xlsx" spreadsheet provided by Infinity to identify the Disputed Accounts, which is the same record used to create the spreadsheet identifying the Disputed Accounts on file in Infinity's chapter 7 case at ECF No. 201-1. Certain information has been redacted from the 1-J Accounts Spreadsheet to protect patient information and remove irrelevant information. For ease of reference, certain columns have been added to the 1-J Accounts Spreadsheet, which are identified as the "Bates Nos." and "W/O 20%" columns. The "Bates Nos." column refers to the supporting documents included in Exhibit 3 through which the "PaidDate" for each account can be verified. The figures provided in the "W/O 20%" column are reduced by 20% from the figures in the "BillCost" column to reflect the amounts actually paid by Infinity to the various medical providers through whom the 1-J Accounts were funded.

[53] See Bates No. 0243 included in Exhibit 3 and submitted herewith.

[54] Id.

[55] See 1-J Purchase Order, p. 9, submitted herewith as Exhibit 6.

[56] See supra Part III (C)(1).

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

On October 6, 2020, Infinity issued Check No. 6701 to Polaris Spine and Surgery Center ("Polaris") in the total amount of $1,188.00,[57] which included a payment for $396.00 associated with BillID 25385. This can be confirmed through the 1-J Purchase Order, which lists a "Date Paid" of October 6, 2020 to Polaris in the amount of $396.00.[58] The next batch of payments on the 1-J Accounts Spreadsheet (highlighted in blue) shows a payment on October 13, 2020 to Topple Diagnostics for BillID 26890 ($550.56), BillID 26903 ($552.20), BillID 22876 ($552.20), and BillID 26882 ($550.56) in the total amount of $2,205.52.[59] Infinity's Operating Account shows a transfer in the exact amount on the exact date.[60]

Infinity's bank records confirm that Infinity sent an ACH transfer on October 13, 2020 in the amount of $1,804.50.[61] This is the exact total of the amounts paid by Infinity for BillID 26889 ($450.45), BillID 26902 ($451.80), BillID 26875 ($451.80), and BillID 26881 ($450.45)[62] to the Phoenix City Spine & Joint Center, LLC as shown in the 1-J Accounts Spreadsheet (highlighted in red) and confirmed through the 1-J Purchase Order issued by Tecumseh on October 23, 2020.[63]

On October 21, 2020, Infinity issued Check No. 6740 as payment for BillID 26682 to the Surgery Center of Roswell in the amount of $19,858.30.[64] This is the exact amount reflected on the 1-J Purchase Order for BillID 26682.[65] On October 21, 2020, Infinity issued Check No. 6741 in the amount of $4,652.00 to the Center for Spine Procedures as payment for BillID 26686 ($1,512.00), BillID 26692 ($1,570.00), and BillID 26693 ($1,570.00) as shown on the 1-J Accounts Spreadsheet

---

[57] *See* Bates Nos. 0173 included in Exhibit 3 submitted herewith.

[58] *See* 1-J Purchase Order, p. 6, submitted herewith as Exhibit 6.

[59] $550.56 + $552.20 + $552.20 + $550.56 = $2,205.52.

[60] *See* Bates No. 0259 included in Exhibit 3 submitted herewith.

[61] *See* Bates No. 0259 included in Exhibit 3 and submitted herewith. $450.45 + $451.80 + $451.80 + $450.45 = $1,804.50

[62] $450.45 + $451.80 + $451.80 + $450.45 = $1,804.50

[63] *Compare id. with* BillIDs 26889, 26902, 26875, and 26881on 1-J Purchase Order, pp. 4-5; *see also* 1-J Accounts Spreadsheet submitted herewith as Exhibit 7.

[64] *See* Bates No. 0231 included in Exhibit 3 and submitted herewith.

