GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtg.legal
JARED SECHRIST
Nevada Bar No. 10439
E-mail: jsechrist@gtg.legal
7251 Amigo St., Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000 / Fax: (725) 777-3112
*Attorneys for Tecumseh–Infinity Medical
Receivable Fund, LP*

MICHAEL D. NAPOLI, ESQ.
*Pro hac vice*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel: (214) 720-4360 / Fax: (214) 720-8116

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Tel: (702) 634-5000 / Fax: (702) 380-8572
Email: ariel.stern@akerman.com

*Attorneys for Tecumseh–Infinity Medical
Receivable Fund, LP*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>INFINITY CAPITAL MANAGEMENT, INC.,<br><br>                   Debtor. | Case No. 21-14486-abl<br><br>Chapter 7 |
| HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br><br>                Plaintiff,<br><br>v.<br><br>TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>                Defendant. | Adversary Case No. 21-01167-abl<br><br>**TECUMSEH-INFINITY MEDICAL RECEIVABLE FUNDS, LP'S STATEMENT OF DISPUTED FACTS IN SUPPORT OF OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN 1-F, 1-I, AND 1-J ACCOUNTS** |
| TECUMSEH–INFINITY MEDICAL RECEIVABLES FUND, LP,<br><br>              Counter-Claimant,<br><br>v.<br><br>HASELECT-MEDICAL RECEIVABLES LITIGATION FINANCE FUND INTERNATIONAL SP,<br><br>             Counter-Defendants. | Hearing Date: March 30, 2023<br>Time:    9:30 a.m. |

HASELECT-MEDICAL RECEIVABLES
LITIGATION FINANCE FUND
INTERNATIONAL SP,

      Counter-Claimant,

v.

TECUMSEH–INFINITY MEDICAL
RECEIVABLES FUND, LP,

      Counter-Defendant.

    Pursuant to LR 7056, Defendant and Counterclaimant Tecumseh–Infinity Medical Receivable Fund, LP ("**Tecumseh**") respectfully submits this following *Statement Of Disputed Facts* in support of its opposition (the "**Opposition**") to the *Motion for Partial Summary Judgment as to Certain 1-F, 1-I, and 1-J Accounts* [ECF No. 170] of Plaintiff *HASelect-Medical Receivables Litigation Finance Fund International LP* ("**HASelect**").

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Beginning in February 2019, HASelect made a series of loans to Infinity that were documented through various written loan agreements and promissory notes through which Infinity pledged substantially all of its personal property, including accounts receivable, to HASelect as collateral for such loans.<br><br>*See* Declaration of Michael Griffin (the "Griffin Declaration") at ¶ 5 [ECF No. 54[1]]. | **Disputed.**<br><br>Section 4.1 of the Second Amended & Restated Loan & Security Agreement ("Loan Agreement") is not the controlling definition of "Collateral" in the lender/borrower relationship between HASelect and the Debtor. Rather, paragraph 16 of the executed *Form of Promissory Note* ("Note") which states a materially different, and far narrower, definition of "Collateral", controls.<br><br>The Note and Loan Agreement are attached as Exhibit 1 to the Griffin Declaration [ECF Nos. 54 and 57-1]. *See* Sections 2, 4.1 and 9.4 of the Loan Agreement and Section 16 of the Note. |

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 2. | HASelect perfected its security interest in all of Infinity's personal property through the filing of a UCC-1 with the Nevada Secretary of State on February 19, 2019.<br><br>*See id.* at ¶ 6; *see also* UCC-1 filing [ECF No. 57-2]. | **Disputed.**<br><br><br><br>*Id.* |
| 3. | On or about December 18, 2019, HASelect, which was then doing business under the name HASelect-FTM Medical Receivables Litigation Finance Fund SP, and Infinity entered into a Second Amended & Restated Loan and Security Agreement and Promissory Note (together with all prior and related loan documents, the "MLA"), which amended and superseded all prior written loan agreements and promissory notes entered into between HASelect and Infinity.<br><br>*See* Griffin Declaration, ¶ 7 [ECF No. 54]; *see also* MLA [ECF No. 57-1]. | **Admitted.** |
| 4. | HASelect holds a perfected security interest in substantially all of Infinity's personal property (as defined in § 4.1 of the MLA, the "Collateral").<br><br>*See* MLA at § 4.1 [ECF No. 57-1]. | **Disputed.**<br><br>Section 16 of the Note defines "Collateral" narrowly—it does not include any assets beyond HASelect's "Receivables" and "Claims" as those terms are specifically defined in the Loan Agreement.<br><br>The Note and Loan Agreement are attached as Exhibit 1 to the Griffin Declaration [ECF Nos. 54 and 57-1]. *See* Sections 2, 4.1 and 9.4 of the Loan Agreement and Section 16 of the Note. |
| 5. | Pursuant to the MLA, Infinity agreed to use the loan proceeds it received from HASelect to purchase accounts receivable from medical providers.<br><br>*See* MLA at § 3.2 [ECF No. 57-1]. | **Admitted.** |

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 6. | Such accounts receivable generally arose from medical treatment or prescription medication provided to individuals who were injured in accidents and had asserted personal injury claims against third parties. These accounts receivable are secured by liens against these personal injury claims and are typically paid at the time the personal injury claims are settled. *See* Griffin Declaration, ¶ 11 [ECF No. 54]. | **Admitted.** |
| 7. | Infinity purchased these accounts receivable pursuant to contracts it entered into directly with various medical providers. *See* Infinity's Amended Schedule G filed in Infinity's chapter 7 case at ECF No. 91; s*ee also* Excerpts from Transcript of November 10, 2021 Rule 2004 Examination of Oliver Hemmers (the "Hemmers Transcript"), pp. 64-65 [ECF No. 57-3]. | **Admitted.** |
| 8. | In addition to the contracts Infinity entered into with the sellers of the accounts receivable, Infinity also received direct assignments of the individual personal injury claimants' rights to recovery. *See* Excerpts from Transcript of November 9, 2021 Rule 2004 Examination of Anne Pantelas (the "Pantelas Transcript"), pp. 66-67 [ECF No. 57-4]. | **Admitted.** |

