1  Bart K. Larsen, Esq.
   Nevada Bar No. 8538
2  Kyle M. Wyant, Esq.
   Nevada Bar No. 14652
3  **SHEA LARSEN**
   1731 Village Center Circle, Suite 150
4  Las Vegas, Nevada 89134
   Telephone: (702) 471-7432
5  Fax: (702) 926-9683
   Email:  blarsen@shea.law
6          kwyant@shea.law

7  *Attorneys for HASelect-Medical Receivables*
   *Litigation Finance Fund International SP*

8

9              **UNITED STATES BANKRUPTCY COURT**

10                  **DISTRICT OF NEVADA**

11  In re:
                                            Case No. 21-14486-abl
12  INFINITY CAPITAL MANAGEMENT, INC.       Chapter 7

13          Debtor.

14  ─────────────────────────────────
                                            Adversary Case No. 21-01167-abl
15  HASELECT-MEDICAL RECEIVABLES
    LITIGATION FINANCE FUND
16  INTERNATIONAL SP,

17          Plaintiff,                      **ALTERNATIVE DIRECT**
                                            **TESTIMONY DECLARATION OF**
    v.                                      **MICHAEL GRIFFIN**
18
    TECUMSEH–INFINITY MEDICAL
19  RECEIVABLES FUND, LP,

20          Defendant.

21  ─────────────────────────────────
    TECUMSEH–INFINITY MEDICAL
22  RECEIVABLES FUND, LP,

23          Counter-Plaintiff,

24  v.

25  HASELECT-MEDICAL RECEIVABLES
    LITIGATION FINANCE FUND
26  INTERNATIONAL SP; ROBERT E. ATKINSON,
    CHAPTER 7 TRUSTEE
27
            Counter-Defendants.
28

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

HASELECT-MEDICAL RECEIVABLES
LITIGATION FINANCE FUND
INTERNATIONAL SP,

                Counter-Claimant,

v.

TECUMSEH–INFINITY MEDICAL
RECEIVABLES FUND, LP,

                Counter-Defendant.

I, Michael Griffin, make this declaration in support of HASelect-Medical Receivables Litigation Finance Fund International SP's ("HASelect") claims and defenses asserted in this adversary proceeding pursuant to LR 9014 and hereby declare under penalty of perjury:

1.     I am over the age of twenty-one (21) years old and am mentally competent.  I have personal knowledge of the matters set forth herein except as to those matters stated on information and belief, which I believe to be true, and if called upon as a witness to testify to these facts, I could and would competently and truthfully do so.

2.     I obtained a Bachelor of Science degree in accounting from the University of Illinois at Chicago in 1979.  After graduating, I obtained certification as a public accountant and worked for a public accounting firm, Coopers & Lybrand, for approximately five years.

3.     I was then hired by Kleinwort Benson, which was an investment bank based in the United Kingdom, where I was involved in developing a fixed income hedge fund, Arbitrage Strategy, which I managed for almost 15 years.

4.     After leaving Kleinwort Benson, I founded Spectrum Global Fund Administration, which was an administrative support firm that provided middle and back-office outsourcing services to various hedge funds and private equity funds.  I managed Spectrum Global Fund Administration for approximately 11 years before selling the firm in 2010.

5.     After selling Spectrum Global Fund Administration in 2010, I founded Griffin Asset

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Management LLC ("GAM"), which is also known as HedgeACT.[1]  I initially formed GAM for the purpose of developing investment strategies using my own personal funds.  After establishing a successful track record with these investment strategies, GAM began raising and managing funds for other parties in 2014.

6.    I hold Series 3 and Series 65 securities licenses.

7.    I am the majority member and manager of GAM, which is a registered investment advisor.  GAM serves as HASelect's investment manager.

8.    I make this declaration based upon my own personal knowledge of the facts stated herein as well as my review of the certain books and records of GAM and HASelect related to Infinity Capital Management, Inc. ("Infinity").  I am familiar with the business operations and document retention practices of both GAM and HASelect.  I am informed and believe that the business records I have reviewed in connection with the preparation of this Declaration were made at or near the time of the events they document by, or from information transmitted by, a person with knowledge of such events, all in the course of regularly conducted business activities.