[65] *Compare id. with* BillID 26682 on 1-J Purchase Order, p. 6; *see also* 1-J Accounts Spreadsheet submitted herewith as Exhibit 7.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1 (highlighted in green).[66]  Again, these are the exact amounts reflected on the 1-J Purchase Order.[67]

2        This analysis can be performed with respect to each entry or batches of entries on the 1-J

3 Accounts Spreadsheet and plainly demonstrates that all of the 1-J Accounts identified in the 1-J

4 Accounts Spreadsheet were funded directly by Infinity using its own funds prior to the receipt of

5 any corresponding payment from Tecumseh.  As such, no resulting trust can exist.  HASelect's

6 Motion should be granted with respect to the 1-J Accounts identified in the 1-J Accounts Spreadsheet

7 attached hereto.

8 ///

9 ///

10 ///

11 ///

12 ///

13 ///

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26

27 [66] *See* Bates No. 0234 included with Exhibit 3 and submitted herewith.

28 [67] *Compare id. with* BillIDs 26686, 26692 and 26693 on 1-J Purchase Order, p. 5; *see also* 1-J Accounts Spreadsheet submitted herewith as Exhibit 7.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

## V.    **CONCLUSION**

Based on the foregoing, HASelect respectfully requests that this Court enter an order (i) granting partial summary judgment in its favor, (ii) determining that HASelect's perfected security interest in the 1-F Accounts, 1-I Accounts, and 1-J Accounts at issue herein is superior to any interest held by Tecumseh in the same accounts, (iii) determining that HASelect's position as a "lien creditor" under 11 U.S.C. § 544(a) is superior to any interest held by Tecumseh in the 1-F Accounts, 1-I Accounts, and 1-J Accounts at issue herein, (iv) determining that any interest held by Tecumseh in the 1-F Accounts, 1-I Accounts, and 1-J Accounts at issue herein is avoided pursuant to 11 U.S.C. § 544(a), (v) determining that HASelect is entitled to immediate ownership and possession of the 1-F Accounts, 1-I Accounts, and 1-J Accounts at issue herein as well as all proceeds thereof, and (vi) compelling Tecumseh to immediately surrender and turn over to HASelect all of the 1-F Accounts, 1-I Accounts, and 1-J Accounts at issue herein as well as all proceeds thereof pursuant to 11 U.S.C. § 550(a).

Dated this 13th day of January 2023.

<div style="margin-left:40%">

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
BART K. LARSEN, ESQ.
Nevada Bar No. 8538
KYLE M. WYANT, ESQ.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for HASelect-Medical Receivable*
*Litigation Finance Fund International SP*

</div>

**CERTIFICATE OF SERVICE**

1. On January 13, 2023, I served the following document(s): **PLAINTIFF HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN 1-F, 1-I, AND 1-J ACCOUNTS**

2. I served the above document(s) by the following means to the persons as listed below:

   ☒   a.   ECF System:

   CLARISSE L. CRISOSTOMO on behalf of ROBERT E. ATKINSON
   clarisse@nv-lawfirm.com, bknotices@nv-lawfirm.com

   GERALD M GORDON on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   ggordon@gtg.legal, bknotices@gtg.legal

   GABRIELLE A. HAMM on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   ghamm@Gtg.legal, bknotices@gtg.legal

   MICHAEL D. NAPOLI on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   michael.napoli@akerman.com,
   cindy.ferguson@akerman.com;catherine.kretzschmar@akerman.com;laura.taveras@akerman.com;masterdocketlit@akerman.com;teresa.barrera@akerman.com

   ARIEL E. STERN on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
   ariel.stern@akerman.com, akermanlas@akerman.com

   ☐   b.   United States mail, postage fully prepaid:

   ☐   c.   Personal Service:

   I personally delivered the document(s) to the persons at these addresses:

   ☐   For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

   ☐   For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

   ☐   d.   By direct email (as opposed to through the ECF System):
   Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

   ☐   e.   By fax transmission:

   Based upon the written agreement of the parties to accept service by fax transmission or a

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐    f.    By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 13, 2023.

By: /s/ *Bart K. Larsen, Esq,*