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 9. | To ensure that HASelect received a perfected, first-priority security interest in all accounts receivable purchased by Infinity (as well as all other Collateral), HASelect required that Infinity use part of loan proceeds advanced by HASelect to repay and retire a prior secured debt owed to Law Finance Group, LLC, which had similarly advanced funds to Infinity for the purchase of accounts receivable.<br><br>*See* Pantelas Transcript, pp. 82-83 [ECF No. 57-4]. | **Disputed as to the existence of an all asset lien.**<br><br>The Note and Loan Agreement are attached as Exhibit 1 to the Griffin Declaration [ECF Nos. 54 and 57-1]. *See* Sections 2, 4.1 and 9.4 of the Loan Agreement and Section 16 of the Note. |
| 10. | HASelect also required that Infinity apply an electronic stamp to certain documents associated with its accounts receivable to identify the accounts receivable as HASelect's Collateral.<br><br>*See* Hemmers Transcript, pp. 108-110 [ECF No. 57-3]; Exhibit 18 to Hemmers Transcript (February 26, 2019 email chain discussing electronic stamping of documents as HASelect collateral). | **Admitted.** |
| 11. | From February 2019 through April 2020, HASelect advanced loan proceeds totaling approximately $13.7 million to Infinity, which was obligated under the MLA to use such proceeds to purchase accounts receivable.<br><br>*See* Griffin Declaration, ¶ 13 [ECF No. 54]. | **Admitted.** |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 12. | On or about June 18, 2020, Infinity and Tecumseh entered into a Sub-Advisory Agreement (the "Sub-Advisory Agreement") under which Infinity agreed, among other things, to "assist [Tecumseh] in acquiring an interest in medical receivables in connection with personal injury cases" in exchange for which Tecumseh agreed to pay Infinity a 20% fee at the time of acquisition as well as 15% of the net profit earned on each such account receivable at the time of collection.<br><br>*See* Sub-Advisory Agreement [ECF No. 57-5], at Exhibit A, § 1(a) and Exhibit B §§ (a)-(b). | **HASelect misquotes and misstates the Sub-Advisory Agreement.**<br><br>The Sub-Advisory Agreement provided that the Debtor would (i) assist Tecumseh in acquiring medical receivables [¶ 1(a)]; (ii) identify receivables for purchase by Tecumseh [¶ 3(a)]; (iii) negotiate the purchase [¶ 1(b), ¶ 3(b)]; (iii) arrange for Tecumseh to secure a lien or equivalent security against plaintiff's recovery [¶ 1(c)]; and (iv) arrange for documentation to "evidence the sale of the Receivable to the Company by the Medical Service Provider." [¶ 3(d)]. The purpose was to arrange a purchase by Tecumseh "directly from the Medical Service Provider." Sub-Advisory Agreement at ¶ 3(b).<br><br>*See* April 28, 2022 Belotz Declaration [ECF No. 76] ("Belotz Decl.") at ¶ 7 filed in support of Tecumseh's *Opposition to Motion for Partial Summary Judgment as to Certain Disputed Receivables* [ECF No. 74] and Sub-Advisory Agreement, attached as Exhibit A to Tecumseh's April 29, 2022 Statement of Disputed Facts [ECF No. 75] (the "April 29, 2022 Tecumseh Statement of Disputed Facts"); *See also* Transcript of 2004 Examination of Oliver Hemmers ("Hemmers Trans.") Vol. II, attached as Exhibit N to the April 29, 2022 Tecumseh Statement of Disputed Facts, at 185:15-20 (testifying that the purpose of the Sub-Advisory Agreement was to facilitate a sale between the medical service providers and Tecumseh). |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 13. | Upon signing the Sub-Advisory Agreement, Infinity began preparing to transfer accounts receivable in which HASelect held a perfected, first-priority security interest to Tecumseh by, among other things, removing the electronic stamps that identified such accounts receivable as HASelect's Collateral.<br><br>*See* Hemmers Transcript, pp. 61, 110-112 [ECF No. 57-3]; Exhibit 25 to Hemmers Transcript (June 23, 2020 emails from Oliver Hemmers to Endre Debozy confirming removal of electronic stamps). | **Disputed.**<br><br>Section 16 of the Note defines "Collateral" narrowly—it does not include any assets beyond HASelect's "Receivables" and "Claims" as those terms are specifically defined in the Loan Agreement. *See* Sections 2, 4.1 and 9.4 of the Loan Agreement and Section 16 of the Note.<br><br>Moreover, Tecumseh purchased new receivables directly from medical providers. The Debtor acquired no interest in the receivables; but merely serviced them. The funds paid to purchase the receivables did not come from the Debtor, but from Tecumseh. *See* Exhibit A (Sub-Advisory Agreement) at Exh A., ¶ 3; Hemmer Trans. Vol. II (Exhibit N) at 185:21-186:2, 186:9-17; Belotz Decl. at ¶¶ 7-17, 18, 25 (describing process by which Tecumseh used the Debtor as a broker to purchase receivables). |

**Garman Turner Gordon LLP**
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 14. | Infinity then began selling accounts receivable in which HASelect held a perfected, first-priority security interest to Tecumseh without HASelect's knowledge or consent and in violation of Infinity's contractual obligations under the MLA.<br><br>*See* Hemmers Transcript, pp. 110-114 [ECF No. 57-3] ("Q: And it may have not been clear earlier, but I believe I asked you if any accounts in which HASelect held a security interest were sold to any other party, and I thought you had told me no. So just -- A: Under the blanket UCC[?] Q: Yes, under the blanket UCC. A: Yeah. In that case the Tecumseh receivables were the only ones that fall in that category."); *see also* Griffin Declaration, ¶ 15 [ECF No. 54]. | **Disputed.**<br><br>Tecumseh  purchased new receivables directly from medical providers. The Debtor acquired no interest in the receivables; but merely serviced them. The funds paid to purchase the receivables did not come from the Debtor, but from Tecumseh.<br><br>*See* Sub-Advisory Agreement (Exhibit A) at Exh A., ¶ 3; Hemmer Trans. Vol. II (Exhibit N) at 185:21-186:2; 186:9-17; Belotz Decl. at ¶¶ 7-17, 25 (describing process by which Tecumseh used the Debtor as a broker to purchase receivables). *See also* Hemmers Trans. Vol II (Exhibit N) at 200:3-17 (testifying that he believed that HASelect was aware of the June 2020 sale) and 195:24-198:7 (testifying that HASelect had knowledge of the business relationship between the Debtor and Tecumseh and authorized the payments to Tecumseh from funds received by the Debtor); Belotz Decl. at ¶ 19 (testifying that Hemmers informed Tecumseh that HASelect had consented to the sale so that it could be paid the $294,000 that Tecumseh was paying for the receivables in partial repayment of HASelect's loan.).<br><br>Further discovery is necessary to fully respond. In particular, recent supplemental production from HASelect must be reviewed and the following persons need to be deposed: Oliver Hemmer, Anne Pantelas, |