9.    GAM serves as an investment manager for three separate investment funds, including HASelect, which invest in the acquisition of medical accounts receivable from medical providers that treat patients injured in accidents and whose repayment is secured by a lien on the patient's personal injury claims. These funds invest in the space either by lending to companies that acquire these receivables, such as Infinity, or by directly acquiring the receivables.

10.    In instances where such a fund lends capital, the fund obtains a blanket security interest in substantially all of the borrower's assets and perfects that interest by filing a UCC-1.  The fund also receives copies of all receivables that serve as its collateral and all supporting documentation.  Such documentation is often stamped to indicate that it serves as collateral for the fund's loan.

11.    In instances where a fund acquires receivables directly, the fund retains an agent that acts as a broker and servicer of the receivables. The fund enters into purchase agreements in its own

---

[1] GAM was originally organized as an Illinois limited liability company named HedgeACT Advisors LLC on November 10, 2011.  Its name was changed to Griffin Asset Management, LLC on January 8, 2013.

name and directly with the medical service providers for the acquisition of receivables.   All receivables are purchased and held in the fund's name, and the fund typically files a UCC-1 to perfect the purchase of the receivables from the medical service providers.

12.     In or around August 2018, I came into contact with Endre Debozy ("Debozy"), who was a principal of FTM Investments, LLC ("FTM").   During my initial communications with Debozy, he represented to me that he and his partner Bill Dalzell ("Dalzell") had formed FTM for the purpose of raising funds for Infinity to use in purchasing accounts receivables from medical providers ("Receivables") that offered treatment to individuals who were injured in accidents and asserted personal injury claims arising from such accidents.

13.     Debozy further explained that all such Receivables were purchased or otherwise funded pursuant to written contracts (a "Medical Provider Contract") entered into between Infinity and the medical providers and that, upon the purchase of a Receivable, Infinity received a written assignment from the personal injury plaintiff and their attorney granting Infinity a lien (a "Medical Lien") against any recovery on the plaintiff's personal injury claim to secure payment of the Receivable.

14.     Throughout my initial communications with Debozy, he repeatedly represented that Infinity had developed a very lucrative business model based on purchasing such Receivables at a discount and later collecting payment of the Receivables upon the settlement of the underlying personal injury claims.   Debozy further represented that the risk of investing in Receivables acquired by Infinity was very low due to the Medical Liens securing payment of the Receivables.

15.     Based on Debozy's representation, I decided to explore a potential funding relationship with Infinity.   In or around November 2018, I traveled to Las Vegas to meet with the principals of Infinity, Anne Pantelas ("Pantelas") and her husband Oliver Hemmers ("Hemmers").

16.     Chad Meyer ("Meyer") and Simon Clark ("Clark") also traveled to Las Vegas to attend this meeting in November 2018.   At that time, Meyer and Clark were both employed by GAM as independent contractors.   Meyer had been employed by GAM since approximately 2013 and was primarily responsible for GAM's domestic business operations.   Clark had been employed by GAM

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

since 2016 and was primarily responsible for GAM's international operations.

17.     In connection with this trip to Las Vegas, Meyer and Clark were tasked with performing due diligence regarding Infinity's business operations, its relationship with FTM, and potential risks associated with entering into a lending relationship with Infinity.

18.     Based largely on the due diligence completed by Meyer and Clark, GAM elected to form HASelect as a segregated portfolio company of HedgeAct International SPC Ltd., which is a Cayman Islands corporation, for the purpose of entering into a lending relationship with Infinity.

19.     HASelect was formed as a Cayman Islands fund based primarily on FTM's representations that it had the ability to raise investment capital from international investors.

20.     Clark, who then held the position of president of HedgeAct International SPC Ltd., was primarily responsible for communicating with Pantelas and Hemmers regarding the terms of this new lending relationship and for the negotiation and finalization of the loan documents.

21.     Meyer and Clark were also responsible for negotiating a sub-advisory agreement with FTM under which FTM would provide certain loan administration services to minimize the risks associated with lending to Infinity.