Garman Turner Gordon LLP<br>7251 Amigo Street, Ste. 210<br>Las Vegas, Nevada 89119<br>(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 15. | Tecumseh has admitted that it "purchased the remaining Tecumseh Receivables from the Debtor. Attached as Exhibits D-1 to D-11 are purchase orders reflecting the purchase of [the] Tecumseh Receivables from the Debtor."<br><br>Chad Meyer Declaration on file in Infinity's chapter 7 case, ¶ 11 [ECF No. 54]. | **Disputed.**<br><br>Prior to the establishment of Tecumseh's Bank of America Account the Debtor periodically (roughly every two weeks) provided Tecumseh with a list of receivables from various medical providers that the Debtor recommended that Tecumseh purchase. *See* April 28, 2022 Belotz Decl. at ¶ 13; see also Exhs. B-K to the April 29, 2022 Tecumseh Statement of Disputed Facts.<br><br>Each list identified a set of receivables that the Debtor planned to purchase on Tecumseh's behalf. For each receivable, the Debtor provided the patient's name, the patient's lawyer's name, the provider, a unique Bill ID number, the face amount, the estimated purchase price and an estimated total cost including the Debtor's fee. Belotz Decl. at ¶ 14.<br><br>Once Tecumseh approved a list, the Debtor generated a purchase order which Tecumseh paid. The Debtor then used the money to purchase receivables on Tecumseh's behalf.  Belotz Decl. at ¶ 15.<br><br>While funds may have flowed from Tecumseh through the Debtor to the medical provider, the Debtor never acquired an interest in the 1-F Accounts, 1-I Accounts, and 1-J Accounts. Hemmer Tr. Vol. II at 186:12-17. |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| 16. | | On March 22, 2022, HASelect filed a *Motion for Partial Summary Judgment* [ECF No. 53] (the "Prior Motion") as to certain of the accounts in dispute in this adversary proceeding, which the Court later granted in part and denied part. *See* ECF No. 88. | **Admitted.** |
| 17. | | The Court previously found that, as to the 1-A through 1-E, the 1-G, and 1-H Accounts (as defined in the Prior Motion), Tecumseh purchased these accounts from Infinity following Infinity's acquisition of the same, and Tecumseh was identified as the "Seller" on the Assignments and Bills of Sale relating to each of these batches and that Infinity was to "assign," "sell," and "transfer" to Tecumseh the accounts at issue. *See* ECF No. 88; *see also* Assignments and Bills of Sale associated with the 1-A through 1-E, the 1-G, and the 1-H Accounts filed at ECF Nos. 57-8, 57-10, 57-13, 57-16, 57-19, 57-23, and 57-25, respectively. | **HASelect misquotes and misstates the Assignments and Bills of Sale.** It provides, in relevant part, that the Debtor as Seller "purchased certain accounts receivables on behalf of Tecumseh and in reliance upon Tecumseh providing assurance it would purchase said Accounts Receivables" from the Debtor. *See* ECF No. 88; *see also* Assignments and Bills of Sale associated with the 1-A through 1-E, the 1-G, and the 1-H Accounts filed at ECF Nos. 57-8, 57-10, 57-13, 57-16, 57-19, 57-23, and 57-25, respectively. |
| 18. | | In ruling on the Prior Motion, the Court found that there was no reference to any trust relationship between Tecumseh and Infinity in any of the relevant documents at issue in the Prior Motion. *See* ECF No. 88. | **Admitted.** |

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 19. | Infinity has never identified any property held in trust for any other person, including Tecumseh, in any of its bankruptcy schedules or its statement of financial affairs.<br><br>*See generally* the Docket for Infinity's Chapter 7 Bankruptcy Case, Case No. 21-14486-abl and the bankruptcy schedules and statement of financial affairs on file therein [ECF Nos. 41, 47, 91, 108, and 112]. | **Admitted.** |
| 20. | In ruling on the Prior Motion, the Court found that Tecumseh did not file any UCC-1 financing statements to perfect any interest it claimed in any of the purchased Sold Accounts.<br><br>*See* ECF No. 88. | **Admitted.** |
| 21. | The Court granted HASelect's Prior Motion and found that HASelect's perfected security interest in the 1-A through 1-E Accounts, the 1-G Accounts, and 1-H Accounts was superior to any interest claimed by Tecumseh. The Court also found that HASelect's position as a "lien creditor" under 11 U.S.C. § 544(a) with respect to said accounts was superior to any interest claimed by Tecumseh, any interest held by Tecumseh in said accounts was avoided pursuant to 11 U.S.C. § 544(a), and that HASelect was entitled to immediate ownership and possession of the 1-A through 1-E, the 1-G, and 1-H Accounts and all proceeds thereof. However, the Court denied HASelect's Prior Motion as to the 1-F Accounts, the 1-I Accounts, and the 1-J Accounts based on insufficient evidence.<br><br>*See* ECF No. 88. | **Admitted in part, and disputed in part**.<br><br>The Court granted HASelect's Prior Motion for Partial Summary Judgement as to 1-A through 1-E, the 1-G, and 1-H Accounts because of the existence of the bill of sale. The Court denied the Motion for Partial Summary Judgement as to the 1-F, 1-I and 1-J Accounts because of the absence of bills of sale. *See* ECF No. 88.<br><br>The Court erred in granting the Motion because neither the parties nor the Court realized and considered that Section 16 of the Note defines "Collateral" narrowly—it does not include any assets beyond HASelect's "Receivables" and "Claims" as those terms are specifically defined in the Loan Agreement.<br><br>There was no executed bill of sale agreement entered into by and between the Debtor and Tecumseh for the 1-I Receivables. Meyers Del. ¶ 9. |

| | | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | 22. | On September 23, 2021, Infinity produced to counsel for Tecumseh and to chapter 7 trustee Robert Atkinson (the "Trustee") an Excel spreadsheet file named "TIFDumpWithIncome-Final.xlsx" that included a list of the Disputed Accounts (also referred to in other filings as the "Tecumseh Receivables"). The "TIFDumpWithIncome-Final.xlsx" includes the information found in the list of Disputed Accounts filed by Tecumseh in Infinity's chapter 7 case at ECF No. 201-1 along with several categories of protected information and other information that is not included in ECF No. 201-1 as filed.<br><br>*See* List of Disputed Accounts on file in Infinity's chapter 7 case at ECF No. 201; *see also* Exhibit 12 submitted herewith. | **Admitted.** |
| | 23. | On September 24, 2021, Infinity produced to counsel for Tecumseh and HASelect and to the Trustee an Excel spreadsheet file named "HASOverlapDumpWithIncome.xlsx" that included a partial list of the Disputed Accounts (also referred to in other filings as the "Tecumseh Receivables"). The "HASOverlapDumpWithIncome-9-24-2021.xlsx" includes the information found in the list of Disputed Accounts filed by Tecumseh in Infinity's chapter 7 case at ECF No. 201-2 along with several categories of protected information and other information that is not included in ECF No. 201-2 as filed. The information in the "HASOverlapDumpWithIncome-9-24-2021.xlsx" file pertaining to the Disputed Accounts is also included in the "TIFDumpWithIncome-Final.xlsx" file.<br><br>*See* List of Disputed Accounts on file in Infinity's chapter 7 case at ECF No. 201; *see also* Exhibit 13 submitted herewith. | **Admitted.** |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 24. | On September 22, 2020, Tecumseh issued its sixth Receivables Purchase Order to Infinity (the "1-F Purchase Order") identifying approximately's 332 separate accounts receivable (the "1-F Accounts") Tecumseh sought to purchase from Infinity for a total price of $481,023.10, which was comprised of Infinity's costs for the 1-F Accounts of $400,852.58 and a 20% fee to Infinity of $80,170.52.<br><br>*See* 1-F Purchase Order submitted herewith as Exhibit 1 and also on file in Infinity's chapter 7 case at ECF No. 201-9. | **Tecumseh admits that it received the 1-F Purchase Order but denies that the transaction was a purchase from the Debtor.**<br><br>Prior to the establishment of Tecumseh's Bank of America Account the Debtor periodically (roughly every two weeks) provided Tecumseh with a list of receivables from various medical providers that the Debtor recommended that Tecumseh purchase. *See* April 28, 2022 Belotz Decl. at ¶ 13; see also Exhs. B-K to the April 29, 2022 Tecumseh Statement of Disputed Facts.<br><br>Each list identified a set of receivables that the Debtor planned to purchase on Tecumseh's behalf. For each receivable, the Debtor provided the patient's name, the patient's lawyer's name, the provider, a unique Bill ID number, the face amount, the estimated purchase price and an estimated total cost including the Debtor's fee. Belotz Decl. at ¶ 14.<br><br>Once Tecumseh approved a list, the Debtor generated a purchase order which Tecumseh paid. The Debtor then used the money to purchase receivables on Tecumseh's behalf. Belotz Decl. at ¶ 15.<br><br>While funds may have flowed from Tecumseh through the Debtor to the medical provider, the Debtor never acquired an interest in the 1-F Accounts. Hemmer Tr. Vol. II at 186:12-17. |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 25. | Tecumseh did not send the payment corresponding to the 1-F Purchase Order to Infinity until September 25, 2020 when it wired $481,023.10 to Infinity's Nevada State Bank account ending in 8480 (the "8480 Account"). *See* September 30, 2020 monthly statement for the 8480 Account include in Exhibit 3 submitted herewith at Bates No. 268; *see also* Tecumseh's Response to Statement of Undisputed Facts associated with the Prior Motion at, ¶ 31 [ECF No. 75]. | **Admitted.** Tecumseh wired funds in that amount to the Debtor for the purpose of the Debtor acquiring the 1-F Accounts on Tecumseh's behalf. Belotz Decl. at ¶¶12, 15; Hemmer Trans. Vol. II (Exhibit N) at 185:21-186:2. |