22.     On or about February 26, 2019, HASelect, which was then doing business under the name HASelect-FTM Medical Receivables Litigation Finance Fund SP, and Infinity Capital Management, Inc. ("Infinity") entered into a Loan and Security Agreement and Promissory Note (the "Loan Agreement")[2] pursuant to which HASelect agreed to loan up to $5 million to Infinity (the "HASelect Loan") to be used by Infinity for the purchase of Receivables.

23.     In the Loan Agreement, Infinity granted HASelect a security interest in all of Infinity's existing and after acquired personal property (as defined in § 4.1 of the Loan Agreement, the "Collateral") to secure payment of all indebtedness owed in collection with the HASelect Loan. Specifically, § 4.1 of the Loan Agreement defines the Collateral as follows:

> To secure the payment and performance when due of all of the Borrower's obligations hereunder and under the Note, Borrower hereby grants to Lender a security interest in the Receivables and the Alternative Receivables, and all of its other personal property, including without limitation, all of Borrower's interest in the

---

[2] A true and correct copy of the Loan Agreement has been designated as HASelect's Trial Exhibit 1.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

following, whether now owned or hereafter acquired, and wherever located, but excluding the Permitted Liens: All Goods, Inventory, Equipment, Fixtures, Accounts, General Intangibles, Instruments, Chattel Paper, Documents, Commercial Tort Claims, Investment Property, Letter of Credit Rights, Deposit Accounts, and all money, and all other property now or at any time in the future in Lender's possession (including claims and credit balances), and all proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties), all products and all books and records related to any of the foregoing (all of the foregoing, together with all other property in which Lender may now or in the future be granted a lien or security interest, is referred to herein, collectively, as the "Collateral").

24.     HASelect perfected its security interest in the Collateral through the filing of a UCC-1 with the Nevada Secretary of State on February 19, 2019.[3]

25.     To ensure that HASelect received a perfected, first-priority security interest in all Collateral, HASelect required that Infinity use a portion of the proceeds of the HASelect Loan to repay and retire a prior secured debt owed to Law Finance Group, LLC, which had similarly advanced funds to Infinity for the purchase of Receivables.

26.     HASelect also required that Infinity apply an electronic stamp to the Medical Lien documents to identify the Receivables as HASelect's Collateral.[4]

27.     Prior to the execution of the Loan Agreement, GAM (on behalf of itself and HASelect) entered into a Sub-Advisory Agreement dated February 7, 2019 with FTM (the "FTM Agreement")[5] pursuant to which FTM agreed to perform certain duties related to the administration of the HASelect Loan as set forth therein, including, among other things, the verification of Receivables for purchase by Infinity and the approval of draw requests submitted by Infinity on which HASelect relied in advancing funds to Infinity under the HASelect Loan.  Among other things, the FTM Agreement provides as follows:

    a.  Section 1(c) of the FTM Agreement provides that "[FTM's] services to GAM and [HASelect] hereunder will be exclusive and [FTM] will not render any similar services to any other pooled investment vehicle without GAM's prior written consent."

    b.  Section 1(g) of the FTM Agreement provides that "[FTM] shall use best efforts to act

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

---

[3] A true and correct copy of the UCC-1 has been designated as HASelect's Trial Exhibit 2.

[4] Examples of documents bearing this stamp can be found in HASelect's Trial Exhibit 293.

[5] A true and correct copy of the FTM Agreement has been designated as HASelect's Trial Exhibit 3.

at all times in a professional manner and in the best interests of GAM and [HASelect], and will keep GAM apprised of work progress with reports as are reasonable requested by GAM concerning [FTM's] services."

c.    Section 7 of the FTM Agreement generally requires that the parties maintain the confidentiality of and not disclose any confidential information or documents of the other party.  Section 7 further provides, in part, that "[FTM] acknowledges that GAM's investor lists are confidential information and proprietary to GAM; the lists may not be used, disclosed or distributed by [FTM], internally or to any third party, for any reason other than in connection with the services for the benefit of [HASelect] hereunder."

d.    Section 1(d) of the FTM Agreement provides that "[FTM] and its principals, officers, employees and agents will conduct business and activities in accordance with all applicable laws, rules and regulations and the terms of this Agreement."