| 26. | The 1-F Accounts identified in the 1-F Accounts Spreadsheet submitted herewith as <u>Exhibit 2</u> were all purchased by Infinity and paid for by Infinity prior to September 25, 2020.<br><br>*See* <u>Exhibit 1</u>; <u>Exhibit 2</u>; <u>Exhibit 3</u> at Bates Nos. 0001, 0004, 0007, 0010, 0013, 0016, 0019, 0022, 0025, 0028, 0039, 0042, 0045, 0047, 0050, 0053, 0056, 0059, 0062, 0065, 0068, 0071, 0074, 0077, 0080, 0083, 0086, 0089, 0092, 0095, 0098, 0101, 0104, 0110, 0113, 0116, 0119, 0122, 0125, 0128, 0131, 0244, 0248, 0252, 0256, and 0265; s*ee also* Hemmers Transcript, pp. 38-39 [ECF No. 57-3] (Q: "... the Paid Date shown here in column DV, does that represent the date on which Infinity acquired the receivable?" A: "Yeah, that's the date, yeah."). | **Disputed.**<br><br>First, the "Date Paid Column" is not a reliable indicator of when the Debtor paid for the receivables at issue. Belotz Decl. at ¶ ¶14, 22-24.<br><br>Second, Exhibit 2 and its supporting documents in Exhibit 3, establish only that, at some date and time, the Debtor issued such checks with such dates. HASelect omits any information pertaining to when the checks might have been transmitted to the medical providers, and, more to the point, when such checks were deposited and subsequently honored by Nevada State Bank.  Meyers Del. at ¶ 8.<br><br>Third, Tecumseh has prepared its own 1-F Tecumseh Accounts Spreadsheets. *See* Meyers Del. at ¶ 8 and Exhibit A attached hereto and incorporated herein. Rather than merely reflecting the date respective checks were issued by the Debtor, Exhibit A denotes the date such payments were actually honored by Nevada State Bank—evidence far more indicative of when such transfers actually occurred. *Id.* at ¶ 8 see also Composite Exhibit D attached hereto and incorporated herein (Nevada State Bank account statements for the Debtor's 8480 Account).<br><br>There are 332 separate 1-F Accounts. Meyers Del. at ¶ 8 and Exhibit A. HASelect moved for summary judgement only as to 239 of the 1-F Accounts. *Id.*  In other words, there are at least 93 of the 332 1-F Accounts that HASelect acknowledges Tecumseh funded. *Id.* Of the remaining 239 1-F Accounts subject to HASelect's Motion, payment for at least 84 receivables were made by checks that were honored by the Nevada State Bank on or after September 25, 2020, the date of |

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Tecumseh's wire. Meyers Del. at ¶ 8 and Exhibit A.  Specifically, Check Nos. 7635, 7638, 7639, 7640, 7641, 7642, 7643, 7644, 7647, 7648, 7651, 7652, and 7663, were all honored on or after September 25, 2020. Meyer Decl. at ¶ 8.; *See also* Composite Exhibit D, Bates 15 and 19.  Therefore, payment occurred for at least 170 of the total 332 1-F Accounts on or after Tecumseh's September 25, 2020 wire. *Id.* |
| 27. | On July 21, 2020, Infinity paid $240.00 to Dr. Kevin Hicks, D.O. as confirmed by Infinity's American Express billing statement, which shows a $240.00 payment on July 21, 2020 to Family Practice of Peachtree where a Dr. Hicks practices.<br><br>*Compare* 1-F Accounts Spreadsheet, submitted herewith as Exhibit 2, *with* American Express billing statement, contained in Exhibit 3 submitted herewith at Bates No. 265. | **Admitted.** |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

16

68781828;1

| | | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| 28. | | On July 23, 2020, Infinity issued Check No. 7608 from its operating account at Nevada State Bank ending in 6375 (the "Operating Account") to Safeway Psychological Services for the purchase of accounts receivable in the amounts of $844.00, $436.00, $328.00, and $328.00 (among others). These payments relate to BillIDs 23977, 23978, 24379, and 24443.<br><br>*Compare* 1-F Purchase Order for said BillIDs, pp. 3-4, submitted herewith as Exhibit 1 *with* 1-F Accounts Spreadsheet, submitted herewith as Exhibit 2 *with* Bates No. 39 contained in Exhibit 3 submitted herewith. | **Admitted that Check No. 7608 is dated July 23, 2020 and was made payable to Safeway Psychological Services.  There is no evidence, however, that check was delivered or honored on July 23, 2020.** |
| 29. | | On July 23, 2020, Infinity issued Check No. 7629 from its Operating Account to the Center for Spine Procedure, which included the purchase of a receivable for $8,048.00. This payment relates to BillID 23992.<br><br>*Compare* 1-F Purchase Order, p. 12 for said BillID, submitted herewith as Exhibit 1 *with* 1-F Accounts Spreadsheet, submitted herewith as Exhibit 2 *with* Bates No. 42 contained in Exhibit 3 submitted herewith. | **Admitted that Check No. 7629 is dated July 23, 2020 and was made payable to Center for Spine Procedure.  There is no evidence, however, that check was delivered or honored on July 23, 2020.** |

| | | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| 30. | | On August 13, 2020, Infinity issued Check No. 7652 from its Operating Account to Perimeter Orthopedics PC, which was for the purchase of accounts receivable in the amounts of $1,240.35, $738.30, and $40.36 (among others). These payments relate to BillIDs 24566, 24567, and 24571.<br><br>*Compare* 1-F Purchase Order, p. 3-4 for said BillIDs, submitted herewith as <u>Exhibit 1</u> *with* 1-F Accounts Spreadsheet, submitted herewith as <u>Exhibit 2</u> *with* Bates No. 0074 contained in <u>Exhibit 3</u> submitted herewith. | **Admitted that Check No. 7652 is dated August 13, 2020 and was made payable to Perimeter Orthopedics PC. There is no evidence, however, that check was delivered or honored on August 13, 2020. Instead, bank account statements evidence that the check was honored by the Nevada State Bank no earlier than September 25, 2020.**<br><br>*See* Composite Exhibit D, 015. |
| 31. | | BillID 24564 was paid by Infinity on July 30, 2020 by Check No. 7630 in the amount of $45,200 to Northside Hospital. On September 9, 2020, Northside Hospital refunded $7,390.20 of this amount to Infinity, which reduced amount paid by Infinity for BillID 24564 to $37,809.80. The 1-F Purchase Order confirms that the "Purchase Price" for BillID 24564 was $37,809.80.<br><br>*See* <u>Exhibit 3</u> at Bates No. 0045. *Compare* 1-F Purchase Order, BillID 24564, submitted herewith as <u>Exhibit 1</u> *with* Check No 7630, Bates No. 0039 contained in <u>Exhibit 3</u> submitted herewith. | **Admitted that Check No. 7630 is dated July 30, 2020 and was made payable to Northside Hospital.  There is no evidence, however, that check was delivered or honored on July 30, 2020.** |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

18

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 32. | Infinity paid $6,380.50 to South Atlanta MUA Center on July 30, 2020 via a wire transfer from Infinity's Operating Account as payment for BillID 24515. *Compare* 1-F Purchase Order, BillID 24515, submitted herewith as <u>Exhibit 1</u> *with* 1-F Accounts Spreadsheet, submitted herewith as <u>Exhibit 2</u> *with* Bank Statements included with <u>Exhibit 3</u>, Bates No. 0248. | **Admitted.** |
| 33. | Infinity paid $10,230.00 to South Atlanta MUA Center via wire transfer on August 10, 2020 as payment for BillID 24613. *Compare* 1-F Purchase Order, p. 4, submitted herewith as <u>Exhibit 1</u> *with* 1-F Accounts Spreadsheet entries associated with BillID 24613; *see also* <u>Exhibit 3</u>, Bates No. 0252. | **Admitted.** |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 34. | On October 12, 2020, Tecumseh issued a ninth Receivables Purchase Order to Infinity (the "1-I Purchase Order") identifying approximately 718 separate accounts receivable (the "1-I Accounts") it sought to purchase from Infinity for a total price of $209,320.99, which was comprised of Infinity's costs for the 1-I Accounts of $174,434.16 and a 20% fee to Infinity of $34,886.83.<br><br>*See* the 1-I Purchase Order submitted herewith as <u>Exhibit 4</u> and on file in Infinity's chapter 7 case at ECF No. 201-12. | **Tecumseh admits that it received the 1-I Purchase Order but denies that the transaction was a purchase from the Debtor.**<br><br>Prior to the establishment of Tecumseh's Bank of America Account the Debtor periodically (roughly every two weeks) provided Tecumseh with a list of receivables from various medical providers that the Debtor recommended that Tecumseh purchase. *See* April 28, 2022 Belotz Decl. at ¶ 13; see also Exhs. B-K to the April 29, 2022 Tecumseh Statement of Disputed Facts.<br><br>Each list identified a set of receivables that the Debtor planned to purchase on Tecumseh's behalf. For each receivable, the Debtor provided the patient's name, the patient's lawyer's name, the provider, a unique Bill ID number, the face amount, the estimated purchase price and an estimated total cost including the Debtor's fee. Belotz Decl. at ¶ 14.<br><br>Once Tecumseh approved a list, the Debtor generated a purchase order which Tecumseh paid. The Debtor then used the money to purchase receivables on Tecumseh's behalf.  Belotz Decl. at ¶ 15.<br><br>While funds may have flowed from Tecumseh through the Debtor to the medical provider, the Debtor never acquired an interest in the 1-I Accounts. Hemmer Tr. Vol. II at 186:12-17. |

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 35. | Tecumseh did not send the payment corresponding to the 1-I Purchase Order to Infinity until October 14, 2020, when it wired $209,320.99 to Infinity's 8480 Account.<br><br>*See* <u>Exhibit 3</u> at Bates No. 0272; *see also* Tecumseh's Response to Statement of Undisputed Facts to Prior Motion, ¶ 39 [ECF No. 75]. | **Admitted.**<br><br>Tecumseh wired funds in that amount to the Debtor for the purpose of the Debtor acquiring the 1-I Accounts on Tecumseh's behalf. Belotz Decl. at ¶¶12, 15; Hemmer Trans. Vol. II (Exhibit N) at 185:21-186:2. |