28.    Meyer and Clark prepared the initial term sheet for the FTM Agreement and were both involved in the negotiation of the FTM Agreement.[6]

29.    On or about June 23, 2019, HASelect and Infinity entered into an Amendment 1 to Loan and Security Agreement and Promissory Note[7] by which they agreed to increase the amount of the HASelect Loan by $1 million.

30.    On or about August 30, 2019, HASelect and Infinity entered into a First Amended & Restated Loan Agreement and Promissory Note[8], which superseded all prior written loan agreements and promissory notes entered into between HASelect and Infinity, by which they agreed, among other things, to increase the amount of the HASelect Loan to $15 million.

31.    On or about December 18, 2019, HASelect and Infinity entered into a Second

---

[6] A true and correct copy of a series of email exchanged between Clark, Meyer, and Debozy (on which I was copied) discussing the initial term sheet for the FTM Agreement, along with a copy of that term sheet, has been designated as HASelect's Trial Exhibit 11.

[7] A true and correct copy of Amendment 1 to Loan and Security Agreement and Promissory Note has been designated as HASelect's Trial Exhibit 4.

[8] A true and correct copy of the First Amended & Restated Loan Agreement and Promissory Note has been designated as HASelect's Trial Exhibit 5.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Amended & Restated Loan Agreement and Promissory Note (together, with all prior and related loan documents, the "Loan Agreement")[9], which again superseded all prior written loan agreements and promissory notes entered into between HASelect and Infinity, by which they agreed, among other things, to increase the amount of the HASelect Loan to $30 million.

32.    Clark was responsible for negotiating and documenting the various amendments of the Loan Agreement during 2019 and served as the primary point of contact between HASelect and Infinity.

33.    Notwithstanding the various amendments of the Loan Agreement, the scope of the Collateral subject to HASelect's perfected security interest has always remained the same.

34.    Beginning on March 4, 2019 and continuing through April 30, 2020, HASelect disbursed proceeds of the HASelect Loan to Infinity through periodic draws requested by Infinity that were subject to verification and approval by FTM.  HASelect funded twenty-one (21) such draw requests on the dates and in the amounts set forth below.

| Draw Request | Date Funded | Funded Amount |
|---|---|---|
| HAS-01 | 3/4/2019 | $250,000.00 |
| HAS-02 | 4/2/2019 | $500,000.00 |
| HAS-02 | 4/3/2019 | $250,000.00 |
| HAS-03 | 5/1/2019 | $485,500.00 |
| HAS-04 | 5/20/2019 | $547,000.00 |
| HAS-05 | 6/19/2019 | $662,500.00 |
| HAS-06 | 7/24/2019 | $421,000.00 |
| HAS-07 | 6/28/2019 | $750,000.00 |
| HAS-08 | 7/15/2019 | $1,621,500.00 |
| HAS-09 | 8/26/2019 | $901,500.00 |
| HAS-10 | 9/30/2019 | $676,500.00 |
| HAS-11 | 10/31/2019 | $178,500.00 |
| HAS-12 | 10/22/2019 | $704,000.00 |
| HAS-13 | 11/15/2019 | $50,000.00 |

[9] A true and correct copy of the Second Amended & Restated Loan Agreement and Promissory Note has been designated as HASelect's Trial Exhibit 6.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| Draw Request | Date Funded | Funded Amount |
|---|---|---|
| HAS-14 | 12/13/2019 | $510,000.00 |
| HAS-15 | 11/12/2019 | $159,000.00 |
| HAS-16 | 11/29/2019 | $249,000.00 |
| HAS-18 | 12/6/2019 | $400,000.00 |
| HAS-18 | 12/30/2019 | $2,800,000.00 |
| HAS-19 | 1/30/2020 | $1,223,000.00 |
| HAS-20 | 2/28/2020 | $303,000.00 |
| HAS-21 | 3/30/2020 | $989,000.00 |
| HAS-22 | 4/30/2020 | $465,000.00 |
| | | $15,096,000.00 |