| 36. | The 1-I Accounts identified in the 1-I Accounts Spreadsheet submitted herewith as <u>Exhibit 5</u> were all purchased by Infinity and paid for by Infinity prior to October 14, 2020 with the exception of 29 1-I Accounts (identified in green in the 1-I Accounts Spreadsheet) for which payment was sent to Stat Diagnostics by Infinity via ACH transfer on October 15, 2020.<br><br>*See* <u>Exhibit 4</u>; <u>Exhibit 5</u>; <u>Exhibit 3</u> at Bates No. 0259; s*ee also* Hemmers Transcript, pp. 38-39 [ECF No. 57-3] (Q: "... the Paid Date shown here in column DV, does that represent the date on which Infinity acquired the receivable?" A: "Yeah, that's the date, yeah."). | **Disputed.**<br><br>First, the "Date Paid Column" is not a reliable indicator of when the Debtor paid for the receivables at issue. Belotz Decl. at ¶¶14, 22-24.<br><br>Second, Exhibit 5 and its supporting documents in Exhibit 3, establish only that, at some date and time, the Debtor issued such checks with such dates. HASelect omits any information pertaining to when the checks might have been transmitted to the medical providers, and, more to the point, when such checks were deposited and subsequently honored by Nevada State Bank.  Meyers Del. at ¶¶ 9-11.<br><br>Third, Tecumseh has prepared its own 1-I Tecumseh Accounts Spreadsheets. *See* Meyers Del. at ¶ 11. and Exhibit B attached hereto and incorporated herein. Rather than merely reflecting the date respective checks were issued by the Debtor, Exhibit B denotes the date such payments were actually honored by Nevada State Bank—evidence far more indicative of when such transfers actually occurred. *Id.* at ¶ 11.; see also Composite Exhibit D attached hereto and incorporated herein (Nevada State Bank account statements for the Debtor's 8480 Account).<br><br>Furthermore, as reflected in the 1-I Tecumseh Accounts Spreadsheet (<u>Exhibit B</u>) incorporated herein, there are 843 separate 1-I Accounts. Meyer Decl. at ¶ 11. HASelect moved for summary judgement as to 755 of the 843 of 1-I Accounts. *See* 1-I Tecumseh Accounts Spreadsheet (<u>Exhibit B</u>). In other words, there are at least 88 of the 843 1-I Accounts that HASelect acknowledges Tecumseh funded. Of the remaining 755 1-I Accounts subject to HASelect's Motion, payment for at least |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 29 receivables were made by wire from the Debtor's on or after the Debtor's October 14, 2020 receipt of Tecumseh's wire. Meyer Decl. at ¶ 11 *See also* Exhibit B, and  Composite Exhibit D, Bates No. 19. Therefore, payment occurred for at least 117 of the total 843 1-I Accounts on or after Tecumseh's October 14, 2020 wire. *Id.* |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 37. | On October 5, 2020, Infinity paid a total of $48,854.77 (via two ACH payments of $3,991.68 and $44,863.09) to ExpressCHEX LLC, d/b/a Buena Vista Medical Services. The first payment of $3,991.68 corresponds to Infinity's funding of 101 accounts. Eighty-nine (89) of these accounts are included in the 1-H Accounts on which the Court has already granted summary judgment in favor of HASelect and were funded at a total cost to Infinity of $3,638.18. The remaining 12 accounts, which have a combined face value of $1,178.34, are included in the 1-I accounts and were funded at a total cost of $353.50 (identified in yellow in the 1-I Accounts Spreadsheet).<br><br>*Compare* <u>Exhibit 3</u> at Bates No. 0259, *with* Sales Receipt 1091 submitted herewith as <u>Exhibit 8</u>, *with* the list of the 89 1-H Accounts submitted herewith as <u>Exhibit 9</u> which are duplicated in the 1-I Purchase Order (<u>Exhibit 4</u>) and not included on the 1-I Accounts Spreadsheet as <u>Exhibit 5</u>. | **Denied**<br><br>Prior to the establishment of Tecumseh's Bank of America Account the Debtor periodically (roughly every two weeks) provided Tecumseh with a list of receivables from various medical providers that the Debtor recommended that Tecumseh purchase. *See* April 28, 2022 Belotz Decl. at ¶ 13; see also Exhs. B-K to the April 29, 2022 Tecumseh Statement of Disputed Facts.<br><br>Each list identified a set of receivables that the Debtor planned to purchase on Tecumseh's behalf. For each receivable, the Debtor provided the patient's name, the patient's lawyer's name, the provider, a unique Bill ID number, the face amount, the estimated purchase price and an estimated total cost including the Debtor's fee. Belotz Decl. at ¶ 14.<br><br>Once Tecumseh approved a list, the Debtor generated a purchase order which Tecumseh paid. The Debtor then used the money to purchase receivables on Tecumseh's behalf. Belotz Decl. at ¶ 15.<br><br>While funds may have flowed from Tecumseh through the Debtor to the medical provider, the Debtor never acquired an interest in the 1-I Accounts. Hemmer Tr. Vol. II at 186:12-17. |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 38. | The second October 5, 2020 ACH payment of $44,863.09 corresponds to Infinity's funding of 659 accounts. Six hundred and seventeen (617) of these accounts, which have a combined face value of $132,141.10, are included in the 1-I Accounts and were funded at a total cost to Infinity of $39,462.33 (identified in blue in the 1-I Accounts Spreadsheet). Forty-one (41) of these accounts are included in the 1-J Accounts and were funded at a total cost to Infinity of $5,198.26 (identified in yellow in the 1-J Accounts Spreadsheet). Finally, a single account funded at a cost to Infinity of $22.50 [BillID 25941] is included in a later purchase order prepared by Tecumseh in or around December 2020 as part of "Series-1/Intake P (A)".<br><br>*See* Sales Receipt 1095 submitted herewith as <u>Exhibit 10</u> and *compare with* 1-I Accounts Spreadsheet and 1-J Accounts Spreadsheet submitted herewith as <u>Exhibit 5</u> and <u>Exhibit 7</u>, respectively. | **Denied**<br><br>Prior to the establishment of Tecumseh's Bank of America Account the Debtor periodically (roughly every two weeks) provided Tecumseh with a list of receivables from various medical providers that the Debtor recommended that Tecumseh purchase. *See* April 28, 2022 Belotz Decl. at ¶ 13; see also Exhs. B-K to the April 29, 2022 Tecumseh Statement of Disputed Facts.<br><br>Each list identified a set of receivables that the Debtor planned to purchase on Tecumseh's behalf. For each receivable, the Debtor provided the patient's name, the patient's lawyer's name, the provider, a unique Bill ID number, the face amount, the estimated purchase price and an estimated total cost including the Debtor's fee. Belotz Decl. at ¶ 14.<br><br>Once Tecumseh approved a list, the Debtor generated a purchase order which Tecumseh paid. The Debtor then used the money to purchase receivables on Tecumseh's behalf. Belotz Decl. at ¶ 15.<br><br>While funds may have flowed from Tecumseh through the Debtor to the medical provider, the Debtor never acquired an interest in the 1-I Accounts. Hemmer Tr. Vol. II at 186:12-17. |