35.     Prior to submission to HASelect for funding, all draw requests were first submitted by Infinity to FTM for verification and approval. Such draw requests consisted of a one-page form signed by Infinity, stating the amount of the requested draw and confirming, among other things, that the requested proceeds were to be used to fund Infinity's purchase of certain Receivables identified in a spreadsheet attached to the draw request. Following its verification and approval of such Receivables, FTM would submit a redacted copy of such spreadsheet to HASelect that included a statement confirming that FTM had (i) reviewed all invoices supporting such Receivables, (ii) collected and reviewed the stamped Medical Liens associated with such Receivables, and (iii) confirmed the value of such Receivables to be at least 200% of the total amount of the draw.[10]

36.     The spreadsheets submitted with Infinity's draw requests included figures for the cost and value of each Receivable included in the spreadsheets. Infinity and FTM represented to HASelect that such figures represented the actual cost paid by Infinity to purchase the Receivables and the actual fair market value of the Receivables.

37.     Prior to his resignation on February 22, 2020, Clark was responsible for communicating with Infinity and FTM regarding the capital available for lending to Infinity. Clark was also responsible for HASelect's oversight of Infinity and FTM's identification and vetting of Receivables included in Infinity's draw requests.

---

[10] As examples of this process, true and correct copies of the draw requests for draws HAS-2, HAS-5, and HAS-22 have been designated as HASelect's Trial Exhibits 7, 8, and 9, respectively.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

38.     Effective as of January 1, 2019, Clark became a member of GAM. Clark continues to hold a three percent (3%) membership interest in GAM.

39.     In May 2019, GAM terminated Meyer's employment.

40.     During the course of their employment with GAM, both Meyer and Clark had access to confidential and proprietary information belonging to GAM, including, but not limited to, GAM's investor lists, investment strategies, investment opportunities, and investment returns.

41.     GAM makes significant efforts to maintain the secrecy of its confidential and proprietary information by, among other things, refraining from disclosing investor information to sub-advisors and business partners, requiring that sub-advisors and business partners agree to maintain the secrecy of and not disclose confidential or proprietary information, maintaining electronic records on password protected systems, and restricting access to physical documents.

42.     Additionally, the GAM operating agreement signed by Clark included confidentiality provisions that required that Clark protect and maintain the secrecy of GAM's confidential and proprietary information.

43.     Both Meyer and Clark first came into contact with the 506 Investor Group during their employment with GAM.  The 506 Investor Group is a large group of independent accredited investors that were a significant source of investment capital for the various funds for which GAM served as an investment manager, including HASelect.

44.     Similarly, both Meyer and Clark first came into contact with the Three Bell Capital during their employment with GAM.  Three Bell Capital is a registered investment advisor that advises a large group of investors that were a significant source of investment capital for the various funds for which GAM served as an investment manager, including HASelect.

45.     Both Meyer and Clark first came into contact with FTM and Infinity during their employment with GAM through which they received confidential information concerning the terms of HASelect's Loan Agreement and Infinity's business operations.

46.     Likewise, in 2019, I introduced Clark to PFD Management, LLC ("PFD"), which purchases accounts receivables from medical providers similar to Infinity.  In January 2020,

HASelect entered into a secured lending relationship with PFD in which HASelect loaned funds to PFD for use in purchasing accounts receivables from medical providers.  During 2022, PFD repaid its loan from HASelect.  I am informed and believe that PFD currently received funding from Tecumseh.

47.    On February 21, 2020, Clark mistakenly advised Infinity that HASelect had agreed to extend the time for Infinity to provide audited financial statements for the 2019 calendar year as required under the Loan Agreement.  When I informed Clark that HASelect, in fact, had not agreed to any such extension, he resigned from his position with GAM on February 22, 2020. Notwithstanding his resignation, Clark remains a member of GAM at this time.

48.    Following Clark's resignation, Infinity continued to make draw requests and receive funding under the HASelect Loan.  From February 22, 2020 through April 30, 2020, Infinity requested and received $1,757,000.00 in new funding from HASelect.