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 39. | On October 9, 2020, Infinity sent an ACH payment in the amount of $106,200.00 from its Operating Account to Stat Diagnostics. This payment corresponds to Infinity's funding of 97 I-I Accounts with a total face value of $714,000.00 (identified in orange in the 1-I Accounts Spreadsheet).<br><br>*Compare* 1-I Accounts Spreadsheet, submitted herewith as <u>Exhibit 5</u> *with* Infinity's Operating Account bank statement for October 30, 2020, Bates No. 259 and included with <u>Exhibit 3</u> submitted herewith. | **Denied.**<br><br>Prior to the establishment of Tecumseh's Bank of America Account the Debtor periodically (roughly every two weeks) provided Tecumseh with a list of receivables from various medical providers that the Debtor recommended that Tecumseh purchase. *See* April 28, 2022 Belotz Decl. at ¶ 13; see also Exhs. B-K to the April 29, 2022 Tecumseh Statement of Disputed Facts.<br><br>Each list identified a set of receivables that the Debtor planned to purchase on Tecumseh's behalf. For each receivable, the Debtor provided the patient's name, the patient's lawyer's name, the provider, a unique Bill ID number, the face amount, the estimated purchase price and an estimated total cost including the Debtor's fee. Belotz Decl. at ¶ 14.<br><br>Once Tecumseh approved a list, the Debtor generated a purchase order which Tecumseh paid. The Debtor then used the money to purchase receivables on Tecumseh's behalf. Belotz Decl. at ¶ 15.<br><br>While funds may have flowed from Tecumseh through the Debtor to the medical provider, the Debtor never acquired an interest in the 1-I Accounts. Hemmer Tr. Vol. II at 186:12-17. |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 40. | On October 15, 2020, Infinity sent another ACH payment in the amount of $24,600.00 from its Operating Account to Stat Diagnostics. This payment corresponds to Infinity's funding of 29 accounts with a total face value of 164,725.00 (identified in green in the 1-I Accounts Spreadsheet). While Tecumseh wired funds for its purchase of the 1-I Accounts from Infinity to the 8480 Account on October 14, 2020, Infinity did not use Tecumseh's funds for this payment to Stat Diagnostics. Rather, Infinity used funds from its Operating Account to make this payment while Tecumseh's funds remained in the 8480 Account until at least October 19, 2020 before being transferred to Infinity's Operating Account. *See* 1-I Accounts Spreadsheet submitted as Exhibit 5; *see also* Exhibit 3 at Bates Nos. 0259 and 0273. | **Denied.** Prior to the establishment of Tecumseh's Bank of America Account the Debtor periodically (roughly every two weeks) provided Tecumseh with a list of receivables from various medical providers that the Debtor recommended that Tecumseh purchase. *See* April 28, 2022 Belotz Decl. at ¶ 13; see also Exhs. B-K to the April 29, 2022 Tecumseh Statement of Disputed Facts. Each list identified a set of receivables that the Debtor planned to purchase on Tecumseh's behalf. For each receivable, the Debtor provided the patient's name, the patient's lawyer's name, the provider, a unique Bill ID number, the face amount, the estimated purchase price and an estimated total cost including the Debtor's fee. Belotz Decl. at ¶ 14. Once Tecumseh approved a list, the Debtor generated a purchase order which Tecumseh paid. The Debtor then used the money to purchase receivables on Tecumseh's behalf. Belotz Decl. at ¶ 15. While funds may have flowed from Tecumseh through the Debtor to the medical provider, the Debtor never acquired an interest in the 1-I Accounts. Hemmer Tr. Vol. II at 186:12-17. |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 41. | On October 23, 2020, Tecumseh issued a tenth Receivables Purchase Order to Infinity (the "1-J Purchase Order") identifying approximately 125 separate accounts receivable (the "1-J Accounts") it intended to purchase from Infinity for a total price of $136,063.26, which was comprised of Infinity's costs for the 1-I Accounts of $113,386.06 and a 20% fee to Infinity of $22,677.20.<br><br>*See* 1-J Purchase Order submitted herewith as <u>Exhibit 6</u> and on file in Infinity's chapter 7 case at ECF No. 201-13. | **Tecumseh admits that it received the 1-J Purchase Order but denies that the transaction was a purchase from the Debtor.**<br><br>Prior to the establishment of Tecumseh's Bank of America Account the Debtor periodically (roughly every two weeks) provided Tecumseh with a list of receivables from various medical providers that the Debtor recommended that Tecumseh purchase. *See* April 28, 2022 Belotz Decl. at ¶ 13; see also Exhs. B-K to the April 29, 2022 Tecumseh Statement of Disputed Facts.<br><br>Each list identified a set of receivables that the Debtor planned to purchase on Tecumseh's behalf. For each receivable, the Debtor provided the patient's name, the patient's lawyer's name, the provider, a unique Bill ID number, the face amount, the estimated purchase price and an estimated total cost including the Debtor's fee. Belotz Decl. at ¶ 14.<br><br>Once Tecumseh approved a list, the Debtor generated a purchase order which Tecumseh paid. The Debtor then used the money to purchase receivables on Tecumseh's behalf. Belotz Decl. at ¶ 15.<br><br>While funds may have flowed from Tecumseh through the Debtor to the medical provider, the Debtor never acquired an interest in the 1-J Accounts. Hemmer Tr. Vol. II at 186:12-17. |

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 42. | Tecumseh did not send the payment corresponding to the 1-J Purchase Order to Infinity until October 26, 2020 when it wired $136,063.26 to Infinity's 8480 Account.<br><br>*See* <u>Exhibit 3</u> submitted herewith at Bates No. 0272. | **Admitted.**<br><br>Tecumseh wired funds in that amount to the Debtor for the purpose of the Debtor acquiring the 1-J Accounts on Tecumseh's behalf. Belotz Decl. at ¶¶12, 15; Hemmer Trans. Vol. II (Exhibit N) at 185:21-186:2. |

| 43 | The 1-J Accounts identified in the 1-J Accounts Spreadsheet submitted herewith as <u>Exhibit 7</u> were all purchased by Infinity and paid for by Infinity prior to October 26, 2020.<br><br>*See* <u>Exhibit 6</u>; <u>Exhibit 7</u>; <u>Exhibit 3</u> at Bates Nos. 0173, 0182, 0191, 0198, 0201, 0204, 0207, 2010, 0213, 0261, 0219, 0222, 0225, 0228, 0231, 0234, 0243, and 0259; s*ee also* Hemmers Transcript, pp. 38-39 [ECF No. 57-3] (Q: "... the Paid Date shown here in column DV, does that represent the date on which Infinity acquired the receivable?" A: "Yeah, that's the date, yeah."). | **Disputed.**<br><br>First, the "Date Paid Column" is not a reliable indicator of when the Debtor paid for the receivables at issue. Belotz Decl. at ¶ ¶14, 22-24.<br><br>Second, Exhibit 5 and its supporting documents in Exhibit 3, establish only that, at some date and time, the Debtor issued such checks with such dates. HASelect omits any information pertaining to when the checks might have been transmitted to the medical providers, and, more to the point, when such checks were deposited and subsequently honored by Nevada State Bank. Meyers Del. ¶¶ 11-14.<br><br>Third, Tecumseh has prepared its own 1-J Tecumseh Accounts Spreadsheets. *See* Meyers Del. at ¶ 14 and Exhibit C attached hereto and incorporated herein. Rather than merely reflecting the date respective checks were issued by the Debtor, Exhibit C denotes the date such payments were actually honored by Nevada State Bank—evidence far more indicative of when such transfers actually occurred. *Id.* at ¶ 14; *see also* Composite Exhibit D attached hereto and incorporated herein (Nevada State Bank account statements for the Debtor's 8480 Account).<br><br>As reflected in the 1-J Tecumseh Accounts Spreadsheet (<u>Exhibit C</u>) incorporated herein, there are 261 separate 1-J Accounts. Meyer Decl. at ¶ -.; *see also* Exhibit C. HASelect moved for summary judgement as to 127 of the 261 1-J Accounts. Id. In other words, there are at least 134 of the 261 1-J Accounts that HASelect acknowledges Tecumseh funded. Of the remaining 127 1-J Accounts subject to HASelect's Motion, payment for at least 77 receivables were made by checks that |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | were honored by the Nevada State Bank on or after the Debtor's October 26, 2020 receipt of Tecumseh's wire. Meyer Decl. at ¶ -. See also Exhibit C and Composite Exhibit D, Bates No. 19, 23 and 27. Specifically, Check Nos. 6701, 6728, 6729, 6730, 6731, 6733, 6734, 6735, 6736, 6737, 6738, 6739, 6740, 6741, 6742, 6743, 6744, 6745, and 6746 were all honored on or after October 26, 2020. Meyer Decl. at ¶ -. ; *See also* Composite Exhibit D, Bates No. 19, 23, and 27. Therefore, payment occurred for at least 211 of the total 261 1-J Accounts on or after Tecumseh's October 26, 2020 wire. *Id.* |
| 44. | On August 18, 2020 Infinity paid to Stat (via Check No. 7655) $1,200 as payment for BillID 25118.<br><br>*Compare* 1-J Accounts Spreadsheet submitted herewith as <u>Exhibit 7</u> *with* Bates No. 0243 included within <u>Exhibit 3</u> *with* 1-J Purchase Order, p. 9, submitted herewith as <u>Exhibit 6</u>. | **Admitted that Check No. 7655 is dated August 18, 2020 and was made payable to Stat.** |