49.    Infinity did not make any draw request or otherwise request funding under the HASelect Loan after April 30, 2020.  HASelect did not reject or refuse to fund any draw request received from Infinity.

50.    Pursuant to the Loan Agreement, Infinity was required to provide audited financial statements for the 2019 calendar year to HASelect no later than April 30, 2020.  Infinity failed to provide audited financial statements for the 2019 calendar year by this deadline.

51.    In May 2020, HASelect learned that Meyer and Michael Belotz ("Belotz"), who worked as a consultant to GAM during 2015, had formed Tecumseh to compete with HASelect.

52.    HASelect also learned that Tecumseh was negotiating a potential business relationship with FTM and Infinity under which Tecumseh intended to replace HASelect as Infinity's funding source.

53.    On May 30, 2020, HASelect caused a notice of default to be sent to Infinity relating to Infinity's failure to provide audited financial statements for the 2019 calendar year and other non-monetary events of default under the HASelect Loan.[11]

---

[11] A true and correct copy of this notice of default has been designated as HASelect's Trial Exhibit 149.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

54.     On June 3, 2020, GAM and HASelect filed a complaint against Meyer, Tecumseh, and FTM in the Circuit Court of Cook County, Illinois, seeking a temporary restraining order and preliminary injunction to prevent Tecumseh and FTM from using GAM and HASelect's confidential information.

55.     Notwithstanding GAM and HASelect's objections to Tecumseh entering into a funding relationship with FTM and Infinity, Tecumseh and Infinity signed a Sub-Advisory Agreement on June 18, 2020 (the "Sub-Advisory Agreement").

56.     Tecumseh also entered into a Co-Investment Manager Agreement on June 24, 2020 with Forget The Market, Ltd – a new entity formed by Debozy and Dalzell in an attempt to avoid FTM's obligations to GAM and HASelect under the FTM Agreement.

57.     FTM resigned as sub-advisory to GAM and HASelect on June 7, 2020 effective immediately without giving 90 days' advance written notice as required under the FTM Agreement.

58.     Following the execution of the Sub-Advisory Agreement, Infinity denied that it received any loan from Tecumseh.  Infinity further represented to HASelect that Tecumseh was purchasing Receivables directly from medical providers and that Infinity was merely servicing and collecting such Receivables for Tecumseh.

59.     Starting in late 2020 and continuing into 2021, several investors for whom Three Bell Capital acted as an investment advisor requested redemptions of their investments in HASelect.[12]

60.     During the spring and summer of 2021, HASelect received several threats from Three Bell Capital to redeem all of their clients from HASelect and to have those redemptions satisfied by a transfer of Receivables included within HASelect's Collateral to Tecumseh.  HASelect and Three Bell were unable to reach an agreement to allow for such transfers.

61.     From June 2020 through September 2021, HASelect made numerous requests for information relating to the Collateral and for access to Infinity's books and records as Infinity continually failed to provide the financial reporting required under the Loan Agreement.  Infinity often ignored or offered excuses as to why it could not comply with such requests, which effectively

---

[12] A true and correct copy of one such redemption request has been designated as HASelect's Trial Exhibit 148.

prevented HASelect from obtaining timely information concerning the status of the Collateral and Infinity's financial position.

62.    On June 25, 2021, HASelect's counsel sent a demand letter to Infinity seeking access to Infinity's books and records.[13]  Infinity again refused to allow HASelect access to Infinity's books and records.

63.    On July 22, 2021, HASelect filed a complaint against Infinity in the U.S. District Court for the Northern District of Illinois, seeking to enforce its rights under the Loan Agreement to access Infinity's books and records.  Rather than respond to this complaint, Infinity filed its chapter 7 bankruptcy filing on September 14, 2021 (the "Petition Date").