Garman Turner Gordon LLP
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

68781828;1

| | | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|---|
| | 45. | On October 6, 2020, Infinity issued Check No. 6701 to Polaris Spine and Surgery Center ("Polaris") in the total amount of $1,188.00, of which $396.00 was paid for BillID 25385.<br><br>*Compare* Bates Nos. 0173, contained in Exhibit 3 submitted herewith *with* 1-J Purchase Order, p. 6, submitted herewith as Exhibit 6. | **Admitted that Check No. 6701 is dated October 6, 2020 and was made payable to Polaris. There is no evidence, however, that check was delivered or honored on October 6, 2020. Instead, bank account statements evidence that the check was honored by the Nevada State Bank no earlier than October 27, 2020.**<br><br>*See* Composite Exhibit D, 019. |
| | 46. | On October 13, 2020, Infinity paid $2,205.52 via ACH transfer to Topple Diagnostics as payment for BillID 26890 ($550.56), BillID 26903 ($552.20), BillID 22876 ($552.20), and BillID 26882 ($550.56).<br><br>*See* Exhibit 7 and Exhibit 3 at Bates No. 0259; *see also* 1-J Purchase Order (Exhibit 6), pp. 4-5. | **Admitted.** |
| | 47. | October 13, 2020, Infinity paid $1,804.50 to the Phoenix City Spine & Joint Center, LLC via ACH transfer as payment for BillIDs 26889 ($450.45), 26902 ($451.80), 26875 ($451.80), and 26881 ($450.45).<br><br>*Compare* 1-J Accounts Spreadsheet submitted herewith as Exhibit 7 with Bates No. 0259 included within Exhibit 3 *with* 1-J Purchase Order (Exhibit 6), pp. 4-5, for BillIDs 26889, 26902, 26875, and 26881. | **Admitted.** |

| | HASELECT'S UNDISPUTED FACTS AND SUPPORTING EVIDENCE | TECUMSEH'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 48. | On October 21, 2020, Infinity issued Check No. 6740 as payment for BillID 26682 to the Surgery Center of Roswell in the amount of $19,858.30. On October 21, 2020, Infinity issued Check No. 6741 in the amount of $4,652.00 to the Center for Spine Procedures as payment for BillIDs 26686 ($1,512.00), 26692 ($1,570.00), and 26693 ($1,570.00).<br><br>*Compare* 1-J Accounts Spreadsheet submitted herewith as <u>Exhibit 7</u> *with* Bates No. 0231 and 0234 included within *Exhibit 3 with* 1-J Purchase Order (<u>Exhibit 6</u>), p. 6. | **Admitted that Check No. 6740 is dated October 21, 2020 and was made payable to Surgery Center of Roswell. There is no evidence, however, that check was delivered or honored on October 21, 2020. Instead, bank account statements evidence that the check was honored by the Nevada State Bank no earlier than November 17, 2020.**<br><br>*See* Composite Exhibit D, 019. |

| 49. | On or about December 3, 2021, Chapter 7 Trustee Robert E. Atkinson, through his counsel, filed a *Motion to. (I) Approve Sale of Certain Assets; (II) Set Sale/Auction Procedures; and (III) Set Auction Hearing Date* (the "<u>Sale Motion</u>") seeking to sell whatever interest the bankruptcy estate may have in the Tecumseh Receivables (as defined therein) (i.e., the Disputed Accounts, including the Sold Accounts that are the subject of this Motion) as well as all claims and causes of action that the Trustee or bankruptcy may have relating thereto<br><br>*See* ECF No. 145 on file in the Infinity's chapter 7 case. | **Admitted.**<br><br>The Sale Motion is subject, however, to Tecumseh's pending Rule 60(b) Motions. The Court erred in granting the Sale Motion and entering the Sale Order  because neither the parties nor the Court realized and considered that Section 16 of the Note defines "Collateral" narrowly—it does not include any assets beyond HASelect's "Receivables" and "Claims" as those terms are specifically defined in the Loan Agreement. |
| --- | --- | --- |
| 50. | On January 21, 2022, the Court entered an order granting Sale Motion, approving the sale of the estate's rights and interests in the Disputed Receivables to HASelect free and clear of all liens and encumbrances except for the respective interests of HASelect and Tecumseh and finding HASelect to be a good faith purchaser pursuant to 11 U.S.C. § 363(m).<br><br>*See* ECF No. 175 on file in the Infinity's chapter 7 case. | **Admitted.**<br><br>The order granting the Sale Motion (the "**Sale Order**") is subject, however, to Tecumseh's pending Rule 60(b) Motions. The Court erred in granting the Sale Motion and entering the Sale Order  because neither the parties nor the Court realized and considered that Section 16 of the Note defines "Collateral" narrowly—it does not include any assets beyond HASelect's "Receivables" and "Claims" as those terms are specifically defined in the Loan Agreement. |

| 51. | HASelect subsequently purchased all of the estate's rights and interests in the Disputed Receivables and all causes of action relating thereto for $100,000.00.<br><br>*See* ECF Nos. 190 and 191 on file in the Infinity's chapter 7 case. | **Admitted.**<br><br>The sale was expressly subject to Tecumseh's rights in the Disputed Receivables. Both the Sale Motion and Sale Order are also subject to Tecumseh's pending Rule 60(b) Motions. The Court erred in granting the Sale Motion and entering the Sale Order because neither the parties nor the Court realized and considered that Section 16 of the Note defines "Collateral" narrowly—it does not include any assets beyond HASelect's "Receivables" and "Claims" as those terms are specifically defined in the Loan Agreement. |

Respectfully submitted,

GARMAN TURNER GORDON LLP

By: */s/ Jared M. Sechrist*
      GERALD M. GORDON, ESQ.
      JARED M. SECHRIST, ESQ.
      7251 Amigo St., Suite 210
      Las Vegas, Nevada 89119

      and

      MICHAEL D. NAPOLI, ESQ.
      *Pro hac vice*
      AKERMAN LLP
      2001 Ross Avenue, Suite 3600
      Dallas, Texas 75201
      Tel: (214) 720-4360 / Fax: (214) 720-8116

      ARIEL E. STERN, ESQ.
      Nevada Bar No. 8276
      AKERMAN LLP
      1635 Village Center Circle, Suite 200
      Las Vegas, Nevada 89134
      Tel: (702) 634-5000 / Fax: (702) 380-8572
      Email: ariel.stern@akerman.com

      *Attorneys for Tecumseh–Infinity Medical Receivable Fund, LP*