64.    As of the Petition Date, Infinity owed principal, accrued interest, and fees due under the Loan Agreement (exclusive of attorney's fees and other costs incurred by HASelect in other litigation relating to enforcement of the Loan Agreement) in the total amount of $15,132,861.73.[14]

65.    Following the Petition Date, HASelect obtained relief from the automatic stay and reached an agreement with Chapter 7 Trustee Robert Atkinson (the "Trustee") for Infinity's bankruptcy estate to abandon all personal property to HASelect, including a large group of Receivables as to which there was no dispute as to the superior priority of HASelect's perfected security interest (the "HASelect Receivables").

66.    HASelect subsequently engaged a third party to service and collect the HASelect Receivables.  Through July 31, 2023, HASelect has collected a net total of $1,694,406.82 on the HASelect Receivables after payment of servicing and collection costs.[15]

67.    On or about October 24, 2021, HASelect gained access to Infinity's physical office in Henderson, Nevada and to what was left of Infinity's computer systems and physical files upon which HASelect discovered that a substantial number of records relating to Infinity's business operations and HASelect's collateral were missing or incomplete.  Moreover, those records that

---

[13] A true and correct copy of this demand letter has been designated as HASelect's Trial Exhibit 294.

[14] A true and correct copy of loan history report has been designated as HASelect's Trial Exhibit 300.

[15] A true and correct copy of a report summarizing the collections on the HASelect Receivables has been designated as HASelect's Trial Exhibit 301.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

remained were poorly organized and difficult to access without the use of the proprietary Case Manager software developed by Infinity, which had been rendered unusable prior to Infinity's abandonment of its office.

68.    As is thoroughly documented in filings on this Court's docket in a separate adversary proceeding HASelect filed against Infinity's principals, Hemmers and Pantelas, and their new company, Infinity Health Solutions, LLC ("IHS") (Adversary Case No. 22-01109), HASelect's efforts to obtain control over its Collateral and possession of Infinity's books and records have continually been frustrated by Hemmers and Pantelas's attempts to secretly misappropriate and transfer Infinity's business records and intangible property to IHS as well as countless false representations by Hemmers and Pantelas concerning Infinity's dealings with Tecumseh and FTM Limited and their business activities through IHS.

69.    Prior to the Petition Date, HASelect had no knowledge that Infinity had sold and assigned Receivables in which HASelect held a perfected security interest to Tecumseh or that Infinity continued to purchase, service, and collect Receivables in its own name using funds received from Tecumseh after the execution of the Sub-Advisory Agreement.

70.    Through discovery conducted after the Petition Date, HASelect discovered that Infinity sold and assigned a significant number of Receivables included within HASelect's Collateral to Tecumseh after entering into the Sub-Advisory Agreement.    HASelect did not have contemporaneous knowledge of and did not consent to any sale or transfer of its Collateral by Infinity to Tecumseh.

71.    HASelect also discovered that, after entering into the Sub-Advisory Agreement, Infinity continued to purchase new Receivables in its own name using a mix of HASelect Loan proceeds, proceeds collected on Receivables included within HASelect's Collateral, and new funds received from Tecumseh pursuant to Medical Provider Contracts to which Tecumseh was not a party while Infinity continued to receive Medical Lien assignments in its own name.

72.    HASelect also discovered that Tecumseh had hired Li Su in or around July 2020, who was then employed as GAM's manager of technology and information security, to assist in the

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

technical aspects of transferring HASelect's Collateral from Infinity to Tecumseh.  Li Su continued to work simultaneously for GAM and for Tecumseh without GAM's knowledge until GAM terminated his employment in August 2021.

73.    HASelect also discovered that Infinity routinely misrepresented the cost and value of the Receivables it purchased through draw requests made to HASelect in order to obtain excess Loan proceeds.  HASelect also learned that Infinity had misappropriated several million dollars in Loan proceeds, including over $2.5 million used by Infinity to pay debts allegedly owed to FTM, over $3 million used by Infinity to pay operating expenses and personal expenses for Hemmers and Pantelas, and $150,000 Infinity loaned to Anne Pantelas.

74.    HASelect also discovered that Clark had become a principal of Tecumseh and that while still employed by and a member of GAM, Clark failed to protect HASelect's interests under the Loan Agreement and, despite being told the truth by Hemmers and Pantelas, instead, ignored Infinity's misrepresentations concerning the cost and value of Receivables included in draw requests submitted to HASelect as well as Infinity's repeated misappropriation of Loan proceeds.  HASelect also discovered that within a few days after his resignation on February 22, 2020, Clark began assisting Debozy, Meyer, and Belotz in soliciting Infinity to terminate its funding relationship with HASelect in favor of a new funding relationship with Tecumseh.

75.    On October 13, 2021, HASelect obtained from the Trustee a list of Receivables prepared and produced by Infinity that identified roughly 8,100 Receivables (the "Disputed Receivables") that had been purchased by Infinity in its own name either shortly before or after entering into the Sub-Advisory Agreement that Tecumseh claimed to own free and clear of any interest held by Infinity or HASelect.  Such list of the Disputed Receivables was produced as a Microsoft Excel file named TIFDumpWithIncome-Final.xlsx.[16]

76.    On or about December 3, 2021, HASelect entered into an Asset Purchase Agreement with the Trustee under which HASelect agreed to purchase all of the Infinity bankruptcy estate's

---

[16] A true and correct copy of the TIFDumpWithIncome-Final.xlsx file that has been formatted to hide irrelevant columns but not otherwise changed has been designed as HASelect's Trial Exhibit 152.

rights and interests in the Disputed Receivables for $100,000.00.[17]

77.    On February 11, 2022, the Bankruptcy Court entered an order in Infinity's chapter 7 case [case no. 21-14486-abl, ECF No. 184] approving the sale of all of the Infinity bankruptcy estate's rights and interests in the Disputed Receivables to HASelect for $100,000.00.[18]

78.    On May 23, 2022, the Bankruptcy Court entered an order in this adversary proceeding [ECF No. 81] approving of HASelect's substitution for the Trustee as to all counterclaims asserted by the Trustee in this adversary proceeding against Tecumseh.[19]

79.    I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

DATED this 22nd day of August 2023.

/s/ *Michael Griffin*
MICHAEL GRIFFIN

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

---

[17] A true and correct copy of this Asset Purchase Agreement has been designated as HASelect's Trial Exhibit 295.

[18] A true and correct copy of this Order has been designated as HASelect's Trial Exhibit 296.

[19] A true and correct copy of this Order has been designated as HASelect's Trial Exhibit 297.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1

## **CERTIFICATE OF SERVICE**

2    1.    On August 22, 2023, I served the following document(s): **ALTERNATIVE DIRECT TESTIMONY DECLARATION OF MICHAEL GRIFFIN**.

3

4    2.    I served the above document(s) by the following means to the persons as listed below:

5    ☒    a.    ECF System:

6    CLARISSE L. CRISOSTOMO on behalf of ROBERT E. ATKINSON
7    bknotices@nv-lawfirm.com

8    GERALD M GORDON on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
9    ggordon@gtg.legal, bknotices@gtg.legal

10    MICHAEL D. NAPOLI on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
11    michael.napoli@akerman.com,
      cindy.ferguson@akerman.com;catherine.kretzschmar@akerman.com;laura.taveras@akerman.com;masterdocketlit@akerman.com;teresa.barrera@akerman.com

12

13    WILLIAM M. NOALL on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
      wnoall@gtg.legal, bknotices@gtg.legal

14

15    JARED M. SECHRIST on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
      jsechrist@gtg.legal, tbinns@gtg.legal;bknotices@Gtg.legal

16

17    ARIEL E. STERN on behalf of TECUMSEH-INFINITY MEDICAL RECEIVABLES FUND, LP
      ariel.stern@akerman.com, akermanlas@akerman.com

18    ☐    b.    United States mail, postage fully prepaid:

19    ☐    c.    Personal Service:

20    I personally delivered the document(s) to the persons at these addresses:

21
22    ☐    For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

23

24    ☐    For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

25

26    ☐    d.    By direct email (as opposed to through the ECF System):
      Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was

27

28

unsuccessful.

☐     e.      By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐     f.      By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 22, 2023.

By: /s/ *Bart K. Larsen, Esq,*